## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

```
-------------------------------------------------------x
                                    :
In re                               :        Chapter 11
                                    :
TK HOLDINGS INC., et al.,           :        Case No. 17-11375 (___)
                                    :
                                    :
        Debtors.¹                   :        Joint Administration Requested
                                    :
-------------------------------------------------------x
```

### MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 363 AND 105(a) FOR INTERIM AND FINAL AUTHORITY TO (I) CONTINUE TOOLING AND WARRANTY PROGRAMS IN THE ORDINARY COURSE OF BUSINESS AND PAY PREPETITION OBLIGATIONS RELATED THERETO, AND (II) AUTHORIZE BANKS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS

TK Holdings Inc. ("**TKH**") and its affiliated debtors in the above-captioned

chapter 11 cases (the "**Chapter 11 Cases**"), as debtors and debtors in possession (collectively, the

"**Debtors**"), respectfully represent as follows in support of this motion (this "**Motion**"):

### Relief Requested

1.     By this Motion, pursuant to sections 363 and 105(a) of title 11 of the

United States Code (the "**Bankruptcy Code**"), the Debtors request entry of interim and final

orders (i) authorizing the Debtors, in their business judgment, to (a) perform and honor their

prepetition obligations related to their Tooling and Warranty Programs (as defined herein) as

they deem appropriate, and (b) continue, renew, replace, implement new, and/or terminate the

Tooling and Warranty Programs as they deem appropriate, in the ordinary course of business,

---

¹ The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Takata Americas (9766); TK Finance, LLC (2753); TK China, LLC (1312); TK Holdings Inc. (3416); Takata Protection Systems Inc. (3881); Interiors in Flight Inc. (4046); TK Mexico Inc. (8331); TK Mexico LLC (9029); TK Holdings de Mexico, S. de R.L. de C.V. (N/A); Industrias Irvin de Mexico, S.A. de C.V. (N/A); Takata de Mexico, S.A. de C.V. (N/A); and Strosshe-Mex, S. de R.L. de C.V. (N/A).  Except as otherwise set forth herein, the Debtors' international affiliates and subsidiaries are not debtors in these chapter 11 cases.  The location of the Debtors' corporate headquarters is 2500 Takata Drive, Auburn Hills, Michigan 48326.

without further application to the Court, and (ii) authorizing, but not directing, applicable banks and financial institutions to honor and process related checks and transfers.

2.      Proposed forms of order granting the relief requested herein on an interim basis and a final basis are annexed hereto as **Exhibit A** (the "***Proposed Interim Order***") and **Exhibit B** (the "***Proposed Final Order***"), respectively.

## Jurisdiction

3.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Rule 9013–1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "***Local Rules***"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

4.      On the date hereof (the "***Petition Date***"), each of the Debtors commenced with the Court a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors has been appointed in these Chapter 11 Cases.  Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of these Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).

RLF1 17750812V.1

5.      In coordination with the commencement of the Chapter 11 Cases, contemporaneously to the date hereof, Takata Corporation, the Debtors' ultimate corporate parent ("***TKJP***" and, together with its direct and indirect global subsidiaries, including TKH, "***Takata***"), together with Takata Kyushi K.K. and Takata Service Corporation, commenced civil rehabilitation proceedings under the Civil Rehabilitation Act of Japan in the 20th Department of the Civil Division of the Tokyo District Court.

6.      Additional information regarding the circumstances leading to the commencement of these Chapter 11 Cases and information regarding the Debtors' businesses and capital structure is set forth in the declaration of Scott E. Caudill, the Executive Vice President and Chief Operating Officer for TKH, filed contemporaneously herewith in support of the Debtors' chapter 11 petitions and related first day relief (the "***Caudill Declaration***").[2]

### The Debtors' Tooling and Warranty Programs

7.      As set forth in the Caudill Declaration, the Debtors are one of the world's leading automotive safety systems companies, supplying nearly all the world's major automotive makers with a product range that includes seat belts, airbag systems, steering wheels, child restraint systems, and electronic devices such as satellite sensors and electronic control units. The Debtors act as a Tier One supplier to the OEMs and, as such, the Debtors directly supply the OEMs with their specialized component parts and modules.  The Debtors' relationship with their Customers begins when the Debtors are awarded a "program," pursuant to which the Debtors are typically the sole supplier of a product or system for a particular vehicle model or platform being assembled by a Customer.  The Debtors' supply of component parts to their Customers are governed by (a) standard terms and conditions that govern the Customer-supplier relationship,

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Caudill Declaration.

generally, and (b) purchaser orders that govern the supply of specific component parts for the particular program the Debtors have been awarded.  Once the Debtors are awarded a program, the Customers typically send letters or blanket purchase orders with detailed requests for parts, which the Debtors must fulfill promptly and in accordance with the terms and conditions agreed to with the Customers.  Accordingly, maintaining the loyalty and goodwill of the Customers is essential to the Debtors' ongoing business and is critical to the success of the Debtors' Chapter 11 Cases.

8.     The component parts the Debtors supply to their Customers are highly specialized and must meet rigorous standards specified in connection with each program the Debtors are awarded. Accordingly, the Debtors' performance of their obligations in connection with a particular program frequently requires that the Debtors acquire customized tooling and undertake various warranty obligations.  The ability to honor their obligations with respect to tooling equipment, product warranties, and related programs (collectively, the "***Tooling and Warranty Programs***" and the obligations thereunder and related thereto, collectively, the "***Tooling and Warranty Obligations***") in the ordinary course of business is necessary for the Debtors to retain their Customer base and reputation for reliability.  As set forth in further detail below, maintaining the Tooling and Warranty Programs is essential to maintaining loyalty and ongoing business relationships with the Customers and will be critical to the success of the Global Transaction and these Chapter 11 Cases.

### A.     Tooling Programs

9.     As set forth in the Global Accommodation Agreement, which the Debtors and Consenting OEMs are currently finalizing, the Debtors purchase tooling equipment on behalf of many of their Customers.  The Debtors need to acquire such specialized tooling

4

equipment in order to produce the specific component parts ordered by their Customers.  In many such instances, the Customers will ultimately own the tooling equipment and use the Debtors to build and/or sub-contract the tool production work, perform quality control assessments, or retain the tooling at the Debtors' or tool manufacturer's facilities, to be used in the production of the component parts for the Customers.

10.     The Debtors request authority to continue their tooling programs and make payments required thereunder regardless of whether such payment obligations accrued before or after the Petition Date.  In the case of Customer-owned tooling, the applicable Customer reimburses the Debtors for funds that they have previously paid to third-party tool makers or for internal cost related to the production of the tool.  Customer tooling becomes the property of the applicable Customer once fully paid, at which point the Debtors' equitable interest in the tooling terminates.  Because payments made to tooling suppliers for the acquisition of Customer tooling are reimbursed by the applicable Customer, and such tooling becomes the property of the applicable Customer upon full payment, the Debtors' uninterrupted performance of their obligations under their Tooling Programs will enhance rather than diminish their estates.  Furthermore, the Global Accommodation Agreement requires that tooling is to be owned by the Customers once fully paid, in these cases, the Debtors may not have an equitable interest in the tooling.

### B.     Warranty Programs

11.     Customary with industry standards, the Debtors are subject to the standard terms and conditions of their Customers ("***Customer Terms***"), when supplying components, modules and other products to the Customers.  Customer Terms typically include references to warranty clauses that encompass the workmanship of the Debtors' products.  To the extent that

RLF1 17750812V.1

the Customers identify workmanship issues with the Debtors' products, either upon initial receipt

of such products, during the production process, through the post-production period, or

subsequent to the final sale of the Customers' vehicles to end-consumers, the Debtors may be

held liable to remedy any identified workmanship defects.  Typically, remedies are in the form of

replacement parts, or monetary damages levied by the Customers.

12.     As discussed more fully in the Caudill Declaration, the Debtors are in the

midst of the largest recall in automotive history relating to vehicles equipped with certain airbag

inflators containing non-desiccated PSAN Inflators.  The Debtors continue to dedicate

substantial resources to manufacture and ship replacement parts to their Customers in order to

get the recalled airbags out of circulation.  Although payments by the Debtors for any

chargebacks relating to non-desiccated PSAN Inflator recalls are currently modified or

suspended in accordance with agreements between the Debtors and the Consenting OEMs, the

Debtors remain responsible for the provision of replacement parts and other ordinary course

warranty obligations.

13.     As evidenced by the ongoing recalls, it is of critical importance that the

Debtors be authorized to continue their warranty program in the ordinary course.  The

replacement parts supplied by the Debtors are critical safety parts, which must be provided on an

expedited basis for the recall program to successfully protect consumers from at-risk vehicles.

Failure by the Debtors to fulfill their warranty obligations may jeopardize the Debtors'

relationships with their Customers and suppliers, which are the lifeblood of the Debtors' business

and critical to the success of the Global Transaction and these Chapter 11 Cases.  Any

disruptions thereto would reduce the value of the Debtors' businesses, jeopardize the Debtors'

ability to close the Global Transaction, or diminish the sale price paid for the Debtors' assets,

RLF1 17750812V.1

and lower creditor recoveries.  Further, failure by the Debtors to continue to honor their warranty

obligations and supply replacement parts may violate the terms of the NHTSA consent orders

that obligate the Debtors to continue to cooperate with the ongoing recalls, which could result in

further fines, penalties or administrative actions that would negatively impact the Debtors'

estates.  Therefore, the Debtors request authority to continue their warranty programs in the

ordinary course.

**Cause Exists Pursuant to Sections 363 and 105(a) of the**
**<u>Bankruptcy Code to Approve the Debtors' Tooling and Warranty Programs</u>**

14.     The Debtors seek authority, but not direction, to perform and honor all

obligations with respect to the Tooling and Warranty Programs, including paying all payment

obligations, when due.  The Court has authority pursuant to sections 363 and 105(a) of the

Bankruptcy Code to authorize the Debtors to pay or honor any prepetition obligations with

respect to the Tooling and Warranty Programs.

15.     A Court may authorize a debtor to pay certain prepetition obligations

pursuant to section 363(b) of the Bankruptcy Code.  *See In re Ionosphere Clubs, Inc.*, 98 B.R.

174, 175 (Bankr. S.D.N.Y. 1989).  Section 363(b) provides that "the trustee, after notice and a

hearing, may use, sell, or lease, other than in the ordinary course of business, property of the

estate."  11 U.S.C. § 363(b)(1).  To approve the use of a debtor's assets outside the ordinary

course of business pursuant to section 363(b), a Court must find that a "good business reason"

exists for the use of the assets.  *See, e.g.*, *Official Comm. of Unsecured Creditors v. Enron Corp.*

*(In re Enron Corp.)*, 335 B.R. 22, 27-28 (S.D.N.Y. 2005) (quoting *In re Lionel Corp.*, 722 F.2d

1063, 1071 (2d Cir. 1983)); s*ee also In re Filene's Basement, LLC*, 2014 Bankr. LEXIS 2000, at

*39-40 (Bankr. D. Del. Apr. 29, 2014) ("Transactions under § 363 must be based upon the sound

business judgment of the debtor or trustee."); *In re Decora Indus.*, 2002 U.S. Dist. LEXIS 27031,

7

at *7-8 (D. Del. May 20, 2002) (a debtor satisfies the requirements of section 363(b )(1) through the "sound exercise of business judgment").

16.     The business judgment rule is satisfied where "'the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993). "Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). Bankruptcy Courts are reluctant to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence, and have upheld a board's decisions as long as those decisions are attributable to any "rational business purpose." *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *CRTF Corp. v. Federated Dep't Stores*, 683 F. Supp. 422, 436 (S.D.N.Y. 1988)); *In re Dura Auto. Sys.*, 2007 Bankr. LEXIS 2764, at *259-60 (Bankr. D. Del. Aug. 15, 2007).

17.     In addition, section 363(c) of the Bankruptcy Code authorizes a debtor in possession operating its business pursuant to section 1108 of the Bankruptcy Code to use property of the estate in the ordinary course of business without notice or a hearing. Consequently, continuing, renewing, implementing, modifying, and/or terminating the Tooling and Warranty Programs, in the ordinary course of business, is permitted by section 363(c) of the Bankruptcy Code, without further application to the Court. However, out of an abundance of caution, the Debtors request the relief stated herein.

18.    Furthermore, the Court has the authority, pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, to authorize the Debtors to pay any prepetition amounts that may be owed for Tooling and Warranty Programs because the payments are necessary for the Debtors to carry out their fiduciary duties under section 1107(a) of the Bankruptcy Code.  Section 1107(a) of the Bankruptcy Code "contains an implied duty of the debtor in possession" to act as a fiduciary to "protect and preserve the estate, including an operating business' going-concern value," on behalf of the debtor's creditors and other parties in interest.  *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)); *see also Unofficial Comm. of Equity Holders v. McManigle (In re Penick Pharm., Inc.)*, 227 B.R. 229, 232-33 (Bankr. S.D.N.Y. 1998) ("[U]pon filing its petition, the Debtor became debtor in possession and, through its management . . . was burdened with the duties and responsibilities of a bankruptcy trustee").  Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code.  11 U.S.C. § 105(a); *see Schwartz v. Aquatic Dev. Group, Inc. (In re Aquatic Dev. Group, Inc.)*, 352 F.3d 671, 680 (2d Cir. 2003) (Straub, J., concurring) ("[I]t is axiomatic that bankruptcy courts are 'courts of equity, empowered to invoke equitable principles to achieve fairness and justice in the reorganization process'") (quoting *In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994)).

19.    In a long line of well-established cases, courts consistently have permitted postpetition payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors.  *See, e.g.*, *In re Fin. News Network, Inc.*, 134 B.R. 732, 735-36 (Bankr. S.D.N.Y. 1991) ("[A] bankruptcy court may allow pre-plan payments

9

of prepetition obligations where such payments are critical to the debtor's reorganization");
*Ionosphere*, 98 B.R. at 175 (citing *Miltenberger v. Logansport, C&S W.R. Co..*, 106 U.S. 286,
312 (1882) (payment of pre-receivership claim before reorganization permitted to prevent
stoppage of "indispensable business relations")); *In re Just for Feet, Inc.*, 242 B.R. 821, 825 (D.
Del. 1999) ("The Supreme Court, the Third Circuit and the District of Delaware all recognize the
court's power to authorize payment of pre-petition claims when such payment is necessary for
the debtor's survival during chapter 11"); *In re Friedman's Inc.*, 2011 Bankr. LEXIS 4500, at \*7-
8 (Bankr. D. Del. Nov. 30, 2011) ("[M]ost courts will allow [the payment of prepetition claims]
under the 'doctrine of necessity,' if the debtor establishes that in its business judgment making
such payments is critical to the survival of the debtor's business").

20.     This "doctrine of necessity" functions in a chapter 11 reorganization as a
mechanism by which the Court can exercise its equitable power to allow payment of critical
prepetition claims not explicitly authorized by the Bankruptcy Code.  *See In re Lehigh & New
England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (quoting *In re Penn Cent. Transp. Co.*, 467
F.2d 100, 102 n.1 (3d Cir. 1972) ("[T]he 'necessity of payment' doctrine…[permits] immediate
payment of claims of creditors where those creditors will not supply services or material
essential to the conduct of the business until their pre-reorganization claims shall have been
paid."); *In re Boston & Me. Corp.*, 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing "existence
of a judicial power to authorize trustees in reorganization to pay claims [for] goods and services
indispensably necessary" to debtors' continued operation); *In re Quality Interiors, Inc.*, 127 B.R.
391, 396 ("A general practice has developed…where bankruptcy courts permit the payment of
certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to
reorganize without such payment."); *In re Structurelite Plastics Corp.*, 86 B.R. 922, 931 (Bankr.

S.D. Ohio 1988) ("[A] *per se* rule proscribing the payment of pre-petition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the Code"). The rationale for the doctrine of necessity is consistent with the paramount goal of chapter 11—"facilitating the continued operation and rehabilitation of the debtor." *Ionosphere*, 98 B.R. at 176.

21.    The Debtors' Customers are the lifeblood of their businesses and their loyalty and continued support and patronage is critical to the success of these Chapter 11 Cases. The continuation of the Tooling and Warranty Programs on an uninterrupted basis is critical to maintain this support and loyalty which is of the utmost important for any purchaser of the Debtors' assets.  Indeed, if the Debtors were not granted the relief requested in this Motion, the consequences would be draconian.  The Debtors' Customers would lose confidence, question the Debtors' ability to survive, and likely immediately begin resourcing the programs maintained with the Debtors to alternative suppliers.  Such resourcing would reduce the value of the Debtors' businesses, jeopardize the Debtors' ability to close the Global Transaction, or diminish the sale price paid for the Debtors' assets in connection with the Global Transaction, and lower creditor recoveries.  Moreover, as discussed more fully herein, millions of consumers rely on the Debtors for replacement airbags, and failing to honor the warranty programs would severely impair the Debtors' ability to comply with their ongoing recall obligations.  Simply stated, the obvious disruption and damage that will ensue if Tooling and Warranty Programs are not honored and continued far exceed the costs associated with honoring the related prepetition obligations and continuing these practices.

22.    Accordingly, the Debtors' request that they be authorized, but not directed, in their business judgment, to (i) perform and honor all Tooling and Warranty Program Obligations as they deem appropriate and (ii) continue, renew, replace, implement new, and/or terminate the Tooling and Warranty Programs as they deem appropriate, in the ordinary course of business, without further application to the Court.

**Applicable Banks Should be Authorized to Receive, Process, Honor, and Pay Checks Issued and Transfers Requested to Pay the Tooling and Warranty Obligations**

23.    The Debtors further request that the Court authorize, but not direct, applicable banks and financial institutions to receive, process, honor, and pay, to the extent of funds on deposit, any and all checks issued or to be issued and electronic fund transfers requested or to be requested by the Debtors relating to the Tooling and Warranty Obligations. The Debtors also seek authority, but not direction, to issue new postpetition checks, or effect new postpetition electronic fund transfers, in replacement of any checks or transfer requests on account of any prepetition Tooling and Warranty Obligations dishonored or rejected as a result of these Chapter 11 Cases.

**Reservation of Rights**

24.    Nothing contained herein is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, or (iii) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

12

## Bankruptcy Rule 6003 Has Been Satisfied

25.      Bankruptcy Rule 6003 provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may issue an order granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" before twenty-one (21) days after filing of the petition.  As described above, the success of the Debtors' reorganization effort depends upon their Customers' continued loyalty and support.  If the relief requested herein is not promptly implemented, the Customers may immediately begin re-sourcing casting and machining orders to alternative suppliers, which will irreparably harm the Debtors' businesses.  Accordingly, the Debtors have satisfied the requirements of Bankruptcy Rule 6003.

## Request for Bankruptcy Rule 6004 Waivers

26.      The Debtors request a waiver of the notice requirements under Bankruptcy Rule 6004(a) and any stay of the order granting the relief requested herein pursuant to Bankruptcy Rule 6004(h).  As explained above and in the Caudill Declaration, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors. Accordingly, ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and stay apply.

RLF1 17750812V.1

**Notice**

27.     Notice of this Motion has been provided to (i) the Office of the United States Trustee for the District of Delaware (Attn: David Buchbinder, Esq. and Jane Leamy, Esq.); (ii)  the Debtors' fifty (50) largest unsecured creditors on a consolidated basis; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the Offices of the United States Attorney for each of the District of Delaware and the Eastern District of Michigan; (vi) NHTSA; (vii) each of the Consenting OEMs; (viii) the Plan Sponsor; and (ix) any other party entitled to notice pursuant to Local Rule 9013–1(m).  Based on the urgency of the circumstances surrounding this Motion and the nature of the relief requested herein, the Debtors respectfully submit that no further notice is required.

28.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of the Proposed Interim Order and the Proposed Final Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: June 25, 2017
   Wilmington, Delaware

        */s/ Michael J. Merchant*    
        RICHARDS, LAYTON & FINGER, P.A.
        Mark D. Collins (No. 2981)
        Michael J. Merchant (No. 3854)
        Amanda R. Steele (No. 5530)
        Brett M. Haywood (No. 6166)
        One Rodney Square
        920 N. King Street
        Wilmington, Delaware 19801
        Telephone:  (302) 651-7700
        Facsimile:  (302) 651-7701

        -and-

        WEIL, GOTSHAL & MANGES LLP
        Marcia L. Goldstein
        Ronit J. Berkovich
        Matthew P. Goren
        767 Fifth Avenue
        New York, New York  10153
        Telephone:  (212) 310-8000
        Facsimile:  (212) 310-8007

        *Proposed Attorneys for the Debtors*
        *and Debtors in Possession*

15

## Exhibit A

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

--------------------------------------------------------x
            :
In re                 :     **Chapter 11**
            :
            :
**TK HOLDINGS INC.** *et al.*,   :     **Case No. 17-11375 (\_\_\_)**
            :
     **Debtors.**[1]      :     **(Jointly Administered)**
            :
--------------------------------------------------------x

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 363 AND 105(a)**
**AUTHORIZING DEBTORS TO (I) CONTINUE TOOLING AND**
**WARRANTY PROGRAMS IN THE ORDINARY COURSE OF**
**BUSINESS AND PAY PREPETITION OBLIGATIONS RELATED**
**THERETO, AND (II) AUTHORIZE BANKS TO HONOR AND**
<u>**PROCESS RELATED CHECKS AND TRANSFERS**</u>

Upon the motion, dated June 25, 2017 (the "***Motion***"),[2] of TK Holdings Inc. and

its affiliated debtors, as debtors and debtors in possession (collectively, the "***Debtors***"), pursuant

to sections 363 and 105(a) of title 11 of the United States Code (the "***Bankruptcy Code***"), for

authority to (i) pay and honor all obligations with respect to tooling equipment, product

warranties, and related programs (collectively, the "***Tooling and Warranty Programs***" and the

obligations thereunder and related thereto, collectively, the "***Tooling and Warranty***

***Obligations***") and to otherwise continuing the Tooling and Warranty Programs and practices in

the ordinary course of business, and (ii) authorize applicable banks and other financial

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Takata Americas (9766); TK Finance, LLC (2753); TK China, LLC (1312); TK Holdings Inc. (3416); Takata Protection Systems Inc. (3881); Interiors in Flight Inc. (4046); TK Mexico Inc. (8331); TK Mexico LLC (9029); TK Holdings de Mexico, S. de R.L. de C.V. (N/A); Industrias Irvin de Mexico, S.A. de C.V. (N/A); Takata de Mexico, S.A. de C.V. (N/A); and Strosshe-Mex, S. de R.L. de C.V. (N/A).  Except as otherwise set forth herein, the Debtors' international affiliates and subsidiaries are not debtors in these chapter 11 cases.  The location of the Debtors' corporate headquarters is 2500 Takata Drive, Auburn Hills, Michigan 48326.

[2] Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to such terms in the Motion.

institutions to honor and process related checks and transfers, all as more fully set forth in the

Motion; and upon consideration of the Caudill Declaration; and this Court having jurisdiction to

consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and

the *Amended Standing Order of Reference from the United States District Court for the District*

*of Delaware* dated February 29, 2012; and consideration of the Motion and the requested relief

being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this

Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having

been provided to the parties listed therein, and it appearing that no other or further notice need be

provided; and this Court having reviewed the Motion; and this Court having held a hearing on

the Motion; and this Court having determined that the legal and factual bases set forth in the

Motion establish just cause for the relief granted herein; and it appearing that the relief requested

in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their

estates as contemplated by Bankruptcy Rule 6003, and is in the best interests of the Debtors,

their estates, creditors, and all parties in interests; and upon all of the proceedings had before this

Court and after due deliberation and sufficient cause appearing therefor,

## IT IS HEREBY ORDERED THAT:

1.      The Motion is granted on an interim basis, as provided herein.

2.      The Debtors are authorized, but not directed, pursuant to sections 363 and

105(a) of the Bankruptcy Code to (i) pay, perform and honor the Tooling and Warranty

Obligations, and (ii) continue, renew, replace, implement new, and/or terminate the Tooling and

Warranty Programs as they deem appropriate, in the ordinary course of business, without further

application to the Court, including making all payments, honoring and satisfying all obligations

RLF1 17750812V.1

and permitting and effecting all setoffs in connection therewith, whether relating to the period prior or subsequent to the Petition Date.

3.      Applicable banks and financial institutions are authorized, but not directed, at the Debtors' request, to receive, process, honor and pay, to the extent of funds on deposit, any and all checks issued or to be issued or electronic fund transfers requested or to be requested by the Debtors relating to the Tooling and Warranty Obligations.

4.      The Debtors are authorized, but not directed, to issue new postpetition checks, or effect new electronic fund transfers, on account of the Tooling and Warranty Program Obligations to replace any prepetition checks or electronic fund transfer requests that may be lost, dishonored, or rejected as a result of the commencement of the Chapter 11 Cases.

5.      Nothing contained in this Interim Order or in the Motion is intended to be or shall be construed as (a) an admission as to the validity of any claim against the Debtors, (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, or (c) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.  Likewise any payment made pursuant to this Interim Order is not intended to be and shall not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

6.      Notwithstanding entry of this Interim Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by any party.

7.      Notwithstanding anything to the contrary contained herein, any payment to be made, or authorization contained hereunder shall be subject to the same limitations and restrictions as are provided for in any order of this Court approving the Debtors' entry into any

accommodation or similar agreements with the Consenting OEMs and granting the Consenting

OEMs adequate protection in connection therewith (each a "***Adequate Protection Order***").  To

the extent there is any conflict between this Interim Order and any Adequate Protection Order,

the terms of such Adequate Protection Order shall control.

8.      The requirements of Bankruptcy Rule 6003(b) have been satisfied.

9.      The requirements of Bankruptcy Rule 6004(a) are waived.

10.     Notwithstanding the provisions of Bankruptcy Rule 6004(h), this Interim

Order shall be immediately effective and enforceable upon its entry.

11.     The Debtors are authorized to take all steps necessary or appropriate to

carry out this Interim Order.

12.     This Court shall retain jurisdiction to hear and determine all matters

arising from or related to the implementation, interpretation, or enforcement of this Interim

Order.

13.     A final hearing to consider the relief requested in the Motion shall be held

on _____, _____ at _____ **(Prevailing Eastern Time)** and any objections or responses

to the Motion shall be filed and served so as to be actually received on or prior to

_____, _____ **at 4:00 p.m. (Prevailing Eastern Time)**.

Dated: _____, 2017
      Wilmington, Delaware

                        _____
                        UNITED STATES BANKRUPTCY JUDGE

RLF1 17750812V.1

**<u>Exhibit B</u>**

**Proposed Final Order**

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

```
-------------------------------------------------------x
                                      :
In re                                 :      Chapter 11
                                      :
                                      :
TK HOLDINGS INC. et al.,              :      Case No. 17-11375 (___)
                                      :
        Debtors.¹                     :      (Jointly Administered)
                                      :
-------------------------------------------------------x
```

**FINAL ORDER PURSUANT TO 11 U.S.C. §§ 363 AND 105(a)
AUTHORIZING DEBTORS TO (I) CONTINUE TOOLING AND
WARRANTY PROGRAMS IN THE ORDINARY COURSE OF
BUSINESS AND PAY PREPETITION OBLIGATIONS RELATED
THERETO, AND (II) AUTHORIZE BANKS TO HONOR AND
PROCESS RELATED CHECKS AND TRANSFERS**

Upon the motion, dated June 25, 2017 (the "*Motion*"),[2] of TK Holdings Inc. and

its affiliated debtors, as debtors and debtors in possession (collectively, the "*Debtors*"), pursuant

to sections 363 and 105(a) of title 11 of the United States Code (the "*Bankruptcy Code*"), for

authority to (i) pay and honor all obligations with respect to tooling equipment, product

warranties, and related programs (collectively, the "*Tooling and Warranty Programs*" and the

obligations thereunder and related thereto, collectively, the "*Tooling and Warranty

Obligations*") and to otherwise continuing the Tooling and Warranty Programs and practices in

the ordinary course of business, and (ii) authorize applicable banks and other financial

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Takata Americas (9766); TK Finance, LLC (2753); TK China, LLC (1312); TK Holdings Inc. (3416); Takata Protection Systems Inc. (3881); Interiors in Flight Inc. (4046); TK Mexico Inc. (8331); TK Mexico LLC (9029); TK Holdings de Mexico, S. de R.L. de C.V. (N/A); Industrias Irvin de Mexico, S.A. de C.V. (N/A); Takata de Mexico, S.A. de C.V. (N/A); and Strosshe-Mex, S. de R.L. de C.V. (N/A).  Except as otherwise set forth herein, the Debtors' international affiliates and subsidiaries are not debtors in these chapter 11 cases.  The location of the Debtors' corporate headquarters is 2500 Takata Drive, Auburn Hills, Michigan 48326.

[2] Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to such terms in the Motion.

institutions to honor and process related checks and transfers, all as more fully set forth in the
Motion; and upon consideration of the Caudill Declaration; and this Court having jurisdiction to
consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and
the *Amended Standing Order of Reference from the United States District Court for the District
of Delaware* dated February 29, 2012; and consideration of the Motion and the requested relief
being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this
Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having
been provided to the parties listed therein, and it appearing that no other or further notice need be
provided; and this Court having reviewed the Motion; and this Court having held a hearing on
the Motion on [__], 2017; and this Court having granted interim relief on the Motion on [__],
2017 (ECF No. [__]); and this Court having held a final hearing on the Motion on [__], 2017;
and all objections to the Motion having been withdrawn, resolved or overruled; and this Court
having determined that the legal and factual bases set forth in the Motion establish just cause for
the relief granted herein; and it appearing that the relief requested in the Motion is in the best
interests of the Debtors, their estates, creditors, and all parties in interests; and upon all of the
proceedings had before this Court and after due deliberation and sufficient cause appearing
therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted on a final basis, as provided herein.

2.      The Debtors are authorized, but not directed, pursuant to sections 363 and
105(a) of the Bankruptcy Code to (i) pay, perform and honor the Tooling and Warranty
Obligations, and (ii) continue, renew, replace, implement new, and/or terminate the Tooling and
Warranty Programs as they deem appropriate, in the ordinary course of business, without further

application to the Court, including making all payments, honoring and satisfying all obligations

and permitting and effecting all setoffs in connection therewith, whether relating to the period

prior or subsequent to the Petition Date.

3.      Applicable banks and financial institutions are authorized, but not

directed, at the Debtors' request, to receive, process, honor and pay, to the extent of funds on

deposit, any and all checks issued or to be issued or electronic fund transfers requested or to be

requested by the Debtors relating to the Tooling and Warranty Obligations.

4.      The Debtors are authorized, but not directed, to issue new postpetition

checks, or effect new electronic fund transfers, on account of the Tooling and Warranty

Obligations to replace any prepetition checks or electronic fund transfer requests that may be

lost, dishonored, or rejected as a result of the commencement of the Chapter 11 Cases.

5.      Nothing contained in this Final Order or in the Motion is intended to be or

shall be construed as (a) an admission as to the validity of any claim against the Debtors, (b) a

waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, or (c) an

approval or assumption of any agreement, contract, program, policy, or lease under section 365

of the Bankruptcy Code.  Likewise any payment made pursuant to this Final Order is not

intended to be and shall not be construed as an admission to the validity of any claim or a waiver

of the Debtors' rights to dispute such claim subsequently.

6.      Notwithstanding entry of this Final Order, nothing herein shall create, nor

is intended to create, any rights in favor of or enhance the status of any claim held by, any party.

7.      Notwithstanding anything to the contrary contained herein, any payment

to be made, or authorization contained hereunder shall be subject to the same limitations and

restrictions as are provided for in any order of this Court approving the Debtors' entry into any

accommodation or similar agreements with the Consenting OEMs and granting the Consenting

OEMs adequate protection in connection therewith (each a "***Adequate Protection Order***").  To

the extent there is any conflict between this Interim Order and any Adequate Protection Order,

the terms of such Adequate Protection Order shall control.

8.      Notwithstanding the provisions of Bankruptcy Rule 6004(h), this Final

Order shall be immediately effective and enforceable upon its entry.

9.      The Debtors are authorized to take all steps necessary or appropriate to

carry out this Final Order.

10.      This Court shall retain jurisdiction to hear and determine all matters

arising from or related to the implementation, interpretation, or enforcement of this Final Order.

Dated: _____, 2017
          Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE