## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF DELAWARE

-----------------------------------------------------x
                                        :
**In re**                               :        **Chapter 11**
                                        :
**TK HOLDINGS INC., et al.,**           :        **Case No. 17-11375 (BLS)**
                                        :
**Debtors.**[1]                         :        **Jointly Administered**
                                        :        Re: Docket No. 18
-----------------------------------------------------x

### INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 503, 506 AND 507 AND FED. R. BANKR. P. 2002, 4001, 6003, 6004, AND 9014 GRANTING MOTION FOR ENTRY OF AN INTERIM AND FINAL ORDER (I) AUTHORIZING DEBTORS TO ENTER INTO ACCOMMODATION AGREEMENT AND ACCESS AGREEMENT WITH CERTAIN CUSTOMERS, (II) GRANTING ADEQUATE PROTECTION IN CONNECTION THEREWITH, (III) MODIFYING THE AUTOMATIC STAY TO IMPLEMENT AND EFFECTUATE THE TERMS THEREOF; AND (IV) SCHEDULING A FINAL HEARING

Upon the motion (the "*Motion*") of TK Holdings, Inc. ("*TKH*") and the subsidiaries of

TKH that are debtors and debtors in possession in the above-captioned cases (collectively with

TKH, the "*Debtors*"), pursuant to sections 105, 361, 362, 363, 503, 506 and 507 of title 11 of the

United States Code, 11 U.S.C. §§ 101, *et seq.* (the "*Bankruptcy Code*"), Rules 2002, 4001, 6003,

6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"), and

Rule 4001-2 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the

District of Delaware (the "*Local Bankruptcy Rules*"), seeking, among other things:

A.      authorization for the Debtors to enter into (a) that certain Accommodation

Agreement, which was attached to the Motion as Exhibit A (together with any exhibits or

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Takata Americas (9766); TK Finance, LLC (2753); TK China, LLC (1312); TK Holdings Inc. (3416); Takata Protection Systems Inc. (3881); Interiors in Flight Inc. (4046); TK Mexico Inc. (8331); TK Mexico LLC (9029); TK Holdings de Mexico S. de R.L. de C.V. (N/A); Industrias Irvin de Mexico, S.A. de C.V. (N/A); Takata de Mexico, S.A. de C.V. (N/A); and Strosshe-Mex, S. de R.L. de C.V. (N/A). Except as otherwise set forth herein, the Debtors' international affiliates and subsidiaries are not debtors in these chapter 11 cases. The location of the Debtors' corporate headquarters is 2500 Takata Drive, Auburn Hills, Michigan 48326.

schedules thereto, and as may be amended or modified in accordance with the terms thereof, the "*Accommodation Agreement*"),[2] and (b) the Access and Security Agreement, [Docket No. 87] (together with any exhibits or schedules thereto, and as may be amended or modified in accordance with the terms thereof, the "*Access Agreement*" and, together with the Accommodation Agreement, the "*Agreements*"); (ii) granting adequate protection to those Consenting OEMs with Customer Accounts (the "*Secured Accommodation Parties*")[3] in connection therewith; (iii) modifying the automatic stay imposed under section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the relief requested therein; and (iv) scheduling a hearing to consider the relief requested herein on a final basis (the "*Final Hearing*").

B.      the grant of adequate protection to the Secured Accommodation Parties in respect of the Customer Secured Claims (as defined below) subject to the Carve-Out (as defined below) and the terms of this Interim Order;

C.      approval of certain stipulations in paragraph 4 of this Interim Order by the Debtors with respect to, among other things, (a) the Customer Accounts (as defined below) owed to the Debtors by each Secured Accommodation Party as of the date (the "*Petition Date*") of the commencement of the Debtors' chapter 11 cases (the "*Cases*"), (b) the amount, validity and priority of the Customer Secured Claims, and (c) the validity and enforceability of the Prepetition Setoff Rights (as defined below) of the Secured Accommodation Parties in respect of the Customer Secured Claims;

---

[2] Capitalized terms used but not defined herein having the meanings given to them in the Accommodation Agreement.

[3] Among others, the following Consenting OEMs are not Secured Accommodation Parties: BMW AG, Daimler AG and Volkswagen AG.

D.      subject only to and effective upon entry of the Final Order, so long as any of the

Adequate Protection Claims remain outstanding, the waiver of the Debtors' right to surcharge the

Collateral (as defined below) pursuant to section 506(c) of the Bankruptcy Code;

E.      modification of the automatic stay to the extent set forth herein and in the

Accommodation Agreement;

F.      pursuant to Bankruptcy Rule 6003, a hearing (the "*Hearing*") on the Motion to be

held before this Court to consider entry of an order granting the Motion (this "*Interim Order*"),

on an interim basis; and

G.      that this Court schedule a final hearing (the "*Final Hearing*") to be held within 35

days of the entry of this Interim Order to consider entry of a final order granting the Motion

(the "*Final Order*") on a final basis; and due and appropriate notice of the Motion and the

Hearing having been served by the Debtors on (i) the Office of the United States Trustee for the

District of Delaware ("*U.S. Trustee*") (Attn: David Buchbinder, Esq. and Jane Leamy, Esq.);

(ii) the Debtors' fifty (50) largest unsecured creditors on a consolidated basis; (iii) the Securities

and Exchange Commission; (iv) the Internal Revenue Service; (v) the Offices of the United

States Attorney for the District of Delaware and the Eastern District of Michigan; (vi) the

National Highway Traffic Safety Administration ("*NHTSA*"); (vii) the Consenting OEMs; (viii)

the Plan Sponsor; (ix) all of the Debtors' landlords, and owners and/or operators of premises at

which any of the Debtors inventory and/or equipment is located; and (x) any other party entitled

to notice pursuant to Local Rule 9013–1(m), and it appearing that no other or further notice need

be provided; and this Court having reviewed the Motion; and this Court having held a hearing on

the Motion; and this Court having determined that the legal and factual bases set forth in the

Motion establish just cause for the relief granted herein; and it appearing that the relief requested

in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their

estates as contemplated by Bankruptcy Rule 6003, and is in the best interests of the Debtors,

their estates, creditors, and all parties in interests; and upon all of the proceedings had before this

Court and after due deliberation and sufficient cause appearing therefor, and upon the record

made by the Debtors in the Motion, the declaration of Scott E. Caudill, the Executive Vice

President and Chief Operating Officer for TKH, filed in support of the Debtors' chapter 11

petitions and related first day relief (Docket No. 19) (the "***Caudill Declaration***"), and at the

Hearing and after due deliberation and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.      *Disposition.*  The relief requested in the Motion is granted on an interim basis in

accordance with the terms of this Interim Order.  Any objections to the Motion with respect to

the entry of this Interim Order that have not been withdrawn, waived or settled, and all

reservations of rights included therein, are hereby denied and overruled on the merits.

2.      *Jurisdiction.*  This Court has core jurisdiction over the Cases, the Motion and the

property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue is proper before this

Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      *Notice.*  Under the circumstances, proper, timely, adequate and sufficient notice of

the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules

and the Local Bankruptcy Rules, and no other or further notice of the Motion or the entry of this

Interim Order shall be required, except as set forth in paragraph 26 below. The interim relief

granted herein is necessary to avoid immediate and irreparable harm to the Debtors and their

estates pending the Final Hearing.

4.    *Debtors' Stipulations.*  Without prejudice to any other party in interest (but subject to the limitations thereon contained in paragraphs 12 through 14 below), the Debtors admit, stipulate and agree that:

(a)    as of the Petition Date, the Secured Accommodation Parties owed outstanding amounts to the Debtors in respect of Component Parts or services provided by the Debtors to the Secured Accommodation Parties under the Purchase Orders (the "***Customer Accounts***");

(b)    pursuant to section 502 of the Bankruptcy Code, each Secured Accommodation Party has claims against the Debtors arising from the Debtors' design, manufacture and sale of PSAN Inflators and PSAN Modules to such Secured Accommodation Party, including, but not limited to, Customer Indemnification Claims;

(c)    the amount of each Secured Accommodation Party's Customer Indemnification Claims significantly exceeds such Secured Accommodation Party's Customer Accounts and no portion of the Customer Indemnification Claims or any payments made to the Secured Accommodation Parties or applied to or paid on account of the obligations owing under the Purchase Orders prior to the Petition Date is subject to any recharacterization, subordination, attack, avoidance or other claim, cause of action or other challenge of any nature under the Bankruptcy Code or applicable non-bankruptcy law, *provided* that such Customer Indemnification Claims are subject to, and filed in accordance with, the Consenting OEM Claims Protocol;

(d)    based on the foregoing paragraphs 4(a) through 4(c), each Secured Accommodation Party has a valid and enforceable right of setoff against the Debtors equal in amount to such Secured Accommodation Party's Customer Accounts pursuant to section 553 of

the Bankruptcy Code (each, a "***Prepetition Setoff Right***" and, collectively, the "***Prepetition Setoff Rights***");

(e)     the Prepetition Setoff Rights entitle each Secured Accommodation Party to an allowed secured claim against the Debtors equal in amount to such Secured Accommodation Party's Customer Accounts pursuant to section 506 of the Bankruptcy Code (each, a "***Customer Secured Claim***" and, collectively, the "***Customer Secured Claims***");

(f)     the liens and security interests on the assets of the Debtors granted to the Secured Accommodation Parties pursuant to and in connection with the Access Agreement (the "***Access Agreement Liens***") are: (i) valid, binding, perfected, enforceable liens and security interests in the Collateral (as defined in the Access Agreement) and (ii) not subject to avoidance, recharacterization, subordination, recovery, attack, effect, counterclaim, defense or claim under the Bankruptcy Code or applicable non-bankruptcy law;

(g)     Effective as of the entry of the Final Order, unless expressly and successfully challenged in a Challenge Proceeding (as defined below), each of the Debtors, on behalf of themselves and all of their respective officers, directors, employees, owners, agents, assigns, trustees, successors, and representatives, each in its capacity as such, hereby releases, acquits, and discharges each Consenting OEM and each Consenting OEM's officers, directors, employees, members, owners, agents, assigns, shareholders, successors and representatives each in its capacity as such, from all claims, liabilities, demands, actions, causes of action, losses, damages, costs, expenses, rights, compensation, of whatever kind or nature, at law or in equity, foreseen or unforeseen, contingent or liquidated, matured or unmatured, known or unknown, that exist now, have ever existed, or may exist in the future relating to or arising from any action or inaction prior to the Petition Date (collectively the "***Claims***"), including, but not limited to,

Claims that relate directly or indirectly to a Consenting OEM's (a) decision to source, or not

source, business to the Debtors; (b) decision to terminate any Purchase Order prior to the Petition

Date; (c) decision to resource any business from the Debtors in a manner consistent with the

Accommodation Agreement and any other agreement among any of the Consenting OEMs; or

(d) action, related directly or indirectly to the Restructuring, Sale, or PSAN Inflators (the

"**Debtor Released Claims**"); *provided* that, no person or entity shall be released from any claim

or obligation arising from or related to the Accommodation Agreement (or any right to or claim

for payment arising in the ordinary course under a Purchase Order) or any other agreement

entered into in connection with the Sale or Restructuring including for the avoidance of doubt the

Indemnity Agreement; and *provided further* that, no person or entity shall be released from any

claim arising from or related to any act or omission that constitutes fraud, gross negligence, or

willful misconduct.

     5.     *Findings Regarding the Agreements*

     (a)     Good and sufficient cause has been shown for the entry of this Interim

Order.

     (b)     The Debtors have an immediate need for the accommodations provided by

certain of the Consenting OEMs pursuant to the Agreements, including the payment by the

Secured Accommodation Parties of the Customer Accounts in the ordinary course

(notwithstanding the Prepetition Setoff Rights), the commitment to limit the resourcing of

business, the commitment to limit setoffs, and the commitment to accelerate payment of certain

of the Customer Accounts, as well as certain post-Petition Date accounts payable to the Debtors,

pursuant to the Accommodation Agreement, in order to, among other things, (i) permit the

orderly continuation of the operation of their businesses, (ii) maintain business relationships with

vendors, suppliers and customers, (iii) make payroll and to satisfy other working capital and operational needs (iv) pay the costs and expenses of administering the Restructuring (including, without limitation, payment of the Debtors' professional fees and expenses) and (v) comply with their regulatory obligations, including pursuant to the DOJ Plea Agreement, the Preservation Order and Testing Control Plan issued by NHTSA dated February 24, 2015 and the Consent Order issued by NHTSA dated November 2, 2015 and, as a condition to entering into the Accommodation Agreement, certain of the Consenting OEMs have required that the Debtors enter into the Access Agreement to ensure the continuity of supply of Component Parts and grant Adequate Protection Obligations herein. The access of the Debtors to sufficient working capital and liquidity through payment of the Customer Accounts, including the accelerated payment of certain Customer Accounts, is necessary and vital to the preservation and maintenance of the going concern values of the Debtors and the success of the Cases.

(c)     Pursuant to section 542(b) of the Bankruptcy Code, but for the agreement of the Secured Accommodation Parties, in exchange for, *inter alia*, the grant of the Adequate Protection Liens (as defined below) and the other Adequate Protection Obligations (as defined below), the Secured Accommodation Parties would not be required to pay the Customer Accounts when due.

(d)     The Consenting OEMs have acted in good faith regarding the Agreements.

(e)     The Secured Accommodation Parties are entitled to the adequate protection provided in this Interim Order as and to the extent set forth herein pursuant to sections 362 and 363 of the Bankruptcy Code. Based on the Motion and on the record presented to the Court, the terms of the proposed adequate protection arrangements are fair and reasonable, reflect the Debtors' prudent exercise of business judgment and constitute reasonably equivalent

value and fair consideration for, among other accommodations, the agreement of the Secured Accommodation Parties to accelerate the payment of certain of the Customer Accounts and thereby forbear from exercising their Prepetition Setoff Rights; *provided* that nothing in this Interim Order or the Agreements shall prejudice, limit or otherwise impair the rights of any of the Secured Accommodation Parties to seek, upon a material change in circumstance, new, different or additional adequate protection.

(f)     The Secured Accommodation Parties are entitled to the adequate protection provided in this Interim Order as and to the extent set forth herein pursuant to sections 362 and 363 of the Bankruptcy Code.  Based on the Motion and on the record presented to the Court, the terms of the proposed adequate protection arrangements are fair and reasonable, reflect the Debtors' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for, among other accommodations, the agreement of the Secured Accommodation Parties to accelerate the payment of certain of the Customer Accounts and thereby forbear from exercising their Prepetition Setoff Rights.

(g)     The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 6003 and Local Bankruptcy Rule 4001-2.  Absent granting the relief set forth in this Interim Order, the Debtors' estates will be immediately and irreparably harmed.  Entry into, and approval of,  the Agreements, in accordance with the terms thereof and this Interim Order, and granting the adequate protection provided herein, is therefore in the best interests of the Debtors' estates and consistent with the Debtors' exercise of their fiduciary duties.

6. *Approval of the Agreements.*

(a) The Debtors are authorized, on an interim basis, to (i) enter into the Agreements, (ii) comply with the terms of the Agreements; and (iii) effect the relief granted herein.

(b) The Agreements shall be binding, on an interim basis, and specifically enforceable against the parties thereto in accordance with their terms.

(c) The Debtors are authorized to enter into amendments to, modifications of or waivers of the terms of the Agreements, from time to time as necessary, subject to the terms and conditions set forth in the Agreements, without further order of the Court; *provided however,* that amendments are subject to court approval if the Debtors are not able to represent in such amendment that it is not materially adverse to any Debtor. Within two business days of the effective date of each such amendment, the Debtors will file a notice attaching a copy of any such amendment with the Court.

(d) The Agreements shall be solely for the benefit of the parties thereto, and no other person or entity shall be a third-party beneficiary of the Agreements.

7. *Non-Impairment of Access.* Any parties with liens on, claims against or interests in property subject to the Consenting OEMs' right of access under the Access Agreement shall not take any action to impair such right of access, and all such liens, claims or interests are subject to the terms of the Access Agreement.

8. *Automatic Stay.* Until the Final Order is entered or this Interim Order is reversed or vacated, the automatic stay provisions of section 362 of the Bankruptcy Code are hereby vacated and modified to the extent necessary to permit the Consenting OEMs, to (a) at any time, exercise their setoff rights with respect to Allowed Setoffs, Professional Fee Setoffs, Tooling

Setoffs and Materials Setoffs, (b) send any notices required or permitted to be sent under this Interim Order or the Agreements, (c) subject to the limitations set forth in the Accommodation Agreement, continue their ordinary course of dealings with the Debtors consistent with past practices, including to take possession of Tooling or other property of the Consenting OEMs, to the extent permitted under, and in accordance with, the terms of the Agreements and to resolve normal commercial issues consistent with the Accommodation Agreement and (d) upon (i) the occurrence of the Outside Date, (ii) the termination of the Accommodation Agreement following the occurrence of a Consenting OEM Termination Event (as defined in the Accommodation Agreement) or (iii) with respect to any Consenting OEM, the termination of the Accommodation Agreement by such Consenting OEM following the occurrence of an Event of Default, (A) subject to any applicable cure period set forth in the Accommodation Agreement, exercise any then-remaining Prepetition Setoff Rights, (B) subject to any applicable cure period set forth in the Accommodation Agreement, exercise any and all remedies under the Agreements and (C) upon the giving of five days' prior written notice (which shall run concurrently with any notice required to be provided under the Agreements) (the "*Remedies Notice Period*") to the counsel to the Debtors, who shall then promptly provide notice to the U.S. Trustee, Plan Sponsor and counsel to the official committee of unsecured creditors (if one is appointed) (the "*Creditors' Committee*"), unless the Court orders otherwise during the Remedies Notice Period upon a hearing regarding any exercise of rights or remedies under the Agreements, exercise remedies with respect to the assets of the Debtors subject to the Adequate Protection Liens (as defined below).  In no event shall the Secured Accommodation Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral (as defined

below).  The failure of any party to exercise its rights or remedies under this Interim Order, the Agreements or applicable law shall not constitute a waiver of any of such party's rights.

9.     *Adequate Protection of the Secured Accommodation Parties*.  Each of the Secured Accommodation Parties is entitled, pursuant to sections 362, 363(e) and 507 of the Bankruptcy Code, to adequate protection of its Prepetition Setoff Rights and Customer Secured Claims for and equal in amount to the aggregate diminution in the amount of such Prepetition Setoff Rights and Customer Secured Claims, including, without limitation, any such diminution resulting from, the contractual forbearance set forth in the Accommodation Agreement, the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, and the payment of such Secured Accommodation Party's Customer Accounts (each, an "***Adequate Protection Claim***").  For the avoidance of doubt, there shall be no diminution and therefore no Adequate Protection Claim to the extent setoffs (including setoffs permitted under the Accommodation Agreement) are actually taken against Customer Accounts or to the extent a Secured Accommodation Party's Customer Accounts are otherwise not paid to the Debtors.  In order to induce each Secured Accommodation Party to enter into the Agreements and to accelerate the payment of accounts payable (thereby forbearing from exercising its Prepetition Setoff Rights), in exchange for such payment and as adequate protection of the Adequate Protection Claims, the Secured Accommodation Parties are hereby granted the following (collectively, the "***Adequate Protection Obligations***"):

(a)     <u>Adequate Protection Liens.</u>  Subject to the Carve-Out, each of the Secured Accommodation Parties is hereby granted, on an interim basis, (effective and perfected upon the date of this Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements), on a *pari passu* basis

and in the amount of such Secured Accommodation Party's Adequate Protection Claim, (i) a first-priority replacement lien on all accounts owing by such Secured Accommodation Party to the Debtors following the Petition Date (each, a "***Replacement Lien***" and, collectively, the "***Replacement Liens***") (ii) a valid, perfected junior security interest in and lien upon all property of the Debtors, whether owned on the Petition Date or acquired thereafter, (including any proceeds thereof) except for property subject to the Replacement Liens, that is subject to unavoidable, perfected liens in existence immediately prior to the Petition Date (or that is perfected subsequent to the Petition Date pursuant to Section 546(b) of the Bankruptcy Code) (for clarity, the Replacement Liens shall be junior to any perfected and unavoidable security interest in existence immediately prior to the Petition Date of Comerica Bank in that certain deposit (ending in 3869-5) maintained at Comerica Bank which has a balance of approximately one million four hundred and fifty thousand dollars ($1,450,000) and which secures all obligations of TK Holdings Inc. to Comerica Bank); and (iii) a senior *pari passu* lien on and security interest in all property of the Debtors, whether owned on the Petition Date or acquired thereafter (including any proceeds thereof) other than the property (but not the proceeds thereof) described in the immediately preceding clauses (i) and (ii), in each case other than the Debtors' claims and causes of action under sections 502(d), 544, 545, 547, 548 and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code (collectively, "***Avoidance Actions***"), but, subject only to and effective upon entry of the Final Order, including any proceeds or property recovered, unencumbered or otherwise from Avoidance Actions, whether by judgment, settlement or otherwise ("***Avoidance Proceeds***") (the liens granted to the Secured Accommodation Parties pursuant to the foregoing clauses (i), (ii) and (iii), collectively, the "***Adequate Protection Liens***");

       (b)     <u>Section 507(b) Claim</u>. Subject to the Carve-Out, each of the Secured Accommodation Parties is hereby granted, on an interim basis, a superpriority claim as provided

for in section 507(b) of the Bankruptcy Code (each, a "***507(b) Claim***" and, collectively, the "***507(b) Claims***"), which 507(b) Claims shall have recourse to and be payable from all property of the Debtors other than Avoidance Actions (but including, effective upon entry of the Final Order, Avoidance Proceeds), whether owned on the Petition Date or acquired thereafter, (including any proceeds thereof);

           (c)    Carve-Out.  For purposes hereof, the "***Carve-Out***" shall mean (i) fees owing to the U.S. Trustee incurred in connection with the Chapter 11 Cases, in an unlimited amount and (ii) to the extent ultimately allowed by the Court, claims for unpaid fees, costs and expenses, professional fees, expenses, and disbursements incurred by professional persons employed by the Debtors or the Creditors' Committee whose retention is approved by the Court pursuant to sections 327 and 1103 of the Bankruptcy Code (including the payment of reasonable expenses incurred by members of the Creditors' Committee (but not including counsel for or any professionals retained by an individual Creditors' Committee member)) ("***Professional Fees and Expenses***"), subject to the terms of this Interim Order, the Final Order and any compensation order entered by the Court, that are incurred (a) on and after the Petition Date and before the occurrence of a Carve-Out Trigger Date (defined below), in an unlimited amount and (b)  after the occurrence of a Carve-Out Trigger Date, in an amount not to exceed eight million dollars ($8 million) (the "***Post-Trigger Date Carve-Out***").  For the purposes hereof, a "***Carve-Out Trigger Date***" means the business day after a Consenting OEM Termination Event or Event of Default (each, an "***Accommodation Agreement Event of Default***") has occurred and the Requisite Consenting OEMs have provided notice thereof (via email or otherwise) to counsel to the Debtors; *provided* that any success or transaction fees that may become due and payable to Professional Persons shall not be included in or payable from the Post-Trigger Date Carve-Out;

*provided, further*, that nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement or compensation on any grounds.

(d)        Upon the occurrence of the Carve-Out Trigger Date, the Debtors shall deposit into an interest-bearing escrow account at a financial institution acceptable to the Requisite Consenting OEMs (the "***Carve-Out Account***") an amount equal to the sum of (a) all fees and expenses required to be paid pursuant to section 9(c)(i) above; (b) all billed and unpaid Professional Fees and Expenses (including outstanding holdbacks) incurred on or after the Petition Date and prior to the Carve-Out Trigger Date; (c) all unbilled Professionals Fees and Expenses incurred on or after the Petition Date and prior to the Carve-Out Trigger Date and (d) the amount of the Post-Trigger Date Carve-Out.  The failure of the Carve-Out Account to satisfy in full the amount set forth in the Carve-Out shall not affect the priority of the Carve-Out. The Secured Accommodation Parties shall retain automatically perfected and continuing first priority Adequate Protection Liens in any residual interest in the Carve-Out Account available following satisfaction in full of all obligations benefiting from the Carve-Out (the "***Residual Carve-Out Amount***").  Promptly (but in no event later than five (5) business days) following the satisfaction in full of all obligations benefiting from the Carve-Out, the Debtors shall deliver the Residual Carve-Out Amount, if any, to the Consenting OEMs.

(e)        Monthly Budgets.  The initial Budget (as defined below) through March 31, 2018 (the "Initial Budget Period"), which is attached to the Accommodation Agreement as **Exhibit A**, is hereby approved.  The Debtors will provide an update of the Budget by the 15th of each month, if necessary, indicating any modification to the Budget for the duration of the Budget Period (as defined below), which shall be deemed a "***Budget***" only upon approval as provided in the Accommodation Agreement.

(f)    <u>Monthly Budget Covenants</u>.  At all times, the Debtors shall maintain an actual cash balance (i) in excess of the Minimum Cash Requirements and (ii) of at least 80% of the budgeted cash balance; *provided* that in the event that (x) the aggregate amount of accounts payable that are actually paid by the Consenting OEMs to the Debtors between the Petition Date and such date falls short of (y) the aggregate amount of accounts payable that the Secured Accommodation Parties are supposed to have paid to the Debtors pursuant to the then-effective Budget, such shortfall shall reduce the actual cash balance that the Debtors are required to maintain pursuant to the foregoing clauses (i) and (ii).

(g)    <u>Compliance with Budget</u>. The Debtors shall use the proceeds of accounts payable of the Consenting OEMs solely in accordance with the Budget (subject to any permitted variances under the Accommodation Agreement), including to support continued operations and production of Component Parts for the Consenting OEMs and to pay the costs and expenses of administering the Restructuring (including, without limitation, payment of the Debtors' professional fees and expenses).

(h)    <u>Receipts and Disbursements</u>.  Each month, no later than the fifteenth (15th) calendar day of such month, the Debtors shall provide the Secured Accommodation Parties with a report setting forth the Debtor's actual receipts and disbursements in the prior month and a reconciliation of actual receipts and disbursements with those set forth in the prior month's Budget by type of receipt and disbursement;

10.    *Reservation of Rights of Secured Accommodation Parties*.  Under the circumstances and given that the Secured Accommodation Parties have consented to the adequate protection provisions set forth in this Interim Order and that the above-described adequate protection is consistent with the Bankruptcy Code, the Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Secured

Accommodation Parties; *provided* that any of the Secured Accommodation Parties may request further or different adequate protection, and the Debtors or any other party may contest any such request.

      11.    *Preservation of Rights Granted Under This Interim Order.*

      (a)    Other than the claims and liens expressly granted by this Interim Order, no claim or lien having a priority superior to or *pari passu* with those granted by this Interim Order to the Secured Accommodation Parties shall be granted or allowed while any of the Adequate Protection Claims remain outstanding, and, except as otherwise expressly provided in paragraph 9(a) of this Interim Order, the Adequate Protection Liens shall not be: (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code; (ii) subordinated to or made *pari passu* with any liens arising after the Petition Date *provided* that with respect to any liens or security interests granted in favor of any federal, state, municipal or other domestic or foreign governmental unit (including any regulatory body), commission, board or court for any liability of the Debtors, this clause shall be subject to entry of a Final Order or (iii) subject or junior to any intercompany or affiliate liens or security interests of the Debtors.

      (b)    Notwithstanding any order that may be entered dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered: (i) the 507(b) Claims and the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all Adequate Protection Claims shall have been indefeasibly paid in full in cash (and such 507(b) Claims and Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest); (ii) the other rights granted by this Interim Order shall not be affected; and (iii) this Court shall

retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this paragraph and otherwise in this Interim Order.

(c)     If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect: (i) the validity, priority or enforceability of any Adequate Protection Obligations incurred prior to the actual receipt of written notice by the Secured Accommodation Parties of the effective date of such reversal, modification, vacation or stay; or (ii) the validity, priority or enforceability of the Adequate Protection Liens.  Notwithstanding any such reversal, modification, vacation or stay, any Adequate Protection Obligations, prior to the actual receipt of written notice by the Secured Accommodation Parties of the effective date of such reversal, modification, vacation or stay, shall be governed in all respects by the original provisions of this Interim Order, and the Secured Accommodation Parties shall be entitled to all the rights, remedies, privileges and benefits granted in this Interim Order and the Agreements.

(d)     Except as expressly provided in this Interim Order or in the Agreement, the Adequate Protection Liens and the Adequate Protection Obligations and all other rights and remedies of the Secured Accommodation Parties granted by the provisions of this Interim Order and the Agreements shall survive, and shall not be modified, impaired or discharged by: (i) the entry of an order converting any of the Cases to a case under chapter 7, dismissing any of the Cases, terminating the joint administration of these Cases or by any other act or omission; (ii) the entry of an order approving the sale of any property of the Debtors that is subject to the Adequate Protection Liens (the "*Collateral*") pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by this Interim Order); or (iii) the entry of an order confirming a chapter 11 plan in any of the Cases (except pursuant to a plan that is acceptable to the Consenting OEMs).

The terms and provisions of this Interim Order and the Agreements shall continue in these Cases, in any successor cases if these Cases cease to be jointly administered and in any superseding chapter 7 cases under the Bankruptcy Code, and the Adequate Protection Liens and the Adequate Protection Obligations and all other rights and remedies of the Secured Accommodation Parties granted by the provisions of this Interim Order and the Agreements shall continue in full force and effect until the Restructuring is consummated or the Adequate Protection Claims are indefeasibly paid in full in cash.

12.    *Limitation on Charging Expenses Against Collateral*.  Subject only to and effective upon entry of the Final Order, so long as any of the Adequate Protection Claims remain outstanding, except to the extent of the Carve-Out, no costs or expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Collateral (including Cash Collateral) pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the Secured Accommodation Parties and no such consent shall be implied from any other action, inaction, or acquiescence by the Secured Accommodation Parties, and nothing contained in this Interim Order shall be deemed to be a consent by the Secured Accommodation Parties to any charge, lien, assessment or claim against the Collateral under section 506(c) of the Bankruptcy Code or otherwise.

13.    *Effect of Stipulations on Third Parties*.  The stipulations, admissions, agreements and releases contained in this Interim Order, including, without limitation, in paragraph 4 of this Interim Order, shall be binding upon the Debtors and any successor thereto (including, without limitation, any chapter 7 trustee, chapter 11 trustee or examiner appointed or elected for any of the Debtors) in all circumstances as set forth in this paragraph.  The stipulations, admissions,

agreements and releases contained in this Interim Order, including, without limitation, in

paragraph 4 of this Interim Order, shall be binding upon all other parties in interest, including,

without limitation, any Creditors' Committee and any other person or entity acting or seeking to

act on behalf of the Debtors' estates, in all circumstances for all purposes unless (A) such party

in interest (subject in all respects to any agreement or applicable law that may limit or affect such

entity's right or ability to do so), in each case, with requisite standing granted by the Court, has

timely filed an adversary proceeding or contested matter (subject to the limitations contained

herein, including, *inter alia*, in this paragraph 13) by the earlier of (i) the date that is the later of

(x) 75 days after entry of this Interim Order, (y) 60 days after the appointment of the Creditors'

Committee, if any, and (z) 20 days after the appointment of a chapter 7 or chapter 11 trustee, if

any, is appointed before the expiration of the time periods set forth in clauses (x) and (y) and (ii)

such later date (x) as has been agreed to, in writing, by the applicable Consenting OEMs that

would be a defendant in its sole discretion or (y) as has been ordered by the Court upon a motion

filed and served within any applicable period of time set forth in this paragraph (the "***Challenge***

***Period***"), (i) challenging the amount, validity, enforceability, priority or extent of the Customer

Accounts, the Customer Indemnification Claims, the Prepetition Setoff Rights, the Customer

Secured Claims or the Access Agreement Liens or (ii) otherwise asserting or prosecuting any

action for preferences, fraudulent transfers or conveyances, other avoidance power claims or any

other claims, counterclaims or causes of action, objections, contests or defenses

(collectively, "***Challenge Proceedings***") against any of the Consenting OEMs or their respective

predecessors, successors and assigns, affiliates, subsidiaries, directors, officers, members,

employees, partners, managers, agents, representatives, principals, attorneys, and other

professional advisors, each solely in their capacity as such) (each a "***Representative***" and,

collectively, the "**Representatives**") in connection with matters related to the Purchase Orders, the Agreements, the Customer Accounts, the Customer Indemnification Claims, the Prepetition Setoff Rights, the Customer Secured Claims or the Access Agreement Liens, and (B) there is a final non-appealable order in favor of the plaintiff in any such Challenge Proceeding; *provided* that any pleadings filed in any Challenge Proceeding shall set forth with specificity the basis for such challenge or claim and any challenges or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever waived, released and barred.  If no such Challenge Proceeding is timely and properly filed during the Challenge Period or the Court does not rule in favor of the plaintiff in any such proceeding then: (a) the Debtors' stipulations, admissions, agreements and releases contained in this Interim Order, including, without limitation, those contained in paragraph 4 of this Interim Order shall be binding on all parties in interest, including, without limitation, the Creditors' Committee; (b) the Customer Secured Claims shall constitute allowed secured claims not subject to defense, claim, counterclaim, recharacterization, subordination, offset or avoidance, for all purposes in these Cases, and any subsequent chapter 7 case(s); and (c) the Customer Accounts, the Customer Indemnification Claims, the Prepetition Setoff Rights, and the Customer Secured Claims and the Access Agreement Liens shall not be subject to any other or further claim or challenge by the Creditors' Committee, any non-statutory committees appointed or formed in these Cases or any other party in interest acting or seeking to act on behalf of the Debtors' estates and any defenses, claims, causes of action, counterclaims and offsets by the Creditors' Committee, any non-statutory committees appointed or formed in these Cases, or any other party acting or seeking to act on behalf of the Debtors' estates, whether arising under the Bankruptcy Code or otherwise, against any of the Consenting OEMs and their Representatives arising out of or relating to the Purchase Orders or the Agreements shall be

deemed forever waived, released and barred. If any such Challenge Proceeding is timely filed during the Challenge Period, the stipulations, admissions, agreements and releases contained in this Interim Order, including, without limitation, those contained in paragraph 4 of this Interim Order, shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on the Creditors' Committee and on any other person or entity, except to the extent that such stipulations, admissions, agreements and releases were expressly and successfully challenged in such Challenge Proceeding as set forth in a final, non-appealable order of a court of competent jurisdiction. Nothing in this Interim Order vests or confers on any Person (as defined in the Bankruptcy Code), including the Creditors' Committee or any non-statutory committees appointed or formed in these Cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including, without limitation, Challenge Proceedings with respect to the Purchase Orders, the Agreements, the Customer Accounts, the Customer Indemnification Claims, the Prepetition Setoff Rights, the Customer Secured Claims or the Access Agreement Liens.

14. *Limitation on Use of Proceeds of Consenting OEMs' Accounts Payable*. Notwithstanding anything herein or in any other order by this Court to the contrary, neither the proceeds of Consenting OEMs' accounts payable nor the Carve-Out may be used: (a) for professional fees and expenses incurred for (i) any litigation or threatened litigation (whether by contested matter, adversary proceeding or otherwise, including any investigation in connection with litigation or threatened litigation) against the Consenting OEMs or for the purpose of objecting to or challenging the amount, validity, perfection, enforceability, extent or priority of any claim, lien or security interest held or asserted by any of the Consenting OEMs or (ii) asserting any defense, claim, cause of action, counterclaim, or offset with respect to the

Customer Accounts, the Customer Indemnification Claims, the Prepetition Setoff Rights, the

Customer Secured Claims or the Access Agreement Liens (including, without limitation,

pursuant to section 105, 544, 547, 548, 549, 550 or 552 of the Bankruptcy Code, applicable non-

bankruptcy law or otherwise) against any of the Consenting OEMs or their respective

Representatives; (b) to prevent, hinder or otherwise delay any of the Secured Accommodation

Parties' assertion, enforcement or realization on the Collateral in accordance with the

Agreements or this Interim Order other than to seek a determination that a Consenting OEM

Termination Event or Event of Default, as applicable, has not occurred or is not continuing; (c)

to seek to modify any of the rights granted to the Secured Accommodation Parties under this

Interim Order or under the Agreements, in each of the foregoing cases without such parties' prior

written consent, which may be given or withheld by the Secured Accommodation Parties in the

exercise of their respective sole discretion; or (d) pay any amount on account of any claims

arising prior to the Petition Date unless such payments are approved by an order of this Court

(including, without limitation, hereunder); *provided* that notwithstanding anything to the contrary

herein, no more than an aggregate of fifty thousand dollars ($50,000) of Consenting OEMs'

accounts payable or proceeds thereof may be used by the Creditors' Committee during the

Challenge Period to investigate the claims and setoff rights of the Consenting OEMs

(the "*Committee Investigation Budget*").

15.    *Exculpation.*  Subject to entry of a Final Order, nothing in this Interim Order, the

Agreement, or any other documents related to these transactions shall in any way be construed or

interpreted to impose or allow the imposition upon the Consenting OEMs of any liability for any

claims arising from the prepetition or postpetition activities of the Debtors in the operation of

their business, or in connection with their restructuring efforts.

16.    *Order Governs.*  In the event of any inconsistency between the provisions of this Interim Order and the Agreements, the provisions of this Interim Order shall govern.

17.    *Binding Effect; Successors and Assigns.*  Subject to paragraph 13, if applicable, the Agreements and the provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in these Cases, including, without limitation, Secured Accommodation Parties, Creditors' Committee, any non-statutory committees appointed or formed in these Cases, the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the Consenting OEMs and the Debtors and their respective successors and assigns.

18.    *Limitation of Liability.*  In entering into the Agreements and exercising their rights and remedies thereunder, the Consenting OEMs shall not (i) be deemed to be in "control" of the operations of the Debtors; (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates; and (iii) subject to entry of a Final Order, be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of the Debtors (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601, et seq., as amended, or any similar federal or state statute).

19.    *Effectiveness.*  This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable nunc pro tunc to the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h),

6006(d), 7062, or 9014 of the Bankruptcy Rules or any Local Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

20.    *Headings*. Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

21.    *Bankruptcy Rules*. The requirements of Bankruptcy Rules 4001, 6003, 6004, and 9014 in each case to the extent applicable, are satisfied by the contents of the Motion.

22.    *Necessary Action*. The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Interim Order.

23.    *Retention of Jurisdiction*. The Court shall retain jurisdiction to enforce the provisions of this Interim Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for any one or more of the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

24.    *Final Hearing*. The Final Hearing is scheduled for _July 26_ 2017 at _11:00_ a.m. before this Court.

25.    *Objections*. Any party in interest objecting to the relief sought at the Final Hearing shall file and serve written objections, which objections shall be served upon (i) counsel to the Debtors, (ii) counsel to the Office of the United States Trustee for the District of Delaware; (iii) counsel for any statutory committee appointed in these cases and (iv) counsel for the Consenting OEMs and Secured Accommodation Parties, Morris, Nichols, Arsht & Tunnell LLP,

1201 North Market Street, 16th Floor, Wilmington, DE 19899 (Attn. Derek C. Abbott)  so as to
be received no later than 4:00 p.m. (Prevailing Eastern Time) on ___July 19___, 2017.

     26.    The Debtors shall promptly serve copies of this Interim Order (which shall
constitute adequate notice of the Final Hearing) to the parties having been given notice of the
Hearing, to any party that has filed a request for notices with this Court and to the Creditors'
Committee after the same has been appointed, or such Creditors' Committee's counsel, if the
same shall have been appointed.

Dated: June ___2 7___, 2017
       Wilmington, Delaware

THE HONORABLE BRENDAN L. SHANNON
CHIEF UNITED STATES BANKRUPTCY JUDGE