UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

---------------------------------------------------x
                             :

In re                         :        **Chapter 11**

                             :

**TK HOLDINGS INC.,** *et al.,*    :        **Case No. 17-11375 (BLS)**

                             :

           **Debtors.**[1]      :        **Jointly Administered**

                             :

                             :        **Obj. Deadline: July 19, 2017 at 4:00 p.m. (ET)**

                             :        **Hr'g Date: July 26, 2017 at 11:00 a.m. (ET)**

---------------------------------------------------x

**MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 365(a) AND
105(a) AND FED. R. BANKR. P. 6004 AND 6006 FOR AUTHORITY
<u>TO REJECT CERTAIN UNEXPIRED REAL PROPERTY LEASES</u>**

        TK Holdings Inc. ("***TKH***") and its affiliated debtors in the above-captioned

chapter 11 cases (the "***Chapter 11 Cases***"), as debtors and debtors in possession (collectively, the

"***Debtors***"), respectfully represent as follows in support of this motion (this "***Motion***"):

<u>**Relief Requested**</u>

        1.        By this Motion, pursuant to sections 365(a) and 105(a) of title 11 of the

United States Code (the "***Bankruptcy Code***") and Rules 6004 and 6006 of the Federal Rules of

Bankruptcy Procedure (the "***Bankruptcy Rules***"), the Debtors are seeking entry of an order

authorizing TKH to reject, *nunc pro tunc* to the date of the filing of this Motion, its interest in

(i) that certain Office Lease, dated January 28, 2015, between TKH and Waterfront Office

Building LP ("***WOB***"), for certain commercial office space in Stamford, Connecticut

(the "***Waterfront Lease***"), and (ii)  that certain Office Lease dated April 1, 2016, between TKH

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Takata Americas (9766); TK Finance, LLC (2753); TK China, LLC (1312); TK Holdings Inc. (3416); Takata Protection Systems Inc. (3881); Interiors in Flight Inc. (4046); TK Mexico Inc. (8331); TK Mexico LLC (9029); TK Holdings de Mexico, S. de R.L. de C.V. (N/A); Industrias Irvin de Mexico, S.A. de C.V. (N/A); Takata de Mexico, S.A. de C.V. (N/A); and Strosshe-Mex, S. de R.L. de C.V. (N/A).  Except as

and Regus Management Group, LLC ("***Regus***" and, together with, WOB, the "***Landlords***"), for certain commercial office space in Dublin, Ohio (the "***Dublin Lease***" and, together with the Waterfront Lease, the "***Leases***").  Each of the Leases is described in further detail below and on **Schedule 1** to the proposed form of order granting the relief requested herein, a copy of which is annexed hereto as **Exhibit A** (the "***Proposed Order***").

### Jurisdiction

2.    The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Rule 9013–1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "***Local Rules***"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Background

3.    On June 25, 2017 (the "***Petition Date***"), each of the Debtors commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors has been appointed in these Chapter 11 Cases.

---

otherwise set forth herein, the Debtors' international affiliates and subsidiaries are not debtors in these chapter 11 cases.  The location of the Debtors' corporate headquarters is 2500 Takata Drive, Auburn Hills, Michigan 48326.

4.       The Debtors' Chapter 11 Cases have been jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.

5.       On the Petition Date, in coordination with the commencement of the Chapter 11 Cases, Takata Corporation, the Debtors' ultimate corporate parent ("***TKJP***" and, together with its direct and indirect global subsidiaries, including TKH, "***Takata***"), together with Takata Kyushi K.K. and Takata Service Corporation, commenced civil rehabilitation proceedings under the Civil Rehabilitation Act of Japan in the 20th Department of the Civil Division of the Tokyo District Court.  On June 28, 2017, the Debtors also commenced an ancillary proceeding under the Companies' Creditors Arrangement Act (Canada), R.S.C. 1985, c. C-36 as amended (the "***CCAA***") in the Ontario Superior Court of Justice (Commercial List) (the "***Canadian Court***") in Ontario, Canada.

6.       Additional information regarding the circumstances leading to the commencement of these Chapter 11 Cases and information regarding the Debtors' businesses and capital structure is set forth in the *Declaration of Scott E. Caudill in Support of Debtors' Chapter 11 Petitions and First Day Relief*, dated June 25, 2017 [Docket No. 19] (the "***Caudill Declaration***").

**The Leases**

7.       In connection with the Chapter 11 Cases, the Debtors have undertaken a concerted effort to analyze all aspects of their businesses as part of their ongoing sales efforts, including facility costs, equipment costs, projected demand for their services, and other business factors.  The analysis of their business needs has enabled the Debtors to identify leases that are no longer needed for future operations.

8.       Pursuant to the Waterfront Lease, TKH leased certain office space in Stamford, Connecticut, which the Debtors no longer occupy.  Accordingly, TKH is currently not

using the Waterfront Lease and has no plans to do so in the future.  TKH currently pays approximately three thousand fifty five dollars ($3,055.00) per month in base rent, as well as certain other expenses under the Waterfront Lease.  The Waterfront Lease does not expire until January 28, 2018.  Similarly, TKH has determined that it no longer needs the Dublin Lease and will vacate the premises on June 30, 2017.  TKH currently pays approximately four thousand four hundred dollars ($4,400.00) per month in base rent plus approximately one thousand two hundred dollars ($1,200.00) per month in fees and expenses (for a total monthly spend of approximately five thousand six hundred dollars ($5,600.00) per month).  The Dublin Lease does not expire until June 30, 2018.  The Debtors have (i) unequivocally surrendered possession of the leased property by returning the keys, keycodes, or otherwise (the Debtors no longer have a key to the Waterfront Lease, but are willing to make alternative arrangements with the Landlord if necessary), (ii)  notified the Landlords of the Debtors' unequivocal surrender of the Leases and of this Motion, and (iii) made a determination that the Leases will not be withdrawn from this Motion – the decision to reject is final.

9.    Each of the Leases, therefore, represents an unnecessary expense for the Debtors' estates and it is in the best interest of the Debtors, their creditors and these estates that the Debtors avoid incurring additional monthly rental expense.  It is the Debtors' business judgment that it is in the best interests of their estates and creditors to reject the Leases, *nunc pro tunc* to the date of this Motion, pursuant to section 365 of the Bankruptcy Code.  Rejection of the Leases will maximize the value of the estates by decreasing the Debtors' monthly expenses for premises, equipment and services that are not a part of the Debtors' continuing operations, and will not be utilized as part of the Debtors' efforts to sell their assets.  It is imperative that the

Debtors move quickly to reject their interests in the Leases to limit their exposure to administrative expenses during the Chapter 11 Cases.

<u>**Basis for Relief Requested**</u>

**A.     The Debtors Are Exercising Sound Business Judgment in Rejecting the Leases**

10.     Bankruptcy Code section 365(a) provides that a debtor in possession, "subject to the court's approval, may . . . reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a); *See In re Rickel Home Ctrs., Inc.*, 209 F.3d 291, 298 (3d Cir. 2000) (section 365 of the Bankruptcy Code "allows a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed").  Courts defer to a debtor's business judgment in evaluating the proposed assumption or rejection of an executory contract.  *See NLRB v. Bildisco (In re Bildisco),* 682 F.2d 72, 79 (3d Cir. 1982), *aff'd*, 465 U.S. 513 (1984) ("The usual test for rejection of an executory contract is simply whether rejection would benefit the estate, [under] the 'business judgment' test."); *see also In re Caribbean Petroleum Corp.*, 444 B.R. 263, 268 (Bankr. D. Del. 2010) (applying the business judgment standard in evaluating the rejection of an executory contract, and holding that the debtor's reliance on advisors' expert advice was sufficient to discharge that burden); *In re Armstrong World Indus., Inc.*, 348 B.R. 136, 162 (Bankr. D. Del. 2006) ("[U]nder section 365 of the Bankruptcy Code, a debtor may assume an executory contract . . . if . . . the debtor's decision to assume such executory contract . . . is supported by valid business justifications.").

11.     Under the business judgment standard, so long as a debtor's decision is reasonable and in the best interests of the bankruptcy estate, courts generally defer to the business judgment of the debtor's management.  *See Stanziale v. Nachtomi (In re Tower Air, Inc.*), 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment

5

rule on the merits is a near-Herculean task.  Delaware courts have said that it may be accomplished by showing either irrationality or inattention."); *Armstrong*, 348 B.R. at 162 ("Courts have uniformly deferred to the business judgment of the debtor to determine whether the rejection of an executory contract or unexpired lease by the debtor is appropriate under section 365(a)."); *In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001) ("A debtor's decision to reject an executory contract must be summarily affirmed unless it is the product of 'bad faith, or whim or caprice.'") (quoting *Wheeling-Pittsburgh Steel Corp. v. W. Penn Power Co. (In re Wheeling-Pittsburgh Steel Corp.)*, 72 B.R. 845, 849-50 (Bankr. W.D. Pa. 1987)).

12.     Section 105(a) of the Bankruptcy Code further provides that the court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  Section 105(a) allows the bankruptcy court to "craft flexible remedies that, while not expressly authorized by the [Bankruptcy] Code, effect the result the [Bankruptcy] Code was designed to obtain."  *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 235-36 (3d Cir. 2004) (citing *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 568 (3d Cir. 2003)).  Section 105(a) provides additional authority to the Court to grant the relief requested herein.

13.     As explained more fully above, the Leases serve no benefit to the Debtors' estates.  Thus, the Debtors have determined, in the exercise of their business judgment, to reject the Leases and avoid any potential additional expenses related thereto.  Absent rejection, the Leases will impose a *loss* of value on the Debtors because they will continue to pay rent and expenses for an unused office space. Based on a cost-benefit analysis, the Debtors have therefore

determined, in the sound exercise of their reasonable business judgment, that TKH's interest in each of the Leases should be rejected.

### B.    Nunc Pro Tunc Relief is Appropriate

14.    Pursuant to section 365 of the Bankruptcy Code, the Debtors seek to effectuate rejection of the Leases prior to the date an order approving rejection is entered by the Court.  An order approving rejection of the Leases as of such date will expedite the Debtors' relief from potentially onerous obligations, and is fair and equitable to all parties.

15.    Bankruptcy courts are empowered to grant retroactive rejection of a contract or lease under Bankruptcy Code sections 105(a) and 365(a).  *See Thinking Machs. Corp. v. Mellon Fin. Servs. Corp. (In re Thinking Machines Corp.)*, 67 F.3d 1021, 1028-29 (1st  Cir. 1995) (indicating "rejection under section 365(a) does not take effect until judicial approval is secured, but the approving court has the equitable power, in suitable cases, to order a rejection to operate retroactively" to the motion filing date); *see also Pacific Shore Dev., LLC v. At Home Corp. (In re At Home Corp.)*, 392 F.3d 1064, 1069 (9th Cir. 2004) (same); *In re Chi-Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. D. Del. 2004) ("[T]he court's power to grant retroactive relief is derived from the bankruptcy court's equitable powers so long as it promotes the purposes of § 365(a).").  Courts in this jurisdiction have previously considered and allowed retroactive rejection.[2]

---

[2] *See, e.g.*, *In re Cal Dive Int'l, Inc.*, Case No. 15-10458 (CSS) (Bankr. D. Del. Apr. 6, 2015) (authorizing *nunc pro tunc* rejection of contracts and leases) [Docket No. 216]*; In re Longview Power, LLC*, Case No. 13-12211 (BLS) (Bankr. D. Del. June 23, 2014) (authorizing rejection of certain executory contracts *nunc pro tunc* to the date of filing the motion) [Docket No. 1311]; *In re ZCO Liquidating Corp.*, Case No. 13-13126 (PJW) (Bankr. D. Del. Feb. 20, 2014) (authorizing rejection of certain executory contract *nunc pro tunc* to the date of filing the motion) [Docket No. 320]; *In re iGPS Co.*, Case No. 13-11459 (KG) (Bankr. D. Del. July 29, 2013) (authorizing rejection of certain employment-related agreements *nunc pro tunc* to the date of filing the motion) [Docket No. 411]; *In re AES E. Energy, L.P.*, Case No. 11-14138 (KJC) (Bankr. D. Del. May 17, 2012) (authorizing rejection of unexpired leases *nunc pro tunc* to date of filing the motion) [Docket No. 484]; *In re Mail Systems Liquidation, Inc.*, Case No. 11-11187 (PJW) (Bankr. D. Del. Oct. 18, 2011) (same) [Docket No. 502]; *In re Aleris Int'l Inc.*, Case No. 09-10478 (BLS) (Bankr. D. Del. June 2, 2009) (same) [Docket No. 632]; *In re Source Interlink Companies Inc.*, Case No. 09-11424 (KG) (Bankr. D. Del. May 27, 2009) (authorizing the rejection of leases retroactive to the petition date)

16.     The equities of these cases favor rejection of the Leases *nunc pro tunc* to the date of filing of this Motion, the date by which WOB and Regus will have each received notice of TKH's intent to reject each of the Dublin Leases.  On one hand, *nunc pro tunc* rejection will permit the Debtors to reduce burdensome costs and avoid additional, unnecessary administrative charges for a contract that is not necessary to operations or TKH's chapter 11 wind down.  On the other hand, WOB and Regus will not be unduly prejudiced if the Leases are rejected *nunc pro tunc* because the Debtors have advised them of their intent to reject those Leases, and, in the case of the Waterfront Lease, the Debtors have not occupied the property in well over a year.  The Debtors accordingly submit that retroactive rejection of both the Leases is warranted.

17.     Moreover, retroactive rejection is appropriate where, as here, the Debtors (i) have unequivocally surrendered possession of the leased property, by returning the keys, keycodes, or otherwise, (ii) served on the landlords notice of unequivocal surrender of the Leases and notice of this Motion, (iii) will not withdraw a Lease from this Motion absent the consent of the applicable landlord, and (iv) received the consent of the official committee of unsecured creditors to reject the Leases.  *See In re Namco Cybertainment, Inc.*, Case No. 98-00173 (PJW) (Bankr. D. Del. Apr. 15, 1998).  As described above, the Debtors have satisfied the first three requirements of the *Namco* test, and the fourth is inapplicable because no official committee of unsecured creditors has been appointed in these cases.

## Reservation of Rights

18.     Nothing contained in this Motion or any action taken by the Debtors in implementing this Motion shall be deemed (i) an admission as to the validity of any claim

---

[Docket No. 223]; *In re Buffets Holdings, Inc.*, Case No. 08-10141 (MFW) (Bankr. D. Del. Feb. 13, 2008) (same) [Docket No. 292].

RLF1 17780900v.1

against the Debtors, (ii) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; (iii) an admission that either of the Leases is integrated with any other contract or lease; (iv) a waiver by the Debtors of their right to assert that either of the Leases was terminated prior to the Petition Date; (v) a waiver or limitation of the Debtors' right to assert at a later date that either one of the Leases is not an executory contract, or (vi) a concession or evidence that either of the Leases has not expired, been terminated, or is otherwise currently not in full force and effect.

### Request for Bankruptcy Rule 6004 Waivers

19.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  The Debtors, seeking to minimize administrative expenses and preserve the value of TKH's estate, are moving to eliminate unneeded and burdensome obligations.  Accordingly, the Debtors request that to the extent it may be applicable, the Court waive the fourteen-day stay contemplated by Bankruptcy Rule 6004(h) to allow TKH to quickly reject the Leases.

### Notice

20.     Notice of this Motion has been provided to (i) the Office of the United States Trustee for the District of Delaware (Attn: David Buchbinder, Esq. and Jane Leamy, Esq.); (ii)  the Debtors' fifty (50) largest unsecured creditors on a consolidated basis; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the Offices of the United States Attorney for each of the District of Delaware and the Eastern District of Michigan; (vi) NHTSA; (vii) each of the Consenting OEMs; (viii) the Plan Sponsor; (ix) each of the Landlords, and (x) any other party entitled to notice pursuant to Bankruptcy Rule 2002.  Based

on the urgency of the circumstances surrounding this Motion and the nature of the relief

requested herein, the Debtors respectfully submit that no further notice is required.

21.     No previous request for the relief sought herein has been made by the

Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of the Proposed Order

granting the relief requested herein and such other and further relief as the Court may deem just

and appropriate.

Dated: June 30, 2017
        Wilmington, Delaware

/s/ *Brett M. Haywood*
RICHARDS, LAYTON & FINGER, P.A.
Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Amanda R. Steele (No. 5530)
Brett M. Haywood (No. 6166)
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

-and-

WEIL, GOTSHAL & MANGES LLP
Marcia L. Goldstein
Ronit J. Berkovich
Matthew P. Goren
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

*Proposed Attorneys for the Debtors*
*and Debtors in Possession*

RLF1 17780900v.1