IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TK HOLDINGS INC., | ) | Case No. 17-11375 (BLS) |
| | ) | |
| Debtors. | ) | |
| | ) | |

**NOTICE OF THE UNITED STATES OF AMERICA CONCERNING THE REVIEW OF CERTAIN TRANSACTIONS BY THE COMMITTEE ON FOREIGN INVESTMENT IN THE UNITED STATES**

The United States of America respectfully submits this statement to address the possibility that certain transactions contemplated by the *Third Amended Joint Chapter 11 Plan of Reorganization of TK Holdings Inc. and Its Affiliated Debtors* [Docket No. 1629] (Plan)[1] may be subject to review by the Committee on Foreign Investment in the United States (CFIUS), which could affect the ability of the parties to complete the transactions, the timing of their completion, and/or their terms.

**A.     The Global Transaction and the Plan's Essential Regulatory Approvals**

1.     On June 25, 2017, the Debtors commenced with this Court a voluntary chapter 11 case. On January 5, 2018, the Debtors filed the Plan and associated *Disclosure Statement for Third Amended Joint Chapter 11 Plan of Reorganization of TK Holdings Inc. and Its Affiliated Debtors* [Docket No. 1630] (Disclosure Statement). The Plan provides for a "sale of substantially all of Takata's worldwide assets unrelated to the manufacture and sale of PSAN Inflators" to the Plan Sponsor "for an aggregate purchase price of $1.588 billion." Disclosure Statement Art. I.

---

[1] Any capitalized term not defined herein has the meaning ascribed to it in the Plan and the Disclosure Statement.

2.     The Plan and other relevant documents describe certain regulatory approvals that must be obtained. Article IX of the Plan details conditions precedent to (a) confirmation of the Plan and (b) the occurrence of the Effective Date. Section 9.2 of the Plan lists conditions precedent to the Effective Date. Under Section 9.2(o), in order for the Plan to become effective, the Debtors must obtain "all authorizations, consents, regulatory approvals, ruling[s], or documents that are necessary to implement and effectuate the Plan."

3.     The Disclosure Statement contains greater specificity about the regulatory approvals contemplated by the Debtors. As relevant here, the Disclosure Statement provides that CFIUS must clear the U.S. Acquisition Agreement [Docket No. 1110-1], under which certain Takata subsidiaries will sell substantially all of their non-PSAN Assets to the Plan Sponsor. *See* Disclosure Statement §§ 1.1, 5.13(l)(xvi), 10.1(a) ("The U.S. Acquisition Agreement contains an extensive list of conditions to closing. . . . These conditions include, among others, . . . that certain consents and regulatory approvals be obtained, including CFIUS clearance . . . ."); U.S. Acquisition Agreement §§ 7.4, 9.3. It further states that failure to obtain CFIUS clearance may result in the Plan Sponsor's obligation to pay a regulatory termination fee. *See* Disclosure Statement § 5.13(g); U.S. Acquisition Agreement § 4.7(a).

**B.     CFIUS's Purpose and Membership**

4.     CFIUS is an inter-agency committee authorized to review transactions that could result in control of a U.S. business by a foreign person in order to determine the effect of such transactions on the national security of the United States. *See* 50 U.S.C. § 4565(b)(1)(A).

5. Section 721 of the Defense Production Act of 1950, as amended (currently codified at 50 U.S.C. § 4565) (Section 4565), authorizes the President, acting through CFIUS, to review any merger, acquisition, or takeover "which could result in foreign control of any person engaged in interstate commerce in the United States." 50 U.S.C. § 4565(a)(3). Any such transaction with this possible effect is referred to as a "covered transaction." *Id.* The term "person" is defined to mean any individual or entity. 31 C.F.R. § 800.221. Covered transactions could include a purchase by a foreign person of an entity engaged in interstate commerce in the United States (a U.S. business) that is in bankruptcy, including components of a business or assets that constitute a U.S. business under the CFIUS regulations. *See* 31 C.F.R. Part 800.

6. The members of CFIUS include the Secretaries of the Treasury (chair), State, Defense, Commerce, Energy, and Homeland Security; the Attorney General; the United States Trade Representative; and the Director of the White House Office of Science and Technology Policy; the heads of any other executive department, agency, or office may participate as determined to be appropriate on a case-by-case basis. 50 U.S.C. § 4565(k)(2); Exec. Order No. 11858, § 3(b), *as amended by* Exec. Order No. 13456, 73 Fed. Reg. 4677 (Jan. 23, 2008).

C. **The CFIUS Process**

7. CFIUS review can be initiated voluntarily or involuntarily. Any party to a covered transaction can file a voluntary notice of the transaction with CFIUS, or CFIUS can unilaterally initiate review of the transaction.[2] *See* 50 U.S.C. § 4565(b)(1)(C), (D).

---

[2] The Debtors have acknowledged their intention to voluntarily submit a written notice of the transaction to CFIUS. *See* U.S. Acquisition Agreement § 7.4(b) ("[T]he Plan Sponsor and Sellers shall use reasonable best efforts to promptly prepare and file a draft Joint Voluntary Notice for review by the CFIUS staff.").

Following a 30-day review period, *see id.* § 4565(b)(1)(E), two principal outcomes are possible. First, CFIUS could determine not to undertake an investigation and conclude action with respect to the transaction. *See* 31 C.F.R. § 800.504. Alternatively, CFIUS may initiate a 45-day investigation into the "effects of [the] covered transaction on the national security of the United States." *Id.* § 4565(b)(2)(A).

8. Upon completion of any investigation, CFIUS may conclude action with respect to the transaction, *see* 31 C.F.R. § 800.506(d), or, if CFIUS determines that the transaction poses national security concerns that cannot be resolved, unless the parties choose to abandon the transaction, CFIUS will send a report to the President requesting his decision on whether to take an action to suspend or prohibit the transaction, 50 U.S.C. § 4565(d)(1), which must be made within 15 days. *Id.* § 4565(d)(2). Such action taken by the President is not subject to judicial review. *Id.* § 4565(e).

9. CFIUS may seek to mitigate any threat to the national security of the United States that arises as a result of a covered transaction by entering into agreements with a party or imposing conditions on the transaction. *See* 50 U.S.C. § 4565(l)(1)(A). In addition, the process could be prolonged by pre-notification informal consultations, *see* 31 C.F.R. § 800.401(f) (encouraging such discussions); withdrawal by the parties of any written notification of a transaction, 50 U.S.C. § 4565(b)(1)(C)(ii); and by informal discussions regarding possible resubmission. *Id.* § 4565(b)(1)(C)(iii).

10. In conducting its national security risk analysis, CFIUS considers issues including, for example, domestic production needed for projected national defense requirements and the capability and capacity of domestic industries to meet national defense requirements. *See id.* § 4565(f). Section 4565(f)(1)-(11) lists factors that CFIUS

considers in assessing national security risk.

**D.**     **Confidentiality in the CFIUS Review Process**

11.     The CFIUS review process is subject to explicit confidentiality provisions, with a limited exception for disclosure as may be relevant to any administrative or judicial action or proceeding.  *See* 50 U.S.C. § 4565(c); 31 C.F.R. § 800.702. Unpermitted disclosure of certain information or material filed with CFIUS can result in criminal penalties, including fines and imprisonment.  *See* 31 C.F.R. § 800.702.  "[T]here is . . . a clearly articulated intention, on the part of each of the legislative and executive branches of our government, that the CFIUS process remain confidential." *In re Glob. Crossing Ltd.*, 295 B.R. 720, 724–25 (Bankr. S.D.N.Y. 2003).  The CFIUS statutory and regulatory confidentiality provisions apply in bankruptcy.  *See id.*; *see also* Fed. R. Bankr. P. 9018 ("[T]he court may make any order which justice requires . . . to protect governmental matters that are made confidential by statute or regulation.").  Nothing in the CFIUS regulatory confidentiality provisions, however, prohibits the public disclosure by a party of documentary material or information that it has filed with CFIUS.  *See* 31 C.F.R. § 800.702(c).

Dated: February 9, 2018									Respectfully submitted,

MICHAEL S. RAAB
Acting Deputy Assistant Attorney General

/s/ *Jonathan E. Jacobson*
RUTH A. HARVEY
LLOYD H. RANDOLPH
JONATHAN E. JACOBSON

Department of Justice
Commercial Litigation Branch, Civil Division
1100 L Street, NW
Washington, DC 20005
TEL: (202) 353-7971
FAX: (202) 514-9163
EMAIL: jonathan.e.jacobson@usdoj.gov

## **CERTIFICATE OF SERVICE**

  I certify that on February 9, 2018, a copy of the attached Notice was served via the Court's CM/ECF system on all parties requesting notice.

               */s/ Jonathan E. Jacobson*
               Jonathan E. Jacobson
               U.S. Department of Justice