**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

------------------------------------------------------x
:
In re                                         :     Chapter 11
:
**TK HOLDINGS INC.,** *et al.,*               :     Case No. 17-11375 (BLS)
:
Debtors.[1]                                   :     Jointly Administered
:
: Hearing Date: March 13, 2018 at 10:00 a.m. (EST)
: Obj. Deadline: February 28, 2018 at 4:00 p.m. (EST)
------------------------------------------------------x

**MOTION OF DEBTORS PURSUANT TO 11 U.S.C. § 105(a) AND FED. R. BANKR. P. 9019 FOR ENTRY OF AN ORDER AUTHORIZING AND APPROVING SETTLEMENT AGREEMENT AMONG THE DEBTORS AND ATTORNEYS GENERAL MULTISTATE WORKING GROUP**

TK Holdings Inc. ("*TKH*") and its affiliated debtors in the above-captioned chapter 11 cases (the "*Chapter 11 Cases*"), as debtors and debtors in possession (collectively, the "*Debtors*"), respectfully represent as follows:

**RELIEF REQUESTED**

1.  By this motion ("*Motion*"), pursuant to section 105 of title 11 of the United States Code (the "*Bankruptcy Code*") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"), the Debtors request that the Court enter an order authorizing and approving the Consent Decree and Settlement Agreement (the "*Settlement Agreement*"),[2] among the Debtors and the Attorneys General of the States, Commonwealths,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Takata Americas (9766); TK Finance, LLC (2753); TK China, LLC (1312); TK Holdings Inc. (3416); Takata Protection Systems Inc. (3881); Interiors in Flight Inc. (4046); TK Mexico Inc. (8331); TK Mexico LLC (9029); TK Holdings de Mexico, S. de R.L. de C.V. (N/A); Industrias Irvin de Mexico, S.A. de C.V. (N/A); Takata de Mexico, S.A. de C.V. (N/A); and Strosshe-Mex, S. de R.L. de C.V. (N/A). Except as otherwise set forth herein, the Debtors' international affiliates and subsidiaries are not debtors in these chapter 11 cases. The location of the Debtors' corporate headquarters is 2500 Takata Drive, Auburn Hills, Michigan 48326.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such term in the Settlement Agreement or the Plan (as defined below), as applicable.

Districts, or Territories of ALABAMA, ALASKA, ARIZONA, ARKANSAS, CALIFORNIA, CONNECTICUT, DELAWARE, DISTRICT OF COLUMBIA, FLORIDA, GEORGIA, IDAHO, ILLINOIS, INDIANA, IOWA, KANSAS, KENTUCKY, LOUISIANA, MAINE, MARYLAND, MASSACHUSETTS, MICHIGAN, MINNESOTA, MISSISSIPPI, MISSOURI, MONTANA, NEBRASKA, NEVADA, NEW HAMPSHIRE, NEW JERSEY, NEW YORK, NORTH CAROLINA, NORTH DAKOTA, OHIO, OKLAHOMA, OREGON, PENNSYLVANIA, RHODE ISLAND, SOUTH CAROLINA, SOUTH DAKOTA, TENNESSEE, TEXAS, UTAH, VIRGINIA, WASHINGTON, and WISCONSIN (each a "*State*" and collectively, the "*States*" and, together with TKH, each a "*Party*" and collectively, the "*Parties*") to resolve the State Consumer Protection Claims (as defined in the Settlement Agreement) and all other issues and investigation of the Attorneys General Multistate Working Group ("*MSWG*") into TKH and the Debtors.

2. A proposed form of order granting the relief requested herein on a final basis is annexed hereto as **Exhibit A** (the "*Proposed Order*"). A copy of the Settlement Agreement is attached as **Schedule 1** to the Proposed Order.

## JURISDICTION

3. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Rule 9013–1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "*Local Rules*"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties,

2

cannot enter final orders or judgments consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

### Events Leading to the Chapter 11 Cases and the Formation of the MSWG

4. In April 2015, the MSWG was formed to investigate, among other things, the business practices of TKH. Each State is a member of the MSWG. The MSWG investigation was prompted by reports of airbag inflator ruptures, which resulted in fragments of the airbag inflator piercing the airbag and injuring and killing Motor Vehicle occupants.

5. The ruptures prompted the National Highway Traffic Safety Administration ("*NHTSA*") and certain original equipment manufacturers of Motor Vehicles ("*OEMs*") to initiate extensive Recalls of Motor Vehicles equipped with Takata airbag inflators containing phase-stabilized ammonium nitrate ("*PSAN Inflators*") in the United States and abroad. As of June 2017, over sixty million (60,000,000) non-desiccated PSAN Inflators in the United States and more than sixty four million (64,000,000) non-desiccated PSAN Inflators outside of the United States have been recalled or will be subject to Recalls based on announced schedules.

6. On July 11, 2017, TKH filed with NHTSA a Defect Information Report and initiated the recall of approximately three million (3,000,000) PSAN Inflators in the United States that were desiccated with the propellant formulation codenamed "2004", which utilizes calcium sulfate as a desiccant. The Recalls of Motor Vehicles containing PSAN Inflators have affected tens of millions of Consumers in the United States, including Consumers located within the jurisdiction of the States.

7. NHTSA issued Consent Orders dated May 18, 2015 and November 3, 2015 and the Amendment, dated May 4, 2016, to the November 3, 2015 Consent Order in the

NHTSA proceeding captioned *In re EA 15-001 Air Bag Inflator Rupture* (as each may be further amended, modified, or supplemented, collectively the "***NHTSA Consent Order***") requiring TKH to implement a series of actions, including the hiring of an independent monitor, the phasing out of the manufacture and sale of non-desiccated PSAN Inflators by the end of 2018, the testing of desiccated PSAN Inflators to determine whether such inflators are defective and to determine the service life and safety of such inflators, the submission to NHTSA of a detailed written report regarding the history of the rupturing PSAN Inflators, the termination of certain employees, the appointment of a Chief Safety and Accountability Officer who oversees compliance by Takata and its employees with the process improvements, the implementation of written procedures and training programs established by the independent monitor, improvements to Takata's internal whistleblower reporting system, the payment of a Seventy Million Dollar ($70,000,000) non-contingent civil penalty over a five (5) year period, and the potential payment of a One Hundred Thirty Million Dollar ($130,000,000) contingent civil penalty.

        8.        On December 23, 2015, NHTSA appointed John Buretta, a partner at the law firm Cravath, Swaine & Moore LLP ("***Cravath***"), as the independent monitor (the "***NHTSA Monitor***") tasked with reviewing and assessing TKH's compliance with its obligations under the NHTSA Consent Order and with overseeing, monitoring, and assessing TKH's compliance with its obligations under that certain Coordinated Remedy Order promulgated by NHTSA on November 3, 2015 (as amended December 9, 2016, and as may be further amended, modified, or supplemented, the "***Coordinated Remedy Order***"), which order established a schedule, based on the relative risk of inflator rupture, by which OEMs must implement and execute Recalls (including by acquiring a sufficient supply of remedy parts).

9. On January 13, 2017, TKJP, the Department of Justice, Criminal Division, Fraud Section (the "***DOJ***"), and the U.S. Attorney's Office for the Eastern District of Michigan announced and submitted to the District Court for the Eastern District of Michigan a plea agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure (the "***Plea Agreement***") whereby TKJP pleaded guilty to wire fraud in violation of 18 U.S.C. § 1343 and agreed to pay a criminal fine of Twenty-Five Million Dollars ($25,000,000), which fine the Debtors represent was paid on March 29, 2017.

10. Pursuant to the Plea Agreement and a restitution order promulgated thereunder (the "***Restitution Order***" and, collectively with the Plea Agreement, the "***DOJ Order***"), TKJP committed to make, either directly or through its affiliates and subsidiaries, the following payments (the "***Restitution Payments***"): (a) Eight Hundred Fifty Million Dollars ($850,000,000) payable to automobile manufacturers within five (5) days after the closing of a sale of Takata, which sale must occur by no later than February 27, 2018, and (b) One Hundred Twenty Five Million Dollars ($125,000,000) payable to the DOJ on or around March 29, 2017 to recompense individuals who suffered (or will suffer) personal injury caused by the rupture of a PSAN Inflator. The Debtors represent that Takata timely made the Restitution Payment set forth in clause (b) above, but, if the remaining Restitution Payment is not satisfied in full by March 4, 2018, the DOJ retains the right to withdraw the Plea Agreement and to pursue criminal charges and penalties above and beyond those set forth in the Plea Agreement and to bring such charges and penalties against all Takata entities, including, *inter alia*, TKH.

11. To date, the MSWG has incurred One Hundred Thirty-Nine Thousand Three Hundred Forty-Nine Dollars and Five Cents ($139,349.05) in expenses investigating the

business practices of Takata that gave rise to the State Consumer Protection Claims (the "**MSWG Expenses**").

12. Additional information regarding the circumstances leading to the commencement of these Chapter 11 Cases and information regarding the Debtors' businesses and capital structure is set forth in the *Declaration of Scott E. Caudill in Support of Debtors' Chapter 11 Petitions and First Day Relief*, dated June 25, 2017 [Docket No. 19] (the "**Caudill Declaration**").

## The Chapter 11 Cases

13. On June 25, 2017 (the "**Petition Date**"), each of the Debtors commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors' Chapter 11 Cases have been jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.

14. On July 7, 2017, the United States Trustee for Region 3 appointed the statutory committee of unsecured creditors pursuant to section 1102(a)(1) of the Bankruptcy Code (the "**Creditors' Committee**") and the statutory committee of tort claimant creditors pursuant to section 1102(a)(2) of the Bankruptcy Code (the "**Tort Claimants' Committee**" and, together with the Creditors' Committee, the "**Committees**"). On September 6, 2017, the Bankruptcy Court, pursuant to sections 105 and 1109(b) of the Bankruptcy Code, appointed Roger Frankel as the legal representative (the "**Future Claims Representative**" or the "**FCR**") for individuals who sustain injuries related to PSAN Inflators after the Petition Date (such

individuals, the "***Future Claimants***").  No trustee or examiner has been appointed in these Chapter 11 Cases.

15. On the Petition Date, in coordination with the commencement of the Chapter 11 Cases, Takata Corporation, the Debtors' ultimate corporate parent ("***TKJP***" and, together with its direct and indirect global subsidiaries, including the Debtors, "***Takata***"), together with Takata Kyushu Corporation and Takata Service Corporation (collectively, the "***Japan Debtors***"), commenced civil rehabilitation proceedings under the Civil Rehabilitation Act of Japan (the "***Japan Proceedings***") in the 20th Department of the Civil Division of the Tokyo District Court (the "***Tokyo District Court***").  On August 9, 2017, the Japan Debtors filed petitions with the Bankruptcy Court seeking recognition of the Japan Proceedings.  The Bankruptcy Court entered an order recognizing the Japan Proceedings on November 14, 2017.

16. On June 28, 2017, the Debtors commenced an ancillary proceeding under the Companies' Creditors Arrangement Act (Canada), R.S.C. 1985, c. C-36 as amended (the "***CCAA***") in the Ontario Superior Court of Justice (Commercial List) (the "***Canadian Court***") in Ontario, Canada.  Similarly, on August 25, 2017, the Debtors petitioned the Tokyo District Court for recognition of these Chapter 11 Cases under Article 17(1) of the Act on Recognition of and Assistance for Foreign Insolvency Proceedings.  On September 6, 2017, the Tokyo District Court granted the Debtors' petition.

17. On October 4, 2017, the Bankruptcy Court entered the *Order For Authority to (I) Establish Deadlines for Filing Proofs of Claim, (II) Establish the Form and Manner of Notice Thereof, and (III) Approve Procedures for Providing Notice of Bar Date and Other Important Deadlines and Information to Potential PSAN Inflator Claimants* [Docket No. 959] (the "***Bar Date Order***").  Pursuant to the Bar Date Order, the following deadlines were

7

established to file proofs of claim in the Debtors' Chapter 11 Cases: (i) November 27, 2017 (the "***General Bar Date***") for persons or entities not including Governmental Units as defined in section 101(27) of the Bankruptcy Code and PPICs (as defined herein); (ii) December 22, 2017 (the "***Governmental Bar Date***") for Governmental Units; and (iii) December 27, 2017 (the "***PPIC Bar Date***," and together with the General Bar Date and the Governmental Bar Date, the "***Bar Dates***") for individuals (each, a "***PPIC***") asserting claims against any of the Debtors for past or future monetary losses, personal injuries (including death), or asserted damages arising out of or relating to an airbag containing phase-stabilized ammonium nitrate propellant ("***PSAN Inflators***"), or their component parts, manufactured or sold by the Debtors or their affiliates prior to the Petition Date (each, a "***PPIC Claim***").

18. Many of the States have timely filed proofs of claim, and other States might file and seek approval of late-filed proofs of claim in the Chapter 11 Cases against TKH, which set forth State Consumer Protection Claims such as claims and causes of action under the States' consumer protection laws, including civil claims, damages, restitution, fines, costs, and penalties of the States, against TKH, the Debtors, and the Reorganized Debtors arising from or related to the design, engineering, manufacturing, marketing, sale, or maintenance of PSAN Inflators, their component parts, or the Airbag Systems in which they are or were incorporated, as follows: Nos. 4153 and 4211 (Alabama), 4224 (Arizona), 4198 (Arkansas), 4167 and 4229 (California), 4127 (Connecticut), 4147 (District of Columbia), 4142 (Florida), 4196 (Georgia), 4049 (Idaho), 4163 (Illinois), 4219, 4220, and 4377 (Indiana), 4174 (Iowa), 4137 (Kansas), 4234 (Kentucky), 4242 (Louisiana), 4209 and 4325 (Maine), 4197 (Maryland), 4308 (Massachusetts), 4166 (Michigan), 4237 (Minnesota), 4122 (Missouri), 4133 (Nebraska), 4221 (Nevada), 4140 (New Jersey), 4143 (New York), 4212 and 4213 (North Carolina), 4119 (Ohio), 4236 (Oklahoma),

4243 (Oregon), 4168 (Pennsylvania), 4222 (South Carolina), 4210 (South Dakota), 4226 (Tennessee), 4381 (Texas), 4134 (Utah), 4069 (Virginia), 4141 (Washington), and 4117 (Wisconsin).

19. On January 5, 2018 [Docket No. 1639] (the "*Solicitation Procedures Order*"), the Court entered and order approving the disclosure statement [Docket No. 1630] (the "*Disclosure Statement*") for the *Third Amended Joint Chapter 11 Plan of Reorganization of TK Holdings Inc. and its Affiliated Debtors* [Docket No. 1629] (as thereafter amended and filed on February 14, 2018 [Docket No. 2056] and as may be further amended, the "*Plan*"), and the Debtors' commenced solicitation of the Plan shortly thereafter. The hearing on confirmation of the Plan is scheduled for February 13, 2018 at 10 a.m. (Prevailing Eastern Time).

20. To date, the MSWG has incurred One Hundred Thirty-Nine Thousand Three Hundred Forty-Nine Dollars and Five Cents ($139,349.05) in expenses investigating the business practices of Takata that gave rise to the State Consumer Protection Claims (the "*MSWG Expenses*").

## The Settlement Agreement

21. On February 14, 2018, the Parties reached an amicable agreement to resolve the State Consumer Protection Claims and conclude the investigation of the MSWG into TKH. The material terms of the Settlement Agreement are as follows:[3]

- **Advertising.** TKH and Reorganized TK Holdings will not Advertise, promote, or otherwise Represent, in any way that is false, deceptive, or misleading: (a) its Airbag Systems, (b) the safety of its Airbag Systems, including but not limited to Airbag Systems containing PSAN, or (c) the safety of any components of its Airbag Systems, including but not limited to PSAN.

---

[3] This summary is qualified in its entirety by reference to the provisions of the Settlement Agreement. Capitalized terms used herein and not otherwise defined have the meanings ascribed to them in the Settlement Agreement.

9

- **Safety Representations.** TKH and Reorganized TK Holdings will not Represent that its Airbag Systems are "safe," or use a term or phrase of similar comparative or superlative meaning, such as "safest" or "safer," or any other term that denotes or implies safety, quality, reliability, and/or dependability, unless such Representation is supported by Competent and Reliable Scientific or Engineering Evidence.

- **Testing Data.** TKH and Reorganized TK Holdings will not falsify or manipulate any testing data, nor will they provide testing data that they know is inaccurate.

- **Compliance with State and Federal Law, the Motor Vehicle Safety Act and NHTSA Orders.** TKH and Reorganized TK Holdings will comply with applicable state and federal laws, as well as the notification and remedy provisions of the Motor Vehicle Safety Act. TKH and Reorganized TK Holdings will comply in all respects with the NHTSA Consent Order and the Coordinated Remedy Order, and will notify South Carolina of any material breaches or failures and such breach shall be deemed a breach of the Settlement Agreement in the reasonable discretion of the States. However, any non-payment of fines or penalties due under the NHTSA Consent Order or Coordinated Remedy Order will not be deemed a breach of the Settlement Agreement.

- **Continue Recall Efforts.** TKH will continue to cooperate with OEMs and alternative inflator suppliers to ensure that replacement inflators are made available as expeditiously as possible from all possible sources.

- **Discontinue Production of Ammonium Nitrate Airbags.** With respect to new contracts, except as provided in the Plan, TKH and Reorganized TK Holdings will not contract for sale or resale, offer, provision for use, or otherwise agree to place into the stream of commerce in the United States, any Airbag Systems using PSAN Inflators, regardless of whether those Airbag Systems contain 2004 propellant, 2004L propellant, or desiccant.

- **Notification Prior to Destruction of Records.** TKH and Reorganized TK Holdings will provide sixty (60) days' written notice to South Carolina, as lead state of

10

> the MSWG, prior to the destruction or disposal of records relating to PSAN Inflator safety testing.

- **Payment to the States.** South Carolina, as the lead state of the MSWG, will be granted an Allowed Administrative Expense Claim under the Plan in the amount of One Hundred Thirty-Nine Thousand Three Hundred Forty-Nine Dollars and Five Cents ($139,349.05) in satisfaction of the MSWG Expenses. The States, collectively, will be granted a Class 9(d) Subordinated Claim under the Plan against TKH for a civil penalty in the amount of Six Hundred and Fifty Million Dollars ($650,000,000).

- **Releases.** Upon the effectiveness of the Settlement Agreement and upon payment of the MSWG Expense Payment to South Carolina, the State Consumer Protection Claims against TKH, the Debtors, and the Reorganized Debtors will be released, discharged in accordance with Section 1141 of the Bankruptcy Code, and forever barred to the fullest extent permitted by law.

### Basis for Relief Requested

22. The Court has authority to approve the Settlement Agreement pursuant to Bankruptcy Code section 105(a) and Bankruptcy Rule 9019. Bankruptcy Code section 105(a) provides that, "[t]he court may issue an order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Bankruptcy Rule 9019 provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).

23. Settlements are generally favored and encouraged in bankruptcy proceedings. *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996); *see also Will v. Northwestern Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006) ("Settlements are favored, but the unique nature of the bankruptcy process means that judges must carefully examine settlements before approving them."); *In re Penn Cent. Transp. Co.*, 596 F.2d 1102, 1113 (3d Cir. 1979) ("[i]n administering reorganization proceedings in an economical and

11

practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts.") (alteration in original) (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)).

24. The decision of whether to approve a particular settlement lies within the sound discretion of the bankruptcy court. *In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006). In evaluating the settlement, the Court should consider "whether the compromise is fair, reasonable, and in the best interest of the estate." *In re Louise's Inc.*, 211 B.R. 798, 801 (Bankr. D. Del. 1997). Importantly, the bankruptcy court's discretion should be exercised "in light of the general public policy favoring settlements." *In re Capmark Fin. Grp. Inc.*, 438 B.R. 471, 515 (Bankr. D. Del. 2010) (quoting *In re Hibbard Brown & Co.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998)). In considering the merits of the settlement, a bankruptcy court does not need to be convinced that the settlement is the best possible outcome for the parties, rather the court need only "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *In re W.R. Grace & Co.*, 475 B.R. 34, 78 (D. Del. 2012) (citing *Aetna Cas. & Sur. Co. v. Jasmine, Ltd. (In re Jasmine, Ltd.)*, 258 B.R. 119, 123 (D. N.J. 2000)); *In re Key3Media Grp., Inc.*, 336 B.R. 87, 93 (Bankr. D. Del. 2005), *aff'd*, No. 03-10323 (MFW), 2006 WL 2842462 (D. Del. Oct. 2, 2006); *see also In re Coram Healthcare Corp.*, 315 B.R. 321, 330 (Bankr. D. Del. 2004).

25. In determining whether a proposed settlement is fair, reasonable, and in the best interests of the estate, courts in this circuit consider the following four (4) factors: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Martin*, 91 F.3d at 393; *see also*

*Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.)*, 283 F.3d 159, 165 (3d Cir. 2002); *In re eToys, Inc.*, 331 B.R. 176, 198 (Bankr. D. Del. 2005). "The court must also consider 'all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.'" *In re Marvel Entm't Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998) (quoting *Anderson*, 390 U.S. at 424). Accordingly, at its core, "the ultimate inquiry [is] whether 'the compromise is fair, reasonable, and in the interest of the estate.'" *Id.* (quoting In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997)); *see also In re Washington Mut. Inc.*, 442 B.R. 314, 327 (Bankr. D. Del. 2011) ("In making its evaluation [whether to approve a settlement], the court must determine whether 'the compromise is fair, reasonable, and in the best interest of the estate.'") (internal citation omitted).

26. The proposed Settlement Agreement should be approved because it represents a fair and equitable compromise, falls well within the range of reasonableness, and satisfies each of the *Martin* factors, as described further below. By entry into the Settlement Agreement, the Debtors and the States have come to a compromise that preserves the value of the Estates and is in the best interests of creditors. The Settlement Agreement resolves the hundreds of millions of dollars of potential liabilities of the Debtors without the need for multi-state litigation.

27. <u>The Probability of Success in the Litigation</u>. The Debtors submit that there exists a bona fide dispute as to the merits and validity of the State Consumer Protection Claims. Although the Debtors firmly deny any wrongdoing in connection with the States' alleged violations, the Debtors acknowledge that the outcome of any litigation is inherently uncertain.

28. <u>The Difficulties Associated With Collection</u>.  The difficulties associated with collection are not implicated in this situation due to the factual circumstances of the issues resolved in the Settlement Agreement.  However, the inapplicability of this factor does not detract from the reasonableness of the Settlement Agreement under the other factors of the *Martin* test.

29. <u>The Complexity of the Litigation and the Attendant Expense, Inconvenience, and Delay</u>.  Entry into the Settlement Agreement avoids protracted, complicated and expensive multi-state litigation.  Defending against these potential lawsuits would require significant time, effort, and resources from the Reorganized Debtor, who would be forced to defend against these lawsuits in numerous forums, which could potentially interfere with the Reorganized Debtors' obligations and delay the recall process.  The complexity of the State Consumer Protection Claims and the expense, inconvenience, and delay that would result strongly militate in favor of approving the Settlement Agreement, which expeditiously resolves the Claims of these forty-five (45) States.  The Settlement Agreement will allow the Debtors to conserve their limited financial resources, rather than engaging in litigation, which may cause undue delay to the administration of the Estates, and, as a result, harm other creditors.

30. <u>The Paramount Interest of Creditors</u>.  In addition to various provisions for injunctive relief, the Settlement Agreement provides that the States will be given a Six Hundred and Fifty Million Dollar ($650,000,000) Class 9(d) Subordinated Claim, which will be subordinated in right of payment to payment of all other Claims including any Allowed General Unsecured Claims.

31. Accordingly, the Debtors respectfully submit that entry into the Settlement Agreement is appropriate and should be approved pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019.

## **Notice**

32. Notice of this Motion has been provided to (i) the Office of the United States Trustee for the District of Delaware (Attn: David Buchbinder, Esq. and Jane Leamy, Esq.); (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the Offices of the United States Attorney for each of the District of Delaware and the Eastern District of Michigan; (v) NHTSA; (vi) each of the Consenting OEMs; (vii) the Plan Sponsor; (viii) counsel for each of the Creditors' Committee and the Tort Claimants' Committee; (ix) the MSWG; and (x) all parties who have requested service of notices in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002. The Debtors respectfully submit that such notice is sufficient under the circumstances.

## **No Previous Request**

33. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: February 14, 2018
      Wilmington, Delaware

    /s/ *Michael J. Merchant*
RICHARDS, LAYTON & FINGER, P.A.
Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Amanda R. Steele (No. 5530)
Brett M. Haywood (No. 6166)
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

-and-

WEIL, GOTSHAL & MANGES LLP
Marcia L. Goldstein
Ronit J. Berkovich
Matthew P. Goren
Jessica Diab
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for the Debtors
and Debtors in Possession*