**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

-------------------------------------------------------x
:
In re                                                    :          **Chapter 11**
:
**TK HOLDINGS INC.,** *et al.,*                          :          **Case No. 17-11375 (BLS)**
:
Debtors.[1]                                              :          **Jointly Administered**
:
                                                         : Proposed Hr'g Date: April 9, 2018 at 11:00 a.m. (ET)
                                                         : Proposed Obj. Deadline: April 6, 2018 at 12:00 p.m. (ET)
-------------------------------------------------------x

**MOTION OF DEBTORS PURSUANT TO**
**11 U.S.C. § 105 AND FED. R. BANKR. P. 6004, 9019, AND 9024**
**(I) AUTHORIZING AND APPROVING CERTAIN SETTLEMENTS**
**AND (II) REQUESTING VACATUR OF DISCHARGE OPINION**

TK Holdings Inc. ("***TKH***") and its affiliated debtors in the above-captioned

chapter 11 cases (the "***Chapter 11 Cases***"), as debtors and debtors in possession (collectively,

the "***Debtors***"), respectfully represent as follows:

**RELIEF REQUESTED**

1.      By this motion ("***Motion***"), pursuant to section 105(a) of title 11 of the

United States Code (the "***Bankruptcy Code***") and Rules 6004, 9019, and 9024 of the Federal

Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), the Debtors request entry of an order:

a.      authorizing and approving that certain Settlement Agreement
        (the "***State Settlement Agreement***")[2] by and among TKH, Takata

---

[1] The Debtors in the chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Takata Americas (9766); TK Finance, LLC (2753); TK China, LLC (1312); TK Holdings Inc. (3416); Takata Protection Systems Inc. (3881); Interiors in Flight Inc. (4046); TK Mexico Inc. (8331); TK Mexico LLC (9029); TK Holdings de Mexico, S. de R.L. de C.V. (N/A); Industrias Irvin de Mexico, S.A. de C.V. (N/A); Takata de Mexico, S.A. de C.V. (N/A); and Strosshe-Mex, S. de R.L. de C.V. (N/A).  Except as otherwise set forth herein, the Debtors' international affiliates and subsidiaries are not debtors in these chapter 11 cases.  The location of the Debtors' corporate headquarters is 2500 Takata Drive, Auburn Hills, Michigan 48326.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such term in the State Settlement Agreement, the Puerto Rico Settlement Agreement, the TKJP Settlement Term Sheet (each as defined herein), or the *Fifth Amended Joint Chapter 11 Plan of Reorganization of TK Holdings Inc. and its Affiliated Debtors*, dated February 20, 2018 [Docket No. 2116] (together with all schedules and exhibits thereto, and as has been and may be modified, amended or supplemented from time to time, the "***Plan***"), as applicable.

Corporation ("*TKJP*" and, together with its direct and indirect global subsidiaries, including TKH, "*Takata*"), the State of Hawaiʻi, by its Office of Consumer Protection ("*Hawaiʻi*"), the State of New Mexico, by its Attorney General ("*New Mexico*"), and the Government of the United States Virgin Islands, by its Attorney General (the "*USVI*" and, together with Hawaiʻi and New Mexico, each a "*State*" and, collectively, the "*States*" and, together further with TKH and TKJP, each a "*State Settlement Party*" and, collectively, the "*State Settlement Parties*");

b.   authorizing and approving that certain Settlement Agreement (the "*Puerto Rico Settlement Agreement*") by and among TKH and the Commonwealth of Puerto Rico, by its Deputy Attorney General ("*Puerto Rico*" and, together with TKH, each a "*Puerto Rico Settlement Party*" and, collectively, the "*Puerto Rico Settlement Parties*");

c.   authorizing and approving that certain Settlement Term Sheet (the "*TKJP Settlement Term Sheet*") by and among the Debtors, the Japan Debtors (as defined herein), the Tort Claimants' Committee (as defined herein), the Future Claims Representative (as defined herein), and the MDL Plaintiffs (each a "*TKJP Settlement Term Sheet Party*" and, collectively, the "*TKJP Settlement Term Sheet Parties*"); and

d.   vacating the Discharge Opinion (as defined herein).

2.      The State Settlement Agreement, the Puerto Rico Settlement Agreement, and the TKJP Settlement Term Sheet, while separate agreements, are interrelated and may properly be considered together.

3.      A proposed form of order granting the relief requested herein on a final basis is annexed hereto as **Exhibit A** (the "*Proposed Order*").  Copies of the State Settlement Agreement, the Puerto Rico Settlement Agreement, and the TKJP Settlement Term Sheet are attached as **Schedule 1**, **Schedule 2**, and **Schedule 3**, respectively, to the Proposed Order.

## JURISDICTION

4.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District

2

Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Rule 9013–1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "***Local Rules***"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

### The State Actions

5.    On May 13, 2016, Hawai'i filed a complaint (the "***Hawai'i Complaint***") against TKH, TKJP, and certain original equipment manufacturers ("***OEMs***") in Hawai'i state court (the "***Hawai'i Action***") asserting causes of action for unfair or deceptive acts or practices related to Takata airbags containing phase-stabilized ammonium nitrate ("***PSAN Inflators***") pursuant to Hawai'i Revised Statute chapters 480 and 487 and other applicable Hawai'i law, seeking injunctive relief, civil penalties, restitution, disgorgement, and any other relief the court deemed appropriate.

6.    On May 25, 2016, the USVI filed a complaint (the "***USVI Complaint***") against TKH, TKJP, and several Honda entities in USVI state court (the "***USVI Action***") asserting causes of action related to Takata airbags containing PSAN Inflators under USVI Consumer Protection Law (12A V.I.C. § 101), the USVI Criminally Influenced and Corrupt Organizations Act (14 V.I.C. §§ 600–14), the USVI Consumer Fraud & Deceptive Business Practices Act (12A V.I.C. § 301), and USVI common law, seeking civil penalties, administrative fines, restitution, disgorgement, an injunction requiring the defendants to cease their alleged

violations of the law and to engage in a robust public education campaign, and any other relief the court deemed appropriate.

7.      On January 20, 2017, New Mexico filed a complaint related to Takata airbags containing PSAN Inflators (the "***New Mexico Complaint***" and, together with the Hawai'i Complaint and the USVI Complaint, the "***State Complaints***") against TKH, TKJP, and multiple OEMs in New Mexico state court (the "***New Mexico Action***" and, together the Hawai'i Action and the USVI Action, the "***State Actions***") alleging that the defendants violated New Mexico's Unfair Practices Act (N.M. Stat. Ann. § 57-12-1, *et seq.*), seeking, *inter alia*, "disgorge[ment of] all profits [] illegally obtained by and through illegal conduct, and used to further fund or promote the illegal conduct or that constituted capital available for that purpose," as well as the maximum amount of statutory penalties available under law.

**The Chapter 11 Cases and Japan Proceedings**

8.      On June 25, 2017 (the "***Petition Date***"), each of the Debtors commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors' Chapter 11 Cases have been jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.

9.      On July 7, 2017, the United States Trustee for Region 3 appointed the statutory committee of unsecured creditors pursuant to section 1102(a)(1) of the Bankruptcy Code (the "***Creditors' Committee***") and the statutory committee of tort claimant creditors pursuant to section 1102(a)(2) of the Bankruptcy Code (the "***Tort Claimants' Committee***" and, together with the Creditors' Committee, the "***Committees***").  On September 6, 2017, the

4

Bankruptcy Court, pursuant to sections 105 and 1109(b) of the Bankruptcy Code, appointed

Roger Frankel as the legal representative (the "***Future Claims Representative***") for individuals

who sustain injuries related to PSAN Inflators after the Petition Date.  No trustee or examiner

has been appointed in these Chapter 11 Cases.

          10.     On June 26, 2017, in coordination with the commencement of the Chapter

11 Cases, TKJP, the Debtors' ultimate corporate parent, together with Takata Kyushu

Corporation and Takata Service Corporation (collectively, the "***Japan Debtors***"), filed petitions

for commencement of civil rehabilitation proceedings under the Civil Rehabilitation Act of Japan

(the "***Japan Proceedings***") in the 20th Department of the Civil Division of the Tokyo District

Court (the "***Tokyo District Court***"), and on June 28, 2017, the Tokyo District Court issued an

order of commencement of the Japan Proceedings.  On August 9, 2017, the Japan Debtors filed

petitions with the Bankruptcy Court seeking recognition of the Japan Proceedings under chapter

15 of the Bankruptcy Code, which recognition was granted by the Bankruptcy Court on

November 14, 2017 (the "***Chapter 15 Proceedings***").

          11.     On February 28, 2018, the Japan Debtors filed their civil rehabilitation

plan (together with all schedules and exhibits thereto, and as has been and may be modified,

amended, or supplemented from time to time, the "***Civil Rehabilitation Plan***") in the Japan

Proceedings by the Tokyo District Court.

**The State Claims, Puerto Rico Claim, and the State TKJP Claims**

          12.     In accordance with the Bar Date Order, Puerto Rico and the States timely

filed the following proofs of claim:  (a) New Mexico filed proof of claim number 3906

(the "***New Mexico Claim***") on December 6, 2017 against TKH in the estimated amount of One

Billion Four Hundred Million Dollars ($1,400,000,000) for the violations alleged in the New

RLF1 19063400V.1

Mexico Complaint, (b) Puerto Rico filed proof of claim number 4215 (the "*Puerto Rico Claim*")

on December 12, 2017 against TKH in the amount of One Billion Seven Hundred Ninety-Nine

Million Seven Hundred Fifty-Three Thousand Two Hundred Fifty Dollars ($1,899,753,250) for

alleged unfair and deceptive acts or practices in trade or commerce; (c) the USVI filed proof of

claim number 4110 (the "*USVI Claim*") on December 18, 2017 against TKH in the amount of

One Billion Six Hundred Seventy-One Million Six Hundred Thousand Dollars ($1,671,600,000)

for violations similar (if not identical) to those alleged in the USVI Complaint (including

prejudgment interest), and (d) Hawai'i filed proof of claim number 4107 (the "*Hawai'i Claim*"

and, collectively with the New Mexico Claim and the USVI Claim, the "*State Claims*") on

December 19, 2017 against TKH in an unliquidated amount estimated to be approximately Seven

Billion Dollars ($7,000,000,000) for violations similar (if not identical) to those alleged in the

Hawai'i Complaint (including prejudgment interest and attorneys' fees).

13.    On August 25, 2017, each of the States filed claims against TKJP in the

Japan Proceedings, which claims were substantially similar to the State Claims (each a "*State TKJP*

*Claim*" and, collectively, the "*State TKJP Claims*").  On October 30, 2017, TKJP disapproved of

each of the State TKJP Claims.  Accordingly, on December 12, 2017, Hawai'i and New Mexico

each filed a petition for assessment with the Tokyo District Court seeking allowance of their

respective State TKJP Claim, and on December 13, 2017, the USVI likewise filed a petition for

assessment with the Tokyo District Court seeking allowance of its State TKJP Claim (the

petitions for assessment referenced in this paragraph, collectively, the "*State Petitions for*

*Assessment*").

6

**The Intercompany Claims**

14.    On August 25, 2017, TKH, Takata Protection Systems Inc. ("*TPSI*"), Industrias Irvin de Mexico, S.A. de C.V. ("*IIM*"), and Takata de Mexico, S.A. de C.V. ("*TDM*") each filed claims against TKJP in the Japan Proceedings (each a "*Debtor TKJP Claim*" and, collectively, the "*Debtor TKJP Claims*") seeking over Three Billion Seven Hundred Million Dollars ($3,700,000,000) in the aggregate.  On October 30, 2017, TKJP disapproved of each of the Debtor TKJP Claims.  Accordingly, on December 13, 2017, TKH, TPSI, IIM, and TDM each filed a petition for assessment with the Tokyo District Court seeking allowance of their respective Debtor TKJP Claim (the petitions for assessment referenced in this paragraph, collectively, the "*Debtor Petitions for Assessment*").

15.    On November 26, 2017 and November 27, 2017, TKJP filed duplicate claims against TKH in the Chapter 11 Cases (Claim Nos. 3466 and 3605) (the "*TKJP Debtor Claims*") seeking approximately Sixty-Four Billion Dollars ($64,000,000,000), including approximately Nine Million Two Hundred Fifty-Eight Thousand Three Hundred Twenty Dollars ($9,258,320) for the TKJP 503(b)(9) Claim.

**The Discharge Opinion**

16.    On December 20, 2017, the Debtors commenced an adversary proceeding in the Bankruptcy Court (Adv. Pro. No. 17-51886) (the "*Discharge Proceeding*") and filed a motion for summary judgement [Adv. Pro. No. 17-51886 Docket No. 2] (the "*Discharge Motion*") seeking a determination and declaration pursuant to Bankruptcy Rule 4007 that the State Claims were dischargeable pursuant to section 1141(d)(1)(A) of the Bankruptcy Code and were not excepted from discharge pursuant to section 1141(d)(6)(A) of the Bankruptcy Code, a hearing on which was held on January 29, 2018.  On February 14, 2018, the Bankruptcy Court

issued an opinion [Adv. Pro. No. 17-51886 Docket No. 27] (the "***Discharge Opinion***") granting

the Discharge Motion.  On February 15, 2018, the States filed a notice of appeal of the Discharge

Opinion, and on February 22, 2018, the States filed an amended notice of appeal (collectively,

the "***Discharge Appeal***").  At the request of the Debtors and the States, the Bankruptcy Court has

not yet entered an order enforcing the Discharge Opinion.

**The Confirmation Objection**

17.     On February 6, 2018, the States filed an objection to confirmation of the

Plan [Docket No. 1950] (the "***Confirmation Objection***") asserting that, among other things, the

State Claims were not subject to discharge or to subordination under the Plan.  On February 16,

2018, Puerto Rico joined in the Confirmation Objection on the record at the Confirmation

Hearing.  On February 21, 2018, the Bankruptcy Court entered the *Findings of Fact, Conclusions*

*of Law, and Order Confirming the Fifth Amended Joint Chapter 11 Plan of Reorganization of*

*TK Holdings Inc. and its Affiliated Debtors* [Docket No. 2120] (the "***Confirmation Order***"),

overruling the Confirmation Objection.  On February 23, 2018, the States filed a notice of appeal

of the Confirmation Order (the "***Confirmation Appeal***").

**The Reclassification Motion**

18.     On February 23, 2018, the Debtors filed a motion [Docket No. 2174]

(the "***Reclassification Motion***"), whereby the Debtors sought to reclassify the Puerto Rico Claim

from a Class 6 Other General Unsecured Claim to a Class 9 Subordinated Claim.  In conjunction

with the Reclassification Motion, Puerto Rico has represented to the Debtors that it believes the

Puerto Rico Claim is nondischargeable and that it opposes the relief sought in the

Reclassification Motion.

## THE STATE SETTLEMENT AGREEMENT

19.    On March 22, 2018, the State Settlement Parties reached an amicable agreement to resolve (a) the State Actions, with respect to TKH, TKJP, and any related Takata entities only; (b) the State Claims; (c) the State TKJP Claims; (d) the Discharge Appeal; and (e) the Confirmation Appeal.  The material terms of the State Settlement Agreement are as follows:[3]

**Payments to the States.**  In accordance with Section 5.19(l) of the Plan, eighty percent (80%) of the funds available in the Resolution Reserve after the payment of Five Million Dollars ($5,000,000) to the Support Party Creditor Fund, as contemplated in Section 5.19(g) of the Plan, will be allocated to the States and paid to the States by the Debtors (the "*State Resolution Payment*") as such money becomes available for distribution under the Plan in accordance with the terms of the Plan and the Confirmation Order. The Debtors understand that eighty percent (80%) of the funds available in the Resolution Reserve is expected to be, but is not guaranteed to be, approximately Six Million Eight Hundred Thousand Dollars ($6,800,000).  In addition, TKH will pay to the States, Two Hundred Thousand Dollars ($200,000) in full and final satisfaction of the State Expenses (the "*State Expense Payment*" and, together with the State Resolution Payment, the "*State Payments*").  The State Expense Payment will be comprised of: (a) the payment of an Allowed Administrative Expense Claim against TKH hereby granted in favor of the States, collectively, in the amount of Fifty Thousand Dollars ($50,000) and (b) the assignment and payment of One Hundred Fifty Thousand Dollars ($150,000) to the States, collectively, from the amount TKH owes to TKJP on account of the TKJP 503(b)(9) Claim, pursuant to TKJP's agreement to such assignment (the "*TKJP State Expense Payment*").  Payment of the State Resolution Payment and the State Expense Payment will be deemed to be in full and final satisfaction of the State Claims and the State TKJP Claims.

**Cooperation.**    The States acknowledge that TKJP filed for protection under the Civil Rehabilitation Act of Japan, and that TKJP is seeking a sale and liquidation prior to the approval of the Civil Rehabilitation Plan.  The States further acknowledge that

---

[3] This summary is qualified in its entirety by reference to the provisions of the State Settlement Agreement.  In the event of a conflict between this summary and the State Settlement Agreement, the terms of the State Settlement Agreement control.

TKJP will no longer operate after the closing of the sale, which will likely occur in early April 2018.  Prior to the Effective Date of the Plan, TKH and TKJP will continue to comply with that certain Stipulated Litigation Plan so ordered by the Bankruptcy Court on December 19, 2017 [Adv. Pro. 17-50880 Docket No. 178] (the "*Stipulated Litigation Plan*").  After the Effective Date of the Plan and solely to the extent each will exist, TKH, Reorganized TK Holdings and TKJP (referred to collectively here as "*Takata Cooperators*" solely for definitional purposes for conduct after the Effective Date) will, upon request in advance, use reasonable efforts to:  (a) provide to the States the location and custodian of information, documents and data that the States may seek relevant to the State Actions; (b) authenticate (pursuant to Rule 902(11) or Rule 902(12), as practicable and as applicable, of the Federal Rules of Evidence or any state law equivalent) information, documents and data that the States may seek relevant to the State Actions; and (c) provide the last known contact information of former employees of TKH or TKJP that the States may seek to depose and agree not to take any action to dissuade any such person from cooperating with the States.  In addition, to the extent TKH provides documents, information, data or testimony to the Attorneys General Multistate Working Group, it will promptly inform the States and agrees to make such documents, information data or testimony available to the States at the States' request.  In the event TKH provides documents, information, data or testimony to any party to a pending PSAN PI/WD litigation without requiring service of a subpoena, TKH agrees to promptly inform the States and to make such documents, information, data or testimony available to the States at the States' request.  To the extent the States seek any information, documents, data or testimony from the Takata Cooperators other than as may be provided above, they will seek to obtain such information, documents, data or testimony in the same manner as they would through discovery against any non-party.  The Takata Cooperators will use reasonable efforts to comply with such discovery requests from the States and the States agree to reimburse the Takata Cooperators for the cost of such compliance, except for the cost associated with any depositions taken, any documents or other information produced or made available, pursuant to or as contemplated by the Stipulated Litigation Plan.  The States acknowledge that once any Takata Cooperator ceases to exist, its obligations under this paragraph will terminate but the States can continue to seek information, documents, data or testimony from any person or entity formerly related to any Takata Cooperator in the same manner as they could seek discovery from any non-party.  If a State subpoenas documents or testimony, any dispute regarding the State's request

will be determined by the court in the jurisdiction where the subpoena was issued; *provided that*, nothing in the Settlement Agreement will constitute a waiver of any rights that TKH or TKJP may have with respect to such subpoena consistent with the intent and purpose of the Cooperation Clause.

**Vacatur of Discharge Opinion.**  The Debtors and the States will jointly seek vacatur of the Discharge Opinion in this Motion.

**Japan Proceedings.**  The States will not object to the recognition of the Article 42 and Article 85.5 Orders approved by the Tokyo District Court in the Chapter 15 Proceedings.

**Withdrawal of Appeals.**  Upon the effectiveness of the State Settlement Agreement and payment of the State Payments as set forth in the State Settlement Agreement, the States will withdraw with prejudice the Discharge Appeal and the Confirmation Appeal.

**Dismissal of Adversary Proceedings.**  Upon the effectiveness of the State Settlement Agreement and payment of the State Payments as set forth in the State Settlement Agreement, the Debtors will dismiss with prejudice all adversary proceedings against the States, including the Discharge Proceeding and, with respect to the States only, the preliminary injunction proceeding [Adv. Pro. 17-50880].

**State Petitions for Assessment.**  Upon the effectiveness of the State Settlement Agreement and payment of the State Payments as set forth in the State Settlement Agreement, each of the States will withdraw with prejudice their State Petitions for Assessment.

**State Actions.**  Upon the effectiveness of the State Settlement Agreement and payment of the State Payments as set forth in the State Settlement Agreement, each of the States will dismiss with prejudice all claims they have asserted against TKH, TKJP, and any related Takata entities named as defendants in the State Actions.  In the event that a state or territorial court refuses to dismiss TKH, TKJP, and/or any related Takata entities named as defendants, the Debtors and TKJP may seek relief from the Bankruptcy Court to enjoin or otherwise stay such prosecution and the affected State will either support such effort by the Debtors or TKJP or take no position on it.

**No Adverse Action.**  TKH, TKJP, and other Takata entities will refrain from seeking an action by and/or relief from the Bankruptcy Court that would interfere with the States' prosecution of their claims against any OEMs in the State Actions.  In the event

any OEM seeks such action and/or relief, TKH, TKJP and/or any other Takata entities will either oppose such action or relief or take no position on it.

**Releases.**    Upon the effectiveness of the State Settlement Agreement and payment of the State Payments as set forth in the State Settlement Agreement, any and all causes of action that have or could be asserted before or as of the Effective Date of the Plan under the laws of each State by (a) the State of Hawaiʻi Office of Consumer Protection, (b) the Attorney General of New Mexico, and (c) the Attorney General of the USVI, respectively, including civil claims, damages, restitution, fines, costs, and penalties of the States against TKH, TKJP, the Debtors, the Reorganized Debtors, the Japan Debtors, or any related Takata entities arising from or related to the design, engineering, manufacturing, marketing, sale, or maintenance of PSAN Inflators, their component parts, or the airbag systems in which they are or were incorporated, including the State Claims filed in the Chapter 11 Cases and the State TKJP Claims and the State Petitions for Assessment filed in the Japan Proceedings, will be deemed satisfied, released and discharged in accordance with Section 1141 of the Bankruptcy Code and other applicable law, and forever barred to the fullest extent permitted by law.

## THE PUERTO RICO SETTLEMENT AGREEMENT

20.    On March 22, 2018, the Puerto Rico Settlement Parties reached an amicable agreement to resolve (a) the Confirmation Objection, (b) the Reclassification Motion, and (c) the Puerto Rico Claim, including the issue of the dischargeability of the Puerto Rico Claim.  The material terms of the Puerto Rico Settlement Agreement are as follows:[4]

**Payment to Puerto Rico.**    TKH will pay to Puerto Rico One Hundred Thousand Dollars ($100,000) in full and final satisfaction of the Puerto Rico Expenses (the "***Puerto Rico Expense Payment***").  Payment of the Puerto Rico Expense Payment will be deemed to be in full and final satisfaction of the Puerto Rico Claim.

**Cooperation.**    TKH agrees to allow Puerto Rico to receive from the States any documents produced by TKH and/or TKJP to the States on the condition that Puerto Rico expressly agrees to:

---

[4] This summary is qualified in its entirety by reference to the provisions of the Puerto Rico Settlement Agreement. In the event of a conflict between this summary and the Puerto Rico Settlement Agreement, the terms of the Puerto Rico Settlement Agreement control.

(a) abide by the designations and confidentiality restrictions in the action commenced by Hawai'i on May 13, 2016, as well as the *Stipulated Order Regarding the Disclosure of Privileged Material* [ECF No. 790] and the *Stipulated Protective Order Regarding Protected Data* [ECF No. 746] in *In re Takata Airbag Prods. Liab. Litig.*, No. 1:15-md-02599-FAM (S.D. Fla.) and (b) be responsible for any costs in connection with Puerto Rico obtaining such documents.

**Releases.**   Upon the effectiveness of the Puerto Rico Settlement Agreement, any and all causes of action that have or could be asserted before or as of the Effective Date of the Plan under the laws of Puerto Rico, including civil claims, damages, restitution, fines, costs, and penalties of Puerto Rico against TKH, TKJP, the Debtors, the Reorganized Debtors, or any related Takata entities arising from or related to the design, engineering, manufacturing, marketing, sale, or maintenance of PSAN Inflators, their component parts, or the airbag systems in which they are or were incorporated, including the Puerto Rico Claim filed in the Chapter 11 Cases, will be deemed satisfied, released and discharged in accordance with Section 1141 of the Bankruptcy Code and other applicable law, and forever barred to the fullest extent permitted by law.

## THE TKJP SETTLEMENT TERM SHEET

21.     On March 27, 2018, the TKJP Settlement Term Sheet Parties reached an

amicable agreement to resolve, among other things, (a) the treatment of the TKJP 503(b)(9) Claim,

the Debtor TKJP Claims, and the TKJP Debtor Claims and (b) the treatment of the Japan

Debtors' rights in the PI/WD Insurance Policies.  The material terms of the TKJP Settlement Term

Sheet are as follows:[5]

**Payments.**   On the Effective Date of the Plan, the TKJP 503(b)(9) Claim will be Allowed as an Administrative Expense Claim against TKH in the amount of Nine Million Two Hundred Fifty-Eight Thousand Three Hundred Twenty Dollars ($9,258,320).  In accordance with Section 2.3 of the Plan, within thirty (30) days of the Effective Date TKH will pay the TKJP 503(b)(9) Claim as follows:  (a) TKH will pay the TKJP State Expense Payment to the States  in  accordance  with  the  State  Settlement  Agreement;

---

[5] This summary is qualified in its entirety by reference to the provisions of the TKJP Settlement Term Sheet.  In the event of a conflict between this summary and the TKJP Settlement Term Sheet, the terms of the TKJP Settlement Term Sheet control.

RLF1 19063400V.1

(b) TKH will pay Seven Hundred Sixty-Six Thousand Five Hundred Eighty-Nine Dollars ($766,589) to TKJP for the benefit of holders of allowed general unsecured claims, other than the Consenting OEMs' Claims and the DOJ Claims, in the Japan Proceedings (the "***Other Allowed Claims Distribution Amount***"); and (c) TKH will contribute Seven Million Four Hundred Six Thousand Six Hundred Fifty-Six Dollars ($7,406,656) to the PSAN PI/WD Trust (the "***TKJP PSAN PI/WD Contribution Amount***"), which amount will be deemed to constitute the TKJP Contribution Amount under the Plan.  Payment of the TKJP 503(b)(9) Claim in accordance with the terms set forth in the TKJP Settlement Term Sheet is deemed to be in full and final satisfaction of the TKJP Debtor Claims.

**Holdback.**  The Nine Hundred Thirty-Five Thousand Seventy-Five Dollars ($935,075) of the TKJP 503(b)(9) Claim remaining after the distributions set forth above (the "***Remaining Holdback Amount***") will be held by the Legacy Trustee until such time as all pending claims in the Japan Proceedings are resolved.  At that time, the Final Distribution Percentage will be calculated, and all or such portion of the Remaining Holdback Amount as is equal to the Final Distribution Amount will be irrevocably paid to TKJP for the benefit of holders of allowed non-OEM claims with the balance of the Remaining Holdback Amount to be irrevocably paid to the PSAN PI/WD Trust.

**Insurance.**  The Japan Debtors' rights in the PI/WD Insurance Policies will be resolved by the Japan Debtors executing and delivering to the PSAN PI/WD Trustee that certain agreement attached as **Exhibit 1** to the TKJP Settlement Term Sheet on or immediately after the Effective Date of the Plan.

**Evidence Preservation.**  The TKJP Settlement Term Sheet Parties agree to preserve their rights and defenses as to PI/WD Records in the custody or control of the Japan Debtors and agree to work in good faith to establish a retention and access plan for such PI/WD Records, without otherwise delaying or affecting the effectiveness of any provision of this Settlement Term Sheet, including, but not limited to, provisions with respect to any payments to be paid to any Party or the Japan Debtors becoming Released Parties or Protected Parties; provided that nothing in the TKJP Settlement Term Sheet will change any agreed or contemplated transfers of PI/WD Records from the Japan Debtors to the Debtors, and the Debtors agree to be bound as to such PI/WD Records.  In the event that the Parties do not agree on such a plan for the PI/WD Records by April 5, 2018 or such later date agreed to by each of the Parties in writing, any Party will have the right to petition the Bankruptcy

Court on an expedited basis to determine this issue, and the Bankruptcy Court will determine an appropriate retention and access plan.  The TKJP Settlement Term Sheet Parties agree to be bound by the determination of the Bankruptcy Court.  Prior to the TKJP Settlement Term Sheet Parties agreeing on such plan or any determination by the Bankruptcy Court, the Japan Debtors will preserve, or cause to be preserved PI/WD Records currently in their respective custody or control.

**Intercompany Claims**.    Except with respect to the TKJP 503(b)(9) Claim and certain ordinary course postpetition claims for payment of trade payables, including any postpetition payment obligations, invoices, or purchase orders, in each case relating to the postpetition provision of goods, products, or services (including the Debtors' share of costs and expenses, if any, for product liability insurance and directors' and officers' insurance) (the "***Postpetition Claim Carve-Out***"), each of which may be paid in full as described in the TKJP Settlement Term Sheet, the balance of the Japan Debtors' claims against the Debtors in the Chapter 11 Cases, including the TKJP Debtor Claims, will be deemed to have an allowed balance of Zero Dollars ($0) as a result of being netted (the "***Netting***") against any and all claims of the Debtors asserted in the Japan Proceedings, including the Debtor TKJP Claims; provided, that in respect of any notes or other debt purportedly due from any of the Debtors, such amounts will be deemed for U.S. tax purposes only to have been eliminated by contribution by TKJP to the capital of TKAM; provided further that, for Japanese tax purposes, no payment made or deemed to have been made pursuant to the TKJP Settlement Term Sheet by TKJP will be considered royalties, interest or any other payment subject to withholding tax in Japan.  Similarly, except with respect to the Postpetition Claim Carve-Out, the Debtors' claims against the Japan Debtors in the Japan Proceedings, including the Debtor TKJP Claims, will be deemed to have an allowed balance of Zero Dollars ($0) as a result of the Netting and the Debtors will withdraw the Debtor Petitions for Assessment.

**Other Claims in Japan Proceedings**.    Any petitions for assessment filed in the Japan Proceedings by the Tort Claimants' Committee, including any of its members, or the MDL Plaintiffs will be promptly withdrawn and, without affecting in any way the payments to be paid to the PSAN PI/WD Trust in accordance with the TKJP Settlement Term Sheet, neither the MDL Plaintiffs, the Tort Claimants' Committee (including any of its members), nor the Future Claims Representative will have any allowed claims against any of the Japan Debtors in the Japan Proceedings.

**Recognition.** The MDL Plaintiffs and the Tort Claimants' Committee, including each of its members, and the Future Claims Representative agree not to challenge any relief sought in the Japan Debtors' pending chapter 15 cases, in the pending proceedings in Canada, or in the Japan Proceedings on the conditions set forth in the TKJP Settlement Term Sheet, including the recognition of the Section 42 Approval Order and the Section 85(5) DOJ Restitution Award Approval Order.

**The Japan Debtors as Released Parties and Protected Parties.** The Tort Claimants' Committee and the Future Claims Representative acknowledge and agree that (a) the treatment of the TKJP 503(b)(9) Claim and the TKJP Debtor Claims, and (b) the treatment of the Japan Debtors' rights in the PSAN PI/WD Insurance Policies, pursuant to the TKJP Settlement Term Sheet, have been, in each case, resolved prior to the Effective Date, through the TKJP Settlement Term Sheet, in a manner reasonably acceptable to the Tort Claimants' Committee and the Future Claims Representative.[6] Accordingly, subject to the occurrence of the Effective Date and compliance by the Japan Debtors with the terms of the TKJP Settlement Term Sheet, in accordance with the Plan and the Confirmation Order, each of the Japan Debtors will be deemed to be Released Parties and Protected Parties under the Plan. The Debtors will provide notice of the treatment of the Japan Debtors as Released Parties and Protected Parties in the notice of the occurrence of the Effective Date.

## BASIS FOR RELIEF REQUESTED

A.     **The State Settlement Agreement, the Puerto Rico Settlement Agreement, and the TKJP Settlement Term Sheet Should be Approved Pursuant to Bankruptcy Code Section 105(a) and Bankruptcy Rule 9019.**

22.     The Court has authority to approve the State Settlement Agreement, the Puerto Rico Settlement Agreement, and the TKJP Settlement Term Sheet pursuant to Bankruptcy Code section 105(a) and Bankruptcy Rule 9019. Bankruptcy Code section 105(a) provides that, "[t]he court may issue an order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Bankruptcy Rule 9019 provides that "[o]n

---

[6] The effectiveness of the TKJP Settlement Term Sheet is conditioned upon, among other things, the Consenting OEMs making, among other things, a similar acknowledgement in a form reasonably acceptable to the TKJP Settlement Term Sheet Parties.

motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).

23.    Settlements are generally favored and encouraged in bankruptcy proceedings. *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996); *see also Will v. Northwestern Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006) ("Settlements are favored, but the unique nature of the bankruptcy process means that judges must carefully examine settlements before approving them."); *In re Penn Cent. Transp. Co.*, 596 F.2d 1102, 1113 (3d Cir. 1979) ("[i]n administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts.") (alteration in original) (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)).

24.    The decision of whether to approve a particular settlement lies within the sound discretion of the bankruptcy court. *In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006). In evaluating the settlement, the Court should consider "whether the compromise is fair, reasonable, and in the best interest of the estate." *In re Louise's Inc.*, 211 B.R. 798, 801 (Bankr. D. Del. 1997). Importantly, the bankruptcy court's discretion should be exercised "in light of the general public policy favoring settlements." *In re Capmark Fin. Grp. Inc.*, 438 B.R. 471, 515 (Bankr. D. Del.2010) (quoting *In re Hibbard Brown & Co.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998)). In considering the merits of the settlement, a bankruptcy court does not need to be convinced that the settlement is the best possible outcome for the parties, rather the court need only "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *In re W.R. Grace & Co.*, 475 B.R. 34, 78 (D. Del. 2012) (citing *Aetna Cas. & Sur. Co. v. Jasmine, Ltd. (In re Jasmine, Ltd.)*, 258 B.R. 119, 123 (D. N.J.

17

2000)); *In re Key3Media Grp., Inc.*, 336 B.R. 87, 93 (Bankr. D. Del. 2005), *aff'd*, No. 03-10323

(MFW), 2006 WL 2842462 (D. Del. Oct. 2, 2006); *see also In re Coram Healthcare Corp.*, 315

B.R. 321, 330 (Bankr. D. Del. 2004).

          25.     In determining whether a proposed settlement is fair, reasonable, and in

the best interests of the estate, courts in this circuit consider the following four (4) factors:

"(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the

complexity of the litigation involved, and the expense, inconvenience and delay necessarily

attending it; and (4) the paramount interest of the creditors." *Martin*, 91 F.3d at 393; *see also*

*Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.)*, 283 F.3d 159, 165 (3d Cir. 2002); *In re*

*eToys, Inc.*, 331 B.R. 176, 198 (Bankr. D. Del. 2005). "The court must also consider 'all other

factors relevant to a full and fair assessment of the wisdom of the proposed compromise.'" *In re*

*Marvel Entm't Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998) (quoting *Anderson*, 390 U.S. at

424). Accordingly, at its core, "the ultimate inquiry [is] whether 'the compromise is fair,

reasonable, and in the interest of the estate.'" *Id.* (quoting *In re Louise's, Inc.*, 211 B.R. 798, 801

(D. Del. 1997)); *see also In re Washington Mut. Inc.*, 442 B.R. 314, 327 (Bankr. D. Del. 2011)

("In making its evaluation [whether to approve a settlement], the court must determine whether

'the compromise is fair, reasonable, and in the best interest of the estate.'") (internal citation

omitted).

          26.     The State Settlement Agreement, the Puerto Rico Settlement Agreement,

and the TKJP Settlement Term Sheet should each be approved because they represents a fair and

equitable compromise, fall well within the range of reasonableness, and satisfy each of the

*Martin* factors, as described further below. By entry into the State Settlement Agreement, the

State Settlement Parties have reached a compromise that ends almost two (2) years of litigation

in the State Actions, satisfies over Ten Billion Dollars ($10 Billion) in asserted Claims against

TKH, and resolves both the Discharge Appeal and the Confirmation Appeal,[7] thereby preserving

the value of the Estates in the best interests of creditors.  Similarly, by entry into the Puerto Rico

Settlement Agreement, the Puerto Rico Settlement Parties have resolved a multi-billion dollar

proof of claim and avoided extended litigation regarding the classification and dischargeability

of the Puerto Rico Claim.  Likewise, the TKJP Settlement Term Sheet resolves billions of dollars

of asserted Intercompany Claims, allows the States and the PI/WD Trust to share in the proceeds

of the TKJP 503(b)(9) Claim, and through the Japan Debtors' release of their rights in the PI/WD

Insurance Policies with respect to the Overlapping Trust Claims, furthers the PSAN PI/WD

Trust's efforts to pursue insurance coverage under the PI/WD Policies for Trust Claims under the

PI/WD Policies, as permitted under the Plan.

27.    <u>The Probability of Success in the Litigation</u>.  The Debtors submit that

there exists a bona fide dispute as to the merits and validity of, among other things, the State

Claims, the Discharge Appeal, the Confirmation Appeal, the Reclassification Motion, the Debtor

TKJP Claims, and the TKJP Debtor Claims.  Although the Debtors firmly deny the allegations of

wrongdoing by the Debtors underlying the State Claims and believe that the legal and factual

records established at the Confirmation Hearing and in support of the Discharge Motion

respectively support the Confirmation Order and the Discharge Opinion, the Debtors

acknowledge that the outcome of any litigation is inherently uncertain.  Likewise, although the

Debtors believe that the TKJP 503(b)(9) Claim could be offset by the Debtor TKJP Claims, the

Japan Debtors have expressed countervailing legal arguments and that the outcome of any

litigation is uncertain.

---

[7] No other entity has appealed the Confirmation Order; accordingly, withdrawal of the Confirmation Appeal upon the effectiveness of the State Settlement Agreement will result in the Confirmation Order becoming a final, non-appealable order.

RLF1 19063400V.1

28.    <u>The Difficulties Associated With Collection</u>.  The difficulties associated
with collection are not implicated in this situation due to the factual circumstances of the issues
resolved in the various settlements.  However, the inapplicability of this factor does not detract
from the reasonableness of the settlements under the other factors of the *Martin* test.

29.    <u>The Complexity of the Litigation and the Attendant Expense,</u>
<u>Inconvenience, and Delay</u>.  Entry into the State Settlement Agreement and the Puerto Rico
Settlement Agreement put an end to further protracted, complicated and expensive litigation.
Continuing to defend against the State Actions, the Confirmation Appeal, the Discharge Appeal,
and the Reclassification Motion would require significant time, effort, and resources from the
Reorganized Debtors, potentially interfering with the Reorganized Debtors' obligations and
delaying the recall process.  The complexity of the issues involved in each of the State Actions,
the Confirmation Appeal, the Discharge Appeal, and the Reclassification Motion, as well as the
expense, inconvenience, and delay that would result therefrom, strongly militate in favor of
approving the State Settlement Agreement and the Puerto Rico Settlement Agreement, which
together expeditiously resolve all of these disputes.  Similarly, entry in the TKJP Settlement
Term Sheet avoids protracted and expensive litigation in both the Bankruptcy Court and in the
Tokyo District Court between the Debtors and the Japan Debtors over the amount and validity of
the Debtor TKJP Claims and the TKJP Debtor Claims.  Rather than engaging in litigation in
multiple locations, which could potentially delay the administration of the Estates, and, as a
result, harm other creditors, the State Settlement Agreement, the Puerto Rico Settlement
Agreement, and the TKJP Settlement Term Sheet allow the Debtors to conserve their limited
financial resources.

RLF1 19063400V.1

30.    <u>The Paramount Interest of Creditors</u>.  The State Settlement Agreement and

the Puerto Rico Settlement Agreement together satisfy almost Twelve Billion Dollars

($12,000,000,000) in asserted Other General Unsecured Claims against TKH with essentially only

One Hundred Fifty Thousand Dollars ($150,000) that, if not otherwise utilized to defend the State

Claims, the Puerto Rico Claim, the Confirmation Appeal, the Discharge Appeal, and the

Reclassification Motion, could have been available to holders of Other General Unsecured Claims.

Similarly, the TKJP Settlement Term Sheet satisfies billions of dollars in asserted Intercompany

Claims against the Debtors in exchange for the Debtors' payment of Nine Million Two Hundred

Fifty-Eight Thousand Three Hundred Twenty Dollars ($9,258,320) in satisfaction of the TKJP

503(b)(9) Claim—of which at least Seven Million Four Hundred Six Thousand Six Hundred

Fifty-Six Dollars ($7,406,656) will be contributed to the PSAN PI/WD Trust and One Hundred

Fifty Thousand Dollars ($150,000) will be paid to the States.

31.    Accordingly, the Debtors respectfully submit that entry into the State

Settlement Agreement, the Puerto Rico Settlement Agreement, and the TKJP Settlement Term

Sheet is appropriate and should be approved pursuant to section 105(a) of the Bankruptcy Code

and Bankruptcy Rule 9019.

**B.    The Bankruptcy Court Should Vacate the Discharge Opinion Pursuant to Bankruptcy Code Section 105(a) and Bankruptcy Rule 9024.**

32.    As part of the State Settlement Agreement, the Debtors and the States

jointly request vacatur of the Discharge Opinion.  It is well settled that bankruptcy courts, as

courts of equity, have the power to reconsider, modify, or vacate their previous orders, if the

interests of justice so require and if no intervening rights would be prejudiced by this action.  *See*

*In re Lenox*, 902 F.2d 737, 739–40 (9th Cir. 1990) (noting that such power was formalized in

Bankruptcy Rule 9024).  Bankruptcy Rule 9024 makes Rule 60(b) of the Federal Rules of Civil

Procedure (the "*Civil Rules*") applicable to cases under the Bankruptcy Code.  Pursuant to Civil Rule 60(b)(6), "on motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding" for, among other things, "any . . . reason that justifies relief." Fed. R. Civ. P. 60(b)(6).

33.     As the Bankruptcy Court has not yet entered an order enforcing the Discharge Opinion, the States' Discharge Appeal is not yet treated as filed pursuant Bankruptcy Rule 8002(a)(2).  Accordingly, the Debtors and the States submit that no intervening rights will be prejudiced by vacatur.

34.     As the question of whether the State Claims are dischargeable pursuant to section 1141(d)(1)(A) of the Bankruptcy Code is an issue of great significance to the States, as evidenced by the States' immediate filing of the Discharge Appeal, the agreement to jointly request vacatur of the Discharge Opinion played a critical role in the States' willingness to engage in settlement discussions with the Debtors.

35.     Thus, under these specific circumstances, the Debtors and the States submit that it would be in the interests of justice for the Bankruptcy Court to vacate the Discharge Opinion.

## WAIVER OF BANKRUPTCY RULE 6004(h)

36.     Pursuant to Section 5.19(l) of the Plan the Consenting OEMs can only consent to the use, contribution, or reallocation of the remaining portion of the Resolution Reserve on or prior to the Effective Date without further order of the Bankruptcy Court.  Given that the Effective Date is currently contemplated to occur in early April, to implement the foregoing successfully, the Debtors seek a waiver of the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

RLF1 19063400V.1

## NOTICE

37.     Notice of this Motion has been provided to (a) the Office of the United States Trustee for the District of Delaware (Attn:  David Buchbinder, Esq. and Jane Leamy, Esq.); (b) the Securities and Exchange Commission; (c) the Internal Revenue Service; (d) the Offices of the United States Attorney for each of the District of Delaware and the Eastern District of Michigan; (e) NHTSA; (f) each of the Consenting OEMs; (g) the Plan Sponsor; (h) counsel for each of the Committees; (i) the Future Claims Representative; (j) the States; (k) Puerto Rico; and (l) all parties who have requested service of notices in the Chapter 11 Cases or the Chapter 15 Proceedings pursuant to Bankruptcy Rule 2002.  The Debtors respectfully submit that such notice is sufficient under the circumstances.

## NO PREVIOUS REQUEST

38.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

23

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Bankruptcy Court may deem just and appropriate.

Dated: March 27, 2018
       Wilmington, Delaware

                              /s/ Russell C. Silberglied
                              RICHARDS, LAYTON & FINGER, P.A.
                              Mark D. Collins (No. 2981)
                              Russell C. Silberglied (No. 3462)
                              Michael J. Merchant (No. 3854)
                              Amanda R. Steele (No. 5530)
                              Brett M. Haywood (No. 6166)
                              One Rodney Square
                              920 N. King Street
                              Wilmington, Delaware 19801
                              Telephone:  (302) 651-7700
                              Facsimile:  (302) 651-7701

                              -and-

                              WEIL, GOTSHAL & MANGES LLP
                              Marcia L. Goldstein
                              Ronit J. Berkovich
                              Matthew P. Goren
                              Jessica Diab
                              767 Fifth Avenue
                              New York, New York  10153
                              Telephone:  (212) 310-8000
                              Facsimile:  (212) 310-8007

                              *Attorneys for the Debtors*
                              *and Debtors in Possession*

RLF1 19063400V.1