## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------x
                                         :

| | | |
|---|---|---|
| In re | : | **Chapter 11** |
| | : | |
| **TK HOLDINGS INC.,** *et al.,* | : | **Case No. 17-11375 (BLS)** |
| | : | |
| Debtors.[1] | : | **Jointly Administered** |
| | : | |
| | : | **Objection Deadline: January 24, 2019 at 4:00 p.m. (EST)** |
| | : | **Hearing Date:  February 21, 2019 at 10:00 a.m. (EST)** |
| | : | |

-------------------------------------------------------x

### JOSEPH J. FARNAN, JR., AS TRUSTEE OF THE REORGANIZED TK HOLDINGS TRUST'S OBJECTION TO ADMINISTRATIVE EXPENSE CLAIM OF OLSON METAL PRODUCTS, LLC

### (Claim No. 4989)

1.      Joseph J. Farnan, Jr., in his capacity as Trustee ("***Trustee***") of the Reorganized TK Holdings Trust (as defined in the *Amended and Restated Trust Agreement*) (the "***Trust***") in the chapter 11 cases of the above-captioned debtors (collectively, the "***Debtors***"), respectfully represents as follows in support of this objection (this "***Objection***"):

### Relief Requested

2.      By this Objection, pursuant to section 502 of title 11 of the United States Code (the "***Bankruptcy Code***"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), and Rule 3007-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "***Local***

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Takata Americas (9766); TK Finance, LLC (2753); TK China, LLC (1312); TK Holdings Inc. (3416); Takata Protection Systems Inc. (3881); Interiors in Flight Inc. (4046); TK Mexico Inc. (8331); TK Mexico LLC (9029); TK Holdings de Mexico, S. de R.L. de C.V. (N/A); Industrias Irvin de Mexico, S.A. de C.V. (N/A); Takata de Mexico, S.A. de C.V. (N/A); and Strosshe-Mex, S. de R.L. de C.V. (N/A).  Except as otherwise set forth herein, the Debtors' international affiliates and subsidiaries are not debtors in these chapter 11 cases.  The location of the Debtors' corporate headquarters is 2500 Takata Drive, Auburn Hills, Michigan 48326.

*Rules*"), the Trust seeks to disallow and/or expunge the claim filed by Olson Metal Products, LLC ("*Claimant*"), assigned claim number 4989 (the "*Claim*"), a copy of which is attached hereto as **Exhibit A**.

3.     Through the Claim, Claimant seeks allowance of a purported administrative expense claim in the amount of $255,411.59 for alleged termination damages arising under certain prepetition purchase orders for parts.  The Claim, however, fails to append copies of the underlying purchase orders, terms and conditions, or invoices which constitute the writings upon which the Claim is based.  It is well-settled law that it is the claimant's burden to establish that it is entitled to an administrative expense claim under section 503(b) of the Bankruptcy Code.  Claimant has not met its burden, and the Claim should be disallowed summarily based upon the lack of support provided for the Claim.

4.     Subsequent to the filing of the Claim, Claimant has informally submitted documents and information to the Trust's representatives in support of its claim.  However, even if such later submitted documents and information are considered, they fail to establish a valid claim for allowance of an administrative claim in the amount asserted, or any other amount.

5.     In support of this Objection, the Trust submits the declaration of Brian Koluch, Managing Director at PricewaterhouseCoopers LLP (the "*Koluch Declaration*"), a copy of which has been filed contemporaneously herewith.

6.     A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit B** (the "*Proposed Order*").

## Jurisdiction

7.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C.
§§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District
Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant
to 28 U.S.C. § 157(b) and, pursuant to Local Rule 9013–1(f), the Trust consents to the entry of a
final order by the Court in connection with this Objection to the extent that it is later determined
that the Court, absent consent of the parties, cannot enter final orders or judgments consistent
with Article III of the United States Constitution.  Venue is proper before the Court pursuant to
28 U.S.C. §§ 1408 and 1409.

## Background

8.      On June 25, 2017 (the "***Petition Date***"), the Debtors each filed a voluntary
petition for relief under chapter 11 of the Bankruptcy Code.

9.      On February 21, 2018, the Court entered an order [Docket No. 2120] (the
"***Confirmation Order***") confirming the *Fifth Amended Joint Chapter 11 Plan of Reorganization
of TK Holdings and its Affiliated Debtors* [Docket No. 2116] (the "***Plan***").  The Plan became
effective on April 10, 2018 [Docket No. 2646].  Prepetition liabilities of the Debtors that were
not listed on the Debtors' schedules of assets and liabilities and for which no Proof of Claim was
timely filed are defined as "Disallowed" and, therefore, not entitled to distributions under the
Plan.  Plan § 1.1.

10.     Upon the Effective Date of the Plan, the Trust was established.  The Trust
was established for the purpose of reconciling certain Claims, administering the Trust Assets[2]

---

[2]  Capitalized terms not defined herein shall have the meanings ascribed to them in the Plan.

and making Distributions to the Trust Beneficiaries as provided for under the Plan.  Joseph J.

Farnan, Jr. is the duly appointed Trustee of the Trust (the "*Trustee*").

11.     On October 4, 2017, the Bankruptcy Court entered the *Order For
Authority to (I) Establish Deadlines for Filing Proofs of Claim, (II) Establish the Form and
Manner of Notice Thereof, and (III) Approve Procedures for Providing Notice of Bar Date and
Other Important Deadlines and Information to Potential PSAN Inflator Claimants* [Docket
No. 959] (the "*Bar Date Order*").  Pursuant to the Bar Date Order, among other things,
November 27, 2017 (the "*General Bar Date*") was established as the deadline for persons or
entities not including Governmental Units as defined in section 101(27) of the Bankruptcy Code
to file proofs of claim in the Debtors' Chapter 11 Cases.

12.     The Debtors served notice of the General Bar Date on all traditional
creditors in the Chapter 11 Cases (the "*General Bar Date Notice*"), including Claimant, which
provided creditors with actual notice and information regarding, *inter alia* (a) the Disclosure
Statement and Confirmation Hearing dates and objection deadlines, (b) the fact that a claimant's
interests may be affected by a chapter 11 plan of reorganization, through releases, injunctions,
discharges, sale "free and clear" orders, or otherwise, and (c) the website maintained by the
Debtors' noticing agent (www.TKRestructuring.com), where creditors could file proofs of claim,
register their email addresses to receive further notices about the Chapter 11 Cases, and view
other key documents and pleadings filed in the Chapter 11 Cases.  The Bar Date Order included
a finding by the Court that the noticing procedures set forth therein, including the General Bar
Date Notice, constituted good and sufficient notice of the General Bar Date to creditors of the
Debtors.

4

13.     Additional information regarding the circumstances leading to the commencement of these Chapter 11 Cases and information regarding the Debtors' businesses and capital structure is set forth in the *Declaration of Scott E. Caudill in Support of Debtors' Chapter 11 Petitions and First Day Relief*, dated June 25, 2017 [Docket No. 19] (the "***Caudill Declaration***").

**The Claim**

14.     On June 8, 2018, Claimant filed a proof of claim, which was assigned claim number 4989, asserting a post-petition claim for remaining inventories of products and materials.

15.     Prepetition, Claimant supplied the Debtors certain parts pursuant to purchase orders issued by the Debtors (the "***Purchase Orders***").  True and correct copies of the Purchase Orders under which $237,375.78 of the damages asserted in the Claim arise are attached collectively as **Exhibit C** hereto. [3]

16.     The subject Purchase Orders provide, in pertinent part, as follows: "Visit Supplier Portal, download section at http://www.takata.com for a copy of the Buyers [*sic*] current standard purchase order terms and conditions, which are expressly incorporated into the Order." A true copy of the Debtors' referenced standard purchase order terms and conditions ("***T&Cs***") as incorporated by reference into the Purchase Orders are attached as **Exhibit D** hereto.

---

[3] The Trust has been unable to connect the remaining $18,035.81 of the alleged damages asserted in the Claim to any purchase order(s) issued by the Debtors.  Additionally, $73,322.59 of the alleged damages asserted in the Claim arise from parts under purchase orders that were issued by the Debtors to a third party vendor, Metal Systems of Mexico ("MSM"), not Claimant.  MSM has filed a separate administrative expense claim, claim no. 5005, for alleged cancellation damages related to the same parts.

DOCS_LA:318526.2 82828/003

**Basis for Relief Requested**

**A.      General Legal Standards for Proofs of Claim**

17.      When asserting a claim against a bankrupt estate, a claimant must allege

facts that, if true, would support a finding that the debtor is legally liable to the claimant.  *See In*

*re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992); *see also In re Int'l Match Corp.*, 69

F.2d 73, 76 (2d Cir. 1934) (finding that a proof of claim should at least allege facts from which

legal liability can be seen to exist).  Where the claimant alleges sufficient facts to support its

claim, its claim is afforded *prima facie* validity.  *In re Allegheny Int'l, Inc.*, 954 F.2d at 173.  A

party wishing to dispute such a claim must produce evidence in sufficient force to negate the

claim's *prima facie* validity.  *Id.*  In practice, the objecting party must produce evidence that

would refute at least one of the allegations essential to the claim's legal sufficiency.  *Id.* at

173-74.  Once the objecting party produces such evidence, the burden shifts back to the claimant

to prove the validity of his or her claim by a preponderance of the evidence.  *Id.* at 174.

Ultimately, the burden of persuasion is on the claimant.  *Id.*

18.      Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a

claim may not be allowed to the extent that "such claim is unenforceable against the debtor and

property of the debtor, under any agreement or applicable law."  11 U.S.C. § 502(b)(1).

**B.      The Claim Does Not Meet the Burden of Establishing That Claimant's Alleged**

**Damages Constitute a Valid Administrative Expense Claim Under Bankruptcy**

**Code Section 503(b)**

19.    Bankruptcy Code section 503(b)(1)(A) provides for the allowance of administrative expenses, after notice and a hearing, for "the actual, necessary costs and expenses of preserving the estate."  11 U.S.C. § 503(b)(1)(A).

20.    Administrative claimants bear the burden of establishing that their claims qualify for priority status.  *In re Goody's Family Clothing, Inc.*, 401 B.R. 131, 137 n.27 (Bankr. D. Del. 2009) (citing *In re Insilco Techs. Inc.*, 309 B.R. 111, 114 (Bankr. D. Del. 2004)); *In re DVI, Inc.*, 308 B.R. 703, 708 (Bankr. D. Del. 2004); *In re Plastech Engineered Prods., Inc.*, No. 08-42417, 2008 WL 5233014, at *2 (Bankr. E.D. Mich. Oct. 7, 2008) (party asserting allowance of an administrative expense bears the burden of proving its claim is within Bankruptcy Code section 503).  This burden is one that must be proven by a preponderance of the evidence.  *In re Worldwide Direct, Inc.*, 334 B.R. 112, 120 (Bankr. D. Del. 2005); *In re Lease-A-Fleet, Inc.*, 140 B.R. 840, 846 (Bankr. E.D. Pa. 1992); *see also In re Unidigital, Inc.*, 262 B.R. 283, 288 (Bankr. D. Del. 2001) (because administrative expense claims are afforded priority pursuant to section 507(a)(1) of the Bankruptcy Code, allowance of such claims is "narrowly construed").

21.    Accordingly, Claimant had the burden to demonstrate that its alleged damages arose from (1) postpetition transactions with the Debtors and (2) that the estates received a postpetition benefit.  *See In re O'Brien Envt'l Energy, Inc.*, 181 F.3d 527, 532-33 (3d Cir. 1999); *In re Pinnacle Brands, Inc.*, 259 B.R. 46, 51 (Bankr. D. Del. 2001) ("the expense must have arisen from a post-petition transaction between the creditor and the trustee and the transaction must have substantially benefitted the estate"); *In re Mid-American Waste Sys., Inc.*, 228 B.R. 816, 821 (Bankr. D. Del. 1999) (party seeking administrative priority must demonstrate

DOCS_LA:318526.2 82828/003

the "claimed expenses (i) arose out of a postpetition transaction with the debtor-in-possession

and (ii) directly and substantially benefitted the estate.").

22.     The Claim does not meet this burden.  As discussed above, Claimant

failed to attach copies of the relevant purchase orders, the T&Cs, or any invoices.  The Claim

should be disallowed summarily for lack of evidence.  *See id.*, *see also* Fed. R. Bankr. Pro.

3001(c)(1) ("when a claim … is based on a writing, a copy of the writing shall be filed with the

proof of claim").

23.     In particular, Claimant had to establish that the damages arose from post-

petition transactions with the Debtors because, by definition, there was otherwise no post-

petition benefit to the estates.  The Claim seeks recovery only for damages related to **<u>cancelled</u>**

orders.  There is no contention that Claimant actually delivered the parts to the Debtors or that

any other measurable benefit to the estates was realized.  Notably, in addition, the Debtors'

customers (the OEMs) did not pay the Debtors for the cancelled orders of Claimant.  *See* Koluch

Declaration, ¶ 10.  The estates, therefore, received no actual, measurable benefit.  *O'Brien*,

*supra*; *In re Bradlees Stores*, Case No. 02 Civ. 0896, 2003 U.S.Dist. LEXIS 234, **5-6

(S.D.N.Y. Jan. 9, 2003) (where prepetition purchase orders were cancelled postpetition, the

claimants were unable to demonstrate that they conferred any actual, post-petition benefit upon

the debtors); *see also In re Enron Corp.*, 279 B.R. 695, 706, 709 (Bankr. S.D.N.Y. 2002) (court

held that asserted administrative claims by Florida Gas based on reservation charges owed for

the availability of pipeline capacity that was neither used by the debtors to transport natural gas

nor released to a third-party were not entitled to administrative expense priority) ("There must be

a concrete, discernible benefit from actual use because a speculative benefit or the mere potential

for benefit is not enough to warrant an administrative claim priority.") (citations omitted).[4]

24.    In fact, the Trust has concluded after review of the pertinent Debtor books

and records and the information informally provided by Claimant that $73,322.59 of the alleged

damages asserted in the Claim arise from parts under purchase orders that were issued by the

Debtors to a third party vendor, Metal Systems of Mexico ("MSM"), not Claimant.[5]  By reason

of such failures of proof, and the other defenses asserted herein, the Objection should be

sustained.

## C.    Even if the Court Considers the Information Informally Produced by Claimant After the Filing of the Claim, Claimant Still Has Not Established a Valid Administrative Expense Claim

25.    For the reasons discussed above, Claimant may be entitled only to a

general unsecured claim, at best.  In addition, the Claim may be disallowed or its amount

reduced on one or more further substantive and procedural grounds, including without limitation

as set forth below.

26.    The informal information submitted by Claimant reveals only that

Claimant asserts that it incurred costs related to certain cancelled parts orders.  Those alleged

costs include: (i) $58,302.03 for the costs of raw materials; (ii) $42,616.48 for work in process;

---

[4] As discussed below, the Trust has no liability to Claimant for the instant termination damages if
the OEMs did not pay the Debtors for the cancelled orders.

[5] As noted above, MSM has filed a separate administrative expense claim, claim no. 5005, for
alleged cancellation damages related to the same parts.

and (iii) $181,973.17 for finished parts.  Even if Claimant incurred such costs in the amount

alleged, however, the Trust's liability should not be fixed in such amount.

27.    First, under the express terms of the T&C's, Claimant is only entitled to

recover such termination damages to the extent that the Debtors were, in turn, paid for the

cancelled orders by the OEMs – which they have not been.  Specifically, paragraph 16 of the

T&C's attached as **Exhibit D** hereto governs in the event of damages arising from the Debtors'

termination of orders other than for the seller's default.  That provision provides as follows, in

pertinent part:

> "Buyer may at its option immediately terminate all or any part of
> an Order or any Releases, for:  (a) the termination or material
> reduction in Customer demands; (b) a change in Buyer's
> requirements; (c) Seller's failure to remain competitive in price,
> quality, delivery, and technology whether or not such failure would
> be a default or breach by Seller; or (d) Buyer's convenience, by
> giving written notice to Seller….
>
> "Buyer ... shall have no obligation to Seller under this Section if
> Buyer terminates its purchase obligations under an Order or any
> Release for any reason other than for Buyer's convenience, except
> to the extent Buyer recovers from its Customer for amounts
> otherwise due to Seller from Buyer under this Section."

The sudden cancellation of orders by the Debtors' customers, not the Debtors' convenience,

eliminated the Debtors' need for the related parts ordered from Claimant.  Moreover, as

discussed above and in the Koluch Declaration, the Debtors' customers have not compensated

the Debtors for any of the Claimant's cancelled orders.

28.    Second, under Michigan law[6] an aggrieved party is required to take

reasonable steps to mitigate damages.  *M & V Barocas v THC, Inc.*, 216 Mich App 447, 449; 549

NW2d 86 (1996).  As stated in *Morris v Clawson Tank Co.*, 459 Mich 256, 263; 587 NW2d 253

---

[6] The T&C's provide that Michigan law applies.  T&Cs § 26(a).

(1998), "[m]itigation of damages is a legal doctrine that seeks to minimize the economic harm

arising from wrongdoing."

> "Where one person has committed a tort, breach of contract or
> other legal wrong against another, it is incumbent upon the latter to
> use such means as are reasonable under the circumstances to avoid
> or minimize the damages.  The person wronged cannot recover for
> any item of damage which could thus have been avoided."

*Id.* at 263-264 (quoting *Shiffer v Gibraltar School Dist. Bd. of Ed.*, 393 Mich 190, 197; 224

NW2d 255 (1974), in turn quoting McCormick, Damages, § 33, p. 127).  Paragraph 16 of the

T&C's requires sellers to furnish information sufficient for the Debtors to audit the damages

owing, and further provides that for any damages arising from a terminated order, "the Seller

shall deduct the reasonable value or cost (whichever is higher) of any Goods or materials

subsequently used or sold by Seller with Buyer's written consent …."  Therefore, unless

evidence of reasonable mitigation efforts is furnished by Claimant as required by the T&C's and

Michigan law, the Claim should be disallowed.

       29.     Third, as noted above, MSM has filed a separate administrative expense

claim, claim no. 5005, for alleged cancellation damages related to some of the same parts

asserted in the Claim.  To the extent that the alleged damages asserted in MSM's claim and the

Claim are duplicative, only one claim should be allowed to the extent that it is valid.

**D.      To the Extent that the Claim Is Reclassified as a General Unsecured Claim, It**

              **Should Be Disallowed As Late-Filed**

       30.     Claimant did not file a proof of claim prior to the general claims bar date.

Thus, since the Claim is subject to reclassification as a general unsecured claim (to the extent it

exists at all), such claim meets the definition of a "Disallowed" Claim and is not entitled to a

distribution pursuant to the Plan.  *See* Plan § 1.1, p.10.  See also 11 U.S.C. § 502(b)(9) ("if [an]

objection to a claim is made, the court, after notice and a hearing, shall determine the amount of

such claim . . . and shall allow such claim in such amount, except to the extent that . . . . proof of

such claim is not timely filed…"); Bankruptcy Rule 3003(c)(3) ("[t]he court shall fix and for

cause shown may extend the time within which proofs of claim or interest may be filed.");  *In re*

*PT-1 Communs., Inc.*, 386 B.R. 402, 409 (Bankr. E.D.N.Y. 2007) (bar dates serve the important

purposes of "finality and debtor rehabilitation"); *Berger v. Trans World Airlines, Inc. (In re*

*Trans World Airlines, Inc.*), 96 F.3d 687, 690 (3d Cir. 1996) ("The bar date means just that; it is

a 'drop-dead date' that bars all prepetition claimants who received the required notice."); *In re*

*Grand Union Co.*, 204 B.R. 864, 871 (Bankr. D. Del. 1997) ("[T]he claims bar date operates as a

federally created statute of limitations, after which the claimant loses all of her right to bring an

action against the 'debtor.'").

## Responses to this Objection

31.     To contest the relief sought by the Trust as to the claim subject to this

Objection, Claimant must file and serve a written response to this Objection (a "***Response***") so

that it is received no later than **January 24, 2019 at 4:00 p.m. (Prevailing Eastern Time)** (the

"***Response Deadline***").  Any Response to this Objection must be filed with the Office of the

Clerk of the United States Bankruptcy Court for the District of Delaware:  824 Market Street, 3rd

Floor Wilmington, Delaware 19801, and served upon the following addressee, so as to be

actually received by no later than the Response Deadline:

PACHULSKI STANG ZIEHL & JONES LLP
Attn:  Laura Davis Jones & Peter J. Keane
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899

32.    Any Response to this Objection must, at a minimum, contain the

following information:

i.      a caption setting forth the name of the Court, the name of the
Debtor, the lead case number, and the title of the Objection to
which the Response is directed;

ii.     the name of the claimant, the claim number, and a description of
the basis for the amount of the claim;

iii.    the specific factual basis and supporting legal argument upon
which the party will rely in opposing this Objection;

iv.     all documentation and other evidence in support of the claim, not
previously filed with the Court or the former claims agent, upon
which the claimant will rely in opposing this Objection; and

v.      the name, address, telephone number, fax number and/or email
address of the person(s) (which may be the claimant or the
claimant's legal representative) with whom counsel for the Trust
should communicate with respect to the claim or the Objection and
who possesses authority to reconcile, settle, or otherwise resolve
the objection to the claim on behalf of the claimant.

33.    If Claimant fails to timely file and serve a Response by the Response

Deadline, the Trust may present to the Court an appropriate order modifying the Claim without

further notice to Claimant or a hearing.

34.    The Trust may file and serve a reply to any Response in accordance with

the Local Rules.  The Trust reserves the right to seek an adjournment of the hearing on any

Response to this Objection, which adjournment will be noted on the notice of agenda for the

hearing.

DOCS_LA:318526.2 82828/003

## Reservation of Rights

35.     The Trust hereby reserves the right to object in the future to the Claim on any ground, and to amend, modify, and/or supplement this Objection to the extent that the Objection is not granted and/or in response to any further support that may be submitted by Claimant.

36.     The Trust further reserves all rights against any person or entity including the Plan Sponsor under the Plan and U.S. Acquisition Agreement with respect to the Claim.

## Notice

37.     Notice of this Objection has been provided to (i) the Office of the United States Trustee for the District of Delaware; (ii) Claimant; and (iii) all parties who have requested service of notices in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002.  The Trust respectfully submits that such notice is sufficient under the circumstances.

## No Previous Request

38.     No previous request for the relief sought herein has been made by the Trust to this or any other court.

DOCS_LA:318526.2 82828/003

WHEREFORE the Trust respectfully requests entry of the Proposed Order

granting the relief requested herein and such other and further relief as the Court may deem just

and appropriate.

| | |
|---|---|
| Dated:  January 10, 2019<br>Wilmington, Delaware | PACHULSKI STANG ZIEHL & JONES LLP<br><br>*/s/ Peter J. Keane*<br>Laura Davis Jones (Bar No. 2436)<br>David M. Bertenthal (CA Bar No. 167624)<br>Peter J. Keane (Bar No. 5503)<br>919 North Market Street, 17th Floor<br>P.O. Box 8705<br>Wilmington, DE 19899 (Courier 19801)<br>Telephone:  302-652-4100<br>Facsimile:  302-652-4400<br>E-mail:      ljones@pszjlaw.com<br>               dbertenthal@pszjlaw.com<br>               pkeane@pszjlaw.com<br><br>*Attorneys for the Trustee of the Reorganized TK Holdings Trust* |