# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------x
:
In re                                                                              : Chapter 11
:
TK HOLDINGS INC., *et al.*,                                            : Case No. 17-11375 (BLS)
:
Debtors.[1]                                                                        : Jointly Administered
:
-------------------------------------------------------x
:
REORGANIZED TK HOLDINGS TRUST,                       :
:
         Plaintiff,                                                    :
:
         v.                                                                   : Adv. Pro. No.: 19-_____(BLS)
:
ARC AUTOMOTIVE, INC.,                                           :
:
         Defendant.                                                 :
-------------------------------------------------------x     :

## COMPLAINT

### *Introduction*

1.     Prior to June 25, 2017 (the "***Petition Date***"), TK Holdings, Inc. ("***TK Holdings***") and ARC Automotive Inc. ("***ARC***") entered into an agreement, pursuant to which TK Holdings purchased side impact airbag inflators from ARC. ARC agreed and warranted that the inflators would be free from defects. In late 2015 and early 2016, ARC supplied TK Holdings with defective inflators. Upon learning of the defective inflators, TK Holdings conducted an investigation and ceased installing the inflators into the component parts of vehicles. ARC's

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Takata Americas (9766); TK Finance, LLC (2753); TK China, LLC (1312); TK Holdings Inc. (3416); Takata Protection Systems Inc. (3881); Interiors in Flight Inc. (4046); TK Mexico Inc. (8331); TK Mexico LLC (9029); TK Holdings de Mexico, S. de R.L. de C.V. (N/A); Industrias Irvin de Mexico, S.A. de C.V. (N/A); Takata de Mexico, S.A. de C.V. (N/A); and Strosshe-Mex, S. de R.L. de C.V. (N/A). Except as otherwise set forth herein, the Debtors' international affiliates and subsidiaries are not debtors in these chapter 11 cases. The location of the Debtors' corporate headquarters is 2500 Takata Drive, Auburn Hills, Michigan 48326.

1

defective inflators caused TK Holdings' customer (General Motors) to issue a recall on its vehicles manufactured during the period the defective inflators were supplied by ARC.  Pursuant to the terms of the parties' agreement, ARC is responsible for the costs, expenses and other losses incurred by TK Holdings, as a result of supplying defective inflators, including, but not limited to, shipping, labor, lab testing, sorting, plant closures, and the recall.  As a direct and proximate result of ARC's breach of contract, warranties, and manufacturing defects, TK Holdings sustained losses of at least $7.5 million.  This action seeks to recover these losses, plus the costs and expenses of this action, including attorneys' fees.

### *The Parties*

2.     Plaintiff, the Reorganized TK Holdings Trust (the "***Trust***"), formed pursuant to the Plan (defined below), is vested with certain causes of action identified on the *Schedule of Causes of Action (Including Avoidance Actions) not Acquired by the Plan Sponsor or Waived Pursuant to 10.11 of the Plan*, which is docketed as Exhibit L to the *Notice of Filing Plan Supplement Pursuant to the Third Amended Joint Chapter 11 Plan of Reorganization of TK Holdings Inc. and Its Affiliated Debtors* [Docket No. 1789] (the "***Retained Causes of Action***").  Upon the effective date of the Plan, Joseph J. Farnan, Jr. was duly appointed Trustee of the Trust (the "***Trustee***"). The causes of action asserted herein constitute Retained Causes of Action.  The Trustee is authorized to bring this action on behalf of the Trust.

3.     ARC is a Delaware corporation, with manufacturing facilities in Morgantown, Kentucky and Hartsville, Tennessee, among others.  ARC is a global manufacturer that produces a full complement of inflators for automotive airbag applications.  ARC can be served through its registered agent, The Corporation Trust Company, 1209 Orange Street, Corporation Trust Center, Wilmington, DE 19801.

*Jurisdiction and Venue*

4. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.

5. This is a non-core proceeding.

6. Pursuant to Rule 9013-l(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Trust consents to the entry of a final order by the Court in connection with this adversary proceeding to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

7. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

*Factual Background*

*TK Holdings and ARC*

8. Prior to the Petition Date, TK Holdings and its affiliates (the "**Debtors**") were one of the world's leading automotive safety systems companies, supplying nearly all the world's major OEMs with a product range that included seat belts and airbag systems, as well as steering wheels, child restraint systems, and electronic devices such as satellite sensors and electronic control units. The Debtors became one of the few manufacturers of airbags with fully integrated development, design, and manufacturing capabilities for airbag systems.

9. ARC and TK Holdings entered into an agreement pursuant to which ARC would supply TK Holdings with side impact airbag inflators which were to be used in vehicles manufactured by General Motors ("**GM**"). The ARC/TK Holdings relationship was governed by the TK Holdings Inc. General Terms and Conditions of Purchase (the "**T&Cs**"), as amended. The T&Cs automatically applied to all purchase orders issued by TK Holdings. The T&Cs required

3

ARC to comply with all TK Holdings' quality, validation, and approval requirements as set forth in certain manuals and guides.

10. Pursuant to the T&Cs, ARC (as Seller) expressly warranted to TK Holdings (as Buyer) that the products it sold would be:

> (i) merchantable; (ii) free from failure in the final product as sold to the end user; (iii) free from all defects, including for example, design, workmanship and materials; (iv) fit for the particular purposes for which they are purchased; including the specified form, fit, function and performance as a component and in the component system, as a part of the final product subsystem, in the location within the final products to be sold by Buyer and its Customer and in the environment in which the Goods are or reasonably may be expected to perform; (v) in strict compliance with the specifications, samples, drawings, designs, Seller's advertisements, statements on containers and labels, statements of work and requirements of Buyer and its Customers and other requirements (including performance specifications) approved or adopted by Buyer as of the date of delivery or such other date provided by Buyer in writing; (vi) in strict compliance with all government requirements; (vii) composed of all new materials and components; (viii) produced by experienced and well trained personnel in a professional and workmanlike manner and in accordance with industry best practices; (ix) in conformity with all sales and other information provided by Seller orally or in writing; and (x) free of liens. If there is any conflict or overlap of provisions regarding Seller's warranties, the more demanding provision shall apply. Any attempt by Seller to limit, disclaim, or restrict any such warranties or any remedies of Buyer, by acknowledgement or otherwise, in accepting or performing an Order, shall be null, void, and ineffective without Buyer's prior written consent. Approvals by Buyer of Seller's design drawings, specifications, samples, designs and other Data, are to assist Seller without charge to Seller, but they do not replace, modify or cause Seller to share, Buyer's responsibility and do not waive or limit any warranty of Seller.

11. The T&Cs provided that a default occurs when ARC is in breach of its warranty obligations, the product provided is defective in design, material or workmanship, or otherwise not in conformity with the requirements of purchase orders, among other things.

12. If the products supplied by ARC fail to conform to the warranty, fail to comply with motor vehicle safety standards, or are found to contain a safety related defect, among other remedies available to TK Holdings, ARC is responsible for all direct, incidental, consequential,

special damages and other damages, including the cost and expense of any recall campaign, whether initiated by TK Holdings, its customer, or any governmental body. The T&Cs also obligate ARC to reimburse TK Holdings for attorneys' fees and expenses arising in any way in connection with any default or breach of warranty or other duty.

13. The T&Cs provide that that agreement is governed by the laws of Michigan.

*The defective inflators*

14. ARC manufactured and sold to TK Holdings airbag inflators. The inflators were comprised of a housing or body unit, to which ARC attached two metal studs by welding them to the unit. The finished inflator was shipped to TK Holdings' Acuña plant where the inflators were assembled into a side airbag module. The modules were shipped by TK Holdings to the automotive seat supplier for installation into the seat components, which ultimately were installed in cars manufactured by GM.

15. In late 2015, studs on the inflators supplied by ARC began to fail. The studs broke off the housing unit during assembly both at the Acuña plant and at the seat assembler's plant. TK Holdings conducted investigations, which included lab testing on the inflators. The problem continued with the inflators shipped to TK Holdings in early 2016.

16. ARC's inflators failed due to improper/defective welding. Indeed, upon information and belief, ARC failed to properly train its weld operators, failed to provide standard work instructions for its weld operators, failed to properly post visual inspection standards at weld work stations, and welding equipment was not properly cleaned and maintained, among other failures.

17. Because ARC's inflators continued to fail, they could not be installed into the airbag modules, and thus, caused delays in the delivery schedule. Inflator units at Acuña, ARC,

TK Holdings' Del Rio warehouse, and at the seat assembler had to be inspected to sort out the defective inflators. The sorting was performed at the seat assembler by TK Holdings' agents. Third parties were engaged to conduct the sorting at the Acuña plant and the Del Rio warehouse.

18. Because the production schedules were disrupted due to the defective inflators, additional freight expenses were incurred, including expedited or premium charges, to ship the inflators to TK Holdings and then to the seat assembler. TK Holdings also incurred additional labor costs, including overtime costs, to lessen further disruptions in the delivery schedules. Finally, TK Holdings incurred costs for performing quality assurance testing on incoming inflators.

19. In April 2016, GM issued a Recall Bulletin stating that it "decided that certain 2016 model year Chevrolet Malibu model vehicles fail to conform to Federal/Canada Motor Vehicle Safety Standard 214. These vehicles may have a condition where two weld studs that mount the front and rear side impact airbag inflators to the seat frame may fracture and separate during airbag deployment." GM dealers were required to replace the affected airbag modules. GM incurred costs and expenses relating to the defective inflators.

### *The bankruptcy proceedings*

20. On the Petition Date, each of the Debtors filed with the United States Bankruptcy Court for the District of Delaware (the "**Court**") a voluntary petition under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**").

21. On January 5, 2018, the Court approved the Debtors' disclosure statement [Docket No. 1639] for the *Third Amended Joint Chapter 11 Plan of Reorganization of TK Holdings Inc. and its Affiliated Debtors* [Docket No. 1629].

22. On January 12, 2018, the Debtors filed the *Notice of Filing of Proposed Cure Costs for Executory Contracts and Unexpired Leases* [Docket No. 1703] (the "**Cure Notice**"). The Cure Notice listed the proposed cure amount for the ARC contracts as $0.00 in the aggregate.

23. On February 6, 2018, ARC filed the *Objection of ARC Automotive, Inc. to Notice of Filing of Proposed Cure Costs For Executory Contracts and Unexpired Leases* [Docket No. 1935] (the "**Cure Objection**"). The Cure Objection asserted that the cure amount for the contracts should have been $2,856,493.07 (the "**Asserted Cure Amount**").

24. On February 20, 2018, the Debtors filed the *Fifth Amended Joint Chapter 11 Plan of Reorganization of TK Holdings Inc. and its Affiliated Debtors* [Docket No. 2116] (the "**Plan**"), which Plan was confirmed by order of the Court dated February 21, 2018 [Docket No. 2120].

25. The Debtors and ARC resolved the Cure Amount, the Cure Objection, and certain other issues, as set forth in the *Stipulation by and Between the Debtors and ARC Automotive Inc. Resolving Cure Dispute* (the "**Stipulation**"). The Stipulation was approved by the Court on April 11, 2018 [Docket No. 2638]. Pursuant to the Stipulation, TK Holdings' claims against ARC (including the claims asserted herein) were identified as Retained Causes of Action.

26. In addition, pursuant to the Stipulation, ARC was to be granted an Allowed Administrative Expense Claim (as defined in the Plan) in the total aggregate amount of $179,998.61 (the "**Administrative Expense Claim**") subject to ARC providing documentation and verification. ARC has not provided the requisite documentation and verification to substantiate its Administrative Expense Claim.

27. The Stipulation provided for mutual releases of the Debtors and ARC Asserted Cure Amount and other amounts, but expressly did not release (and preserved) any claims with respect to any other issues including, without limitation, the cause of action asserted herein.

7

## COUNT I
## Breach of Contract

28. Plaintiff incorporates the allegations of paragraphs 1 through 27 herein.

29. TK Holdings and ARC entered into a contract pursuant to which ARC was to supply products that were free from defect and complied with all TK Holdings' quality, validation, and approval requirements as set forth in certain manuals and guides, applicable safety regulations.

30. ARC breached the contract by providing TK Holdings with defective inflators.

31. Pursuant to the terms of the T&Cs, ARC is obligated to pay TK Holdings for all direct, incidental, consequential and special damages including, but not limited to, "costs, expenses and losses incurred directly or indirectly by [TK Holdings] or its Customers: (i) in inspecting, sorting, repairing or replacing non-conforming Goods; (ii) resulting from production interruptions; (iii) in conducting any Recall or other corrective service actions; (iv) in meeting delivery schedules (such as premium freight); or (v) resulting from personal injury (including death) or property damage. Consequential damages include reasonable actual legal and other professionals' fees incurred by" TK Holdings.

32. As a direct, proximate result of ARC's breach of contract, TK Holdings sustained damages, including but not limited to, costs and expenses relating to, and arising out of, the defective inflators, such as: freight charges, labor costs, lab testing costs, sorting costs, plant delays, and the recall. In addition, ARC is obligated to pay TK Holdings' attorneys' fees, including fees incurred in connection with this action. TK Holdings sustained damages of at least $7.5 million.

## COUNT II
## Breach of Express Warranty - Mich. Comp. Laws §440.2313

33. Plaintiff incorporates the allegations of paragraphs 1 through 32 herein.

34. TK Holdings and ARC entered into a contract pursuant to which ARC expressly warranted that the products it sold to TK Holdings would be: "(i) merchantable; (ii) free from failure in the final product as sold to the end user; (iii) free from all defects, including for example, design, workmanship and materials; (iv) fit for the particular purposes for which they are purchased; including the specified form, fit, function and performance as a component and in the component system, as a part of the final product subsystem, in the location within the final products to be sold by [TK Holdings] and its Customer and in the environment in which the Goods are or reasonably may be expected to perform; … [and] (vi) in strict compliance with all government requirements."

35. ARC breached the express warranty by, among other things, providing inflators that were: defective, not merchantable, not free from failure, not fit for their particular purpose, and not in compliance with all governmental requirements.

36. As a direct, proximate result of ARC's breach of the express warranties, TK Holdings sustained damages, including but not limited to, costs and expenses relating to, and arising out of, the defective inflators, such as: freight charges, labor costs, lab testing costs, sorting costs, plant delays, and the recall. In addition, ARC is obligated to pay TK Holdings' attorneys' fees, including fees incurred in connection with this action. TK Holdings sustained damages of at least $7.5 million.

### COUNT III
### Breach of Implied Warranty - Mich. Comp. Laws §440.2314

37. Plaintiff incorporates the allegations of paragraphs 1 through 36 herein.

38. TK Holdings and ARC entered into a contract pursuant to which ARC was to supply inflators. At all relevant times, ARC was a merchant of airbag inflators. Implied in the sale of those goods, ARC warranted that the inflators would be merchantable, including, but not limited

to, that the inflators would pass without objection in the trade, and that they were fit for their ordinary purpose.

39. ARC breached the implied warranty of merchantability by providing TK Holdings with defective inflators that were not fit for their ordinary purpose, would not pass without objection in the trade, and were otherwise defective. The inflators provided by ARC were not reasonably fit for their intended, anticipated, or reasonably foreseeable use.

40. As a direct, proximate result of ARC's breach of the implied warranty of merchantability, TK Holdings sustained damages, including but not limited to, costs and expenses relating to, and arising out of, the defective inflators, such as: freight charges, labor costs, lab testing costs, sorting costs, plant delays, and the recall. In addition, ARC is obligated to pay TK Holdings' attorneys' fees, including fees incurred in connection with this action. TK Holdings sustained damages of at least $7.5 million.

## COUNT IV
### Breach of Warranty of Fitness for a Particular Purpose - Mich. Comp. Laws §440.2315

41. Plaintiff incorporates the allegations of paragraphs 1 through 40 herein.

42. TK Holdings and ARC entered into a contract pursuant to which ARC was to supply inflators. ARC knew that the inflators were to be used for side impact airbags and TK Holdings was relying on ARC to provide inflators for this particular purpose. Implied in the sale of the inflators was a warranty of fitness for a particular purpose.

43. ARC breached the warranty of fitness for a particular purpose by providing TK Holdings with defective inflators that were not fit for the particular purpose of being installed in to automobile seat components for installation in cars manufactured by GM. The inflators provided by ARC were not reasonably suited for this particular purpose.

44.     As a direct, proximate result of ARC's breach of the warranty of fitness for a particular purpose, TK Holdings sustained damages, including but not limited to, costs and expenses relating to, and arising out of, the defective inflators, such as: freight charges, labor costs, lab testing costs, sorting costs, plant delays, and the recall.  In addition, ARC is obligated to pay TK Holdings' attorneys' fees, including fees incurred in connection with this action.  TK Holdings sustained damages of at least $7.5 million.

## COUNT V
## Manufacturing Defect

45.     Plaintiff incorporates the allegations of paragraphs 1 through 44 herein.

46.     TK Holdings and ARC entered into a contract pursuant to which ARC was to supply inflators.  ARC knew that the inflators were to be used for side impact airbags for TK Holdings' customer, GM.  In manufacturing the inflators, ARC improperly welded the studs to the inflator unit, causing the resulting inflator to be defective.

47.     As a direct, proximate result of ARC's manufacturing defect, TK Holdings sustained damages, including but not limited to, costs and expenses relating to, and arising out of, the defective inflators, such as: freight charges, labor costs, lab testing costs, sorting costs, plant delays, and the recall.  In addition, ARC is obligated to pay TK Holdings' attorneys' fees, including fees incurred in connection with this action.  TK Holdings sustained damages of at least $7.5 million.

WHEREFORE, the Trust requests that judgment be entered in its favor and that it be awarded direct, incidental, consequential and special damages of at least $7.5 million, pre and

post-judgment interest, attorneys' fees, costs of this action, and any other relief the Court deems just.

Dated:  June 24, 2019                                    SMITH, KATZENSTEIN & JENKINS LLP

   /s/Kathleen M. Miller
Kathleen M. Miller (No. 2898)
Beth A. Swadley (No. 6331)
1000 West Street, Suite 1501
P.O. Box 410
Wilmington, DE 19899 (courier 19801)
(302) 652-8400
kmiller@skjlaw.com
bas@skjlaw.com

*Attorneys for Plaintiff Reorganized TK Holdings Trust*