IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TK HOLDINGS, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 17-11375 (BLS)<br><br>Jointly Administered<br><br>**Re: Docket No. 4446** |

**TRUSTEE'S OBJECTION TO THE MOTION OF JERALD JANUARY FOR
RELIEF FROM THE AUTOMATIC STAY**

Eric D. Green, in his capacity as trustee (the "Trustee")[2] of the PSAN PI/WD Trust d/b/a the Takata Airbag Tort Compensation Trust Fund (the "TATCTF" or "Trust") in the chapter 11 cases of the above-captioned debtors (collectively, the "Debtors"), hereby submits this objection (the "Objection") to the motion for relief from the automatic stay (the "Motion") [Docket No. 4446] filed on May 19, 2021, by Jerald January ("Movant"), as personal representative for the estate of Nadine Paul. In support of this Objection, the Trustee respectfully represents as follows:

**PRELIMINARY STATEMENT**

1.      The Motion must be denied because relief from the automatic stay cannot be granted for the simple reason that by operation of the Debtors' Plan and this Court's Confirmation Order, the automatic stay is no longer in effect. Rather, the Plan and Confirmation Order

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Takata Americas (9766); TK Finance, LLC (2753); TK China, LLC (1312); TK Holdings Inc. (3416); Takata Protection Systems Inc. (3881); Interiors in Flight Inc. (4046); TK Mexico Inc. (8331); TK Mexico LLC (9029); TK Holdings de Mexico, S. de R.L. de C.V. (N/A); Industrias Irvin de Mexico, S.A. de C.V. (N/A); Takata de Mexico, S.A. de C.V. (N/A); and Strosshe-Mex, S. de R.L. de C.V. (N/A). Except as otherwise set forth herein, the Debtors' international affiliates and subsidiaries are not debtors in these chapter 11 cases. The location of the Debtors' corporate headquarters is 2500 Takata Drive, Auburn Hills, Michigan 48326.

[2]      Capitalized terms not defined in the Motion shall have the meaning ascribed to such terms in the *Fifth Amended Joint Chapter 11 Plan of Reorganization of TK Holdings and its Affiliated Debtors* [Docket No. 2116].

channeled all personal injury and wrongful death claims against the Debtors related to or arising out of the Debtors' PSAN Inflators—including the Movant's claim—to the TATCTF for evaluation, review and final determination in accordance with the Court approved Trust Distribution Procedures (the "TDP").[3]  The Movant effectively seeks to lift the channeling injunction in the Confirmation Order, which has been in effect as part of a "final" Order for over three years, in order to obtain relief outside the TDP.  It is precisely to avoid such collateral litigation that the Channeling Injunction and the TDP were entered and approved by the Court, and there is no basis asserted in the Motion or that otherwise exists to support the unprecedented request for relief suggested by the Movant.

2. Given the limited funds available out of the Takata bankruptcy to compensate qualifying, eligible victims, the Channeling Injunction and TDP were implemented to ensure careful, efficient, and equitable resolution of all alleged personal injury and wrongful death claims related to or arising out of the PSAN Inflators and the PSAN Inflator Defect.  The structure does so by providing: (i) clear proof and decision-making standards; (ii) a process overseen by neutral and fiduciary decision makers; and (iii) multiple layers of due process for putative claimants.

3. The TDP was drafted and negotiated by experienced tort lawyers supported by subject matter experts and its development was overseen by statutory and court appointed fiduciaries for present and future victims.  These drafters were the most knowledgeable about PSAN Inflators and the PSAN Inflator Defect.  They were best positioned to determine what type and level of causal and injury evidence would be available to claimants (represented and *pro se*) to substantiate legitimate claims *and* to exclude illegitimate and fraudulent claims.  The Plan and TDP ensure that the claims evaluation process shall be conducted by an experienced claims

---

[3] The Eighth Amended Trust Distribution Procedures is accessible at: http://www.takataairbaginjurytrust.com/courtdocs.

administration team led by an independent Trustee whose fiduciary charge is to identify valid claims and provide fair compensation for them while preventing ineligible claims from depleting the Trust's limited resources. The claim evaluation process also provides for a second level of oversight, on an appellate level, by another independent fiduciary, the Future Claimants Representative, who reviews claim appeals and entire claim files *de novo*. This carefully constructed and implemented claims process affords putative claimants with due process by providing clear eligibility and evidentiary standards, allowing for the curing of defects, permitting appeals to a second level, and, upon request and good cause shown, reconsideration by the Trustee.

4. Importantly, for the benefit of all claimants, the TDP is a self-contained system for personal injury and wrongful death claims against the Debtors related to or arising out of the PSAN Inflator Defect. Once the TDP appeal process is exhausted, the decision is final. This process has worked fairly and efficiently to process over 400 claims since the Confirmation Order containing the Channeling Injunction and approving the TDP was entered more than three years ago. The Motion attempts to circumvent this carefully constructed structure and process, approved by the Court and successfully implemented for several years, at the behest of a solitary dissatisfied claimant. If this were to happen it would destroy a central component of the Plan.

5. The Motion also takes issue with the parallel claims process overseen by a separate federal court. As this Court is aware, the Trustee is also the court-appointed Special Master of the Takata Individual Restitution Fund ("IRF"). The IRF was established out of a criminal plea agreement entered in federal criminal cases of the Debtors' foreign parent company, in the District Court for the Eastern District of Michigan before Judge George Carem Steeh captioned, *USA v. Takata Corp.*, Case No. 16-cr-20810 (E.D. Mich.) (the "District Court"). Almost every Trust claimant has also filed a claim against the IRF. The criteria for eligibility in the IRF for claims

asserting a rupture of a Takata airbag due to the PSAN Inflator Defect are substantially identical to the criteria in the TDP.  To preserve efficiencies and avoid confusion to claimants, the Trustee, in his dual capacities (and his claims administration team), reviews and renders decisions on claims to both funds under their respective guidelines at the same time.  Under the IRF guidelines, putative claimants may appeal the Special Master's decision to an independent review officer.  Putative claimants may also object to the Special Master's decision before the District Court, and the District Court then evaluates the claim, objection, and other relevant material prior to rendering its own decision on the eligibility (and, if eligible, valuation) of each claim in the IRF.

6. The Paul WD Claim (as defined below) has been reviewed and denied by the Trust and the IRF (as well as by the District Court in the IRF) pursuant to the processes set forth in the TDP and under the IRF.  The Movant has exhausted the remedies available under both systems and has failed at each step to meet his evidentiary burden.  The Movant's request for Court authorization to pursue the Paul WD Claim against the Debtors outside of the Trust must be denied not only on the face of the request – the automatic stay is inapplicable here – but because the requested relief is barred by the Plan, Confirmation Order, and Channeling Injunction in addition to the IRF Methodology.  There is no basis asserted in the Motion to support the extraordinary relief of lifting the Channeling Injunction and the record indicates that no basis could exist.

## BACKGROUND AND PROCEDURAL HISTORY

### I.      The Plan, Channeling Injunction and Confirmation Order

7. As this Court is aware, the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on June 25, 2017 (the "Petition Date").

8. On February 20, 2018, the Debtors filed their *Fifth Amended Joint Chapter 11 Plan of Reorganization of TK Holdings and its Affiliated Debtors* [Docket No. 2116] (the "Plan"). On February 21, 2018, the Court entered an Order confirming the Plan [Docket No. 2120] (the "Confirmation Order").

9. On April 6, 2018, the District Court for the District of Delaware affirmed the Confirmation Order. *See Order Adopting Bankruptcy Court's Findings of Fact, Conclusions of Law, and Order Confirming the Fifth Amended Joint Chapter 11 Plan of Reorganization of TK Holdings Inc. and Its Affiliated Debtors with Respect to Channeling Injunction and Related Releases*, dated April 6, 2018 [Case No. 18-00397, Docket No. 6].

10. The Plan became effective on April 10, 2018 [Docket No. 2646] (the "Effective Date").

11. Upon the Effective Date, the Plan established the Trust and provided that the Trust "shall . . . assume the liability for all PSAN PI/WD Claims against the Debtors and the Protected Parties" and "shall administer, process, settle, resolve, liquidate, satisfy, and pay (from the designated funds therefor), as applicable, PSAN PI/WD Claims against the Debtors and the Protected Parties [and] Other PI/WD Claims against the Debtors[.]" Plan at § 5.10(a).

12. The Trustee is charged with resolving the personal injury and wrongful death claims held by victims of the Debtors' PSAN Inflator Defect. As noted in a recent press release[4] by the Trustee, there are still thousands of defective and *recalled* but not *repaired* Takata airbag inflators on United States roads, and the Trustee and his economists expect hundreds of additional claims to be filed with the Trust for serious injury and death in the future as a result.

---

[4] *See* Press Release, dated May 25, 2021 available at: https://www.prnewswire.com/news-releases/takata-airbag-funds-announce-46-000-000-in-supplemental-victim-payments-301298217.html.

13. The Plan divides personal injury and wrongful death claims related to Takata Products sold or supplied prior to the Petition Date into two classes: (i) Class 5 PSAN PI/WD Claims for claims relating to an injury or death allegedly caused by a PSAN Inflator; and (ii) Class 7 Other PI/WD Claims for claims, other than PSAN PI/WD Claims, arising out of or relating to an injury or death allegedly caused by a Takata Product. The Plan classifies any other unsecured claim (other than the claims of original equipment manufacturers) other than a Class 5 PSAN PI/WD Claim or a Class 7 Other PI/WD Claim as a Class 6 Other General Unsecured Claim.

14. Under the Plan, PSAN PI/WD Claims are defined, in relevant part, to mean:

> [A]ny Claim asserted against the Debtors . . . for alleged ***personal injury***, ***wrongful death***, or other similar Claim or Cause of Action ***arising out of or relating*** to an injury or death allegedly caused by a PSAN Inflator . . . .

Plan at § 1.1 (emphasis added).

15. PSAN PI/WD Claims are classified in Class 5 under the Plan and are provided with the following treatment:

> On the Effective Date, liability for all PSAN PI/WD Claims against the TKH Debtors shall be assumed by the PSAN PI/WD Trust without further act or deed and shall be satisfied from the PSAN PI/WD Trust as set forth in the PSAN PI/WD TDP and the PSAN PI/WD Trust Agreement. Pursuant to the Channeling Injunction established pursuant to section 10.7 of this Plan, each holder of a PSAN PI/WD Claim against the TKH Debtors shall have its Claim permanently channeled to the PSAN PI/WD Trust, and such PSAN PI/WD Claim shall thereafter be asserted exclusively against the PSAN PI/WD Trust and ***resolved in accordance with the terms, provisions, and procedures of the*** PSAN PI/WD Trust Agreement and PSAN PI/WD TDP . . . .

*Id.* at § 4.4(d) (emphasis added).

16. Paragraph WW of the Confirmation Order further provides that:

> The sole recourse of any such holder of a PSAN PI/WD Claim against any of the Protected Parties shall be to the PSAN PI/WD Trust. All PSAN PI/WD Claims against any Protected Parties shall be channeled to the PSAN PI/WD Trust *to be treated in accordance with the PSAN PI/WD Trust Agreement and the PSAN PI/WD TDP*.

Confirmation Order at ¶ WW (emphasis added).

17. On February 27, 2017, the Department of Justice and Takata Corporation ("Takata Corp.") filed a *Rule 11 Plea Agreement* [5] before the District Court of the Eastern District of Michigan to resolve criminal charges brought by the government against the Debtors, which established the IRF. On July 31, 2017, the District Court entered an order appointing Eric D. Green as Special Master of the Takata Restitution Funds to administer the IRF.

**II.    The Paul WD Claim Was Channeled To The Trust.**

18. The Movant alleges that Nadine Paul died on April 10, 2014 "after a tragic crash in which the Takata airbags malfunctioned, causing a closed head injury" (the "Paul WD Claim"). Motion at ¶ 1. In additional materials submitted to the Trust, the Paul WD Claim asserted that the airbag "exploded" causing the injury; and in the Motion, the Movant argues that the materials submitted showed that the decedent was "hospitalized as a result of the ruptured airbag[.]"[6] Motion at ¶ 22. The Movant filed a proof of claim in the Debtors' Chapter 11 cases for the Paul WD Claim on or about December 27, 2017, alleging damages of $10 million, and subsequently filed numerous amendments that were assigned claim numbers 4872, 4873, 4878-4889, and 4895-4901 (each a "Bankruptcy Claim, and together, the "Bankruptcy Claims"). *Id*. at ¶ 7.

19. On March 23, 2018, the Debtors filed their *Eighth Non-Substantive Omnibus Objection* [Docket No. 2487], which sought to expunge nineteen (19) of the Bankruptcy Claims

---

[5]    Available at *United States of America v. Takata Corporation*, Case No. 16-cr-20810-04 (GCS) [Docket No. 23].

[6]    These allegations are consistent with arguing a *rupture* claim, governed by TDP § 4.2(a) (discussed below).

- 7 -

as superseded and duplicate claims. With the exception of Bankruptcy Claim No. 4873, each of the remaining Bankruptcy Claims were expunged on April 23, 2018 [Docket No. 2744]. The Trustee was only made aware that Bankruptcy Claim No. 4873 was still extant when he reviewed the Motion. Bankruptcy Claim No. 4873 was classified as a "Hybrid Class 6" claim and is currently under the purview of the Legacy Trustee. The Trustee and the Legacy Trustee continuously share information and work cooperatively to address pending proofs of claim. To the extent Bankruptcy Claim No. 4873 needs to formally be channeled to the Trust as a Class 5 Claim, the two trusts will seek to do so.

20. Nonetheless, the Movant's own allegations and subsequent submissions to the Trust and IRF, make clear that the Paul WD Claim, whether or not properly identified in Bankruptcy Claim No. 4873, actually asserts a purported rupture claim that is channeled to the Trust under the Plan.[7] Consistent with that understanding and the Confirmation Order and the Plan's Channeling injunction, on September 4, 2018, the Movant himself submitted claims to the Trust under the TDP and to the IRF which incorporated the same wrongful death action alleged in Bankruptcy Claim No. 4873 (*i.e.*, the Paul WD Claim).

**III.   The Paul WD Claim Was Reviewed And Afforded All Available Process Before Being Denied Under the TDP and IRF**.

21. Pursuant to section 4.2(a) of the TDP, for the Paul WD Claim to be eligible for compensation from the Trust as an asserted "rupture claim", the Movant was required to provide evidence of the following:

1. Deployment of a Takata PSAN inflator in a vehicle manufactured or distributed by an NP-OEM or Participating OEM.
2. Physical evidence of rupture of the inflator canister to be demonstrated either by vehicle-based evidence, or by occupant-based evidence.
    • Vehicle-based evidence requires the following:

---

[7]   *See* Motion at ¶ 22 ("When reviewed thoroughly, these records show Paul was hospitalized as a result of the ***ruptured airbag*** and required treatment for the very same injury until her death five months later.") (emphasis added).

- 8 -

                     a. Ruptured inflator canister or metal/mesh fragments; or
                     b. Photographs of ruptured inflator canister or metal/mesh fragments; or
                     c. Cushion with evidence of cuts consistent with inflator rupture; or
                     d. Photographs of cushion with evidence of cuts consistent with inflator rupture.

    or

            • Occupant-based evidence requires one of the following:
                     a. Photographs of injuries consistent with inflator rupture; or
                     b. Medical records documenting removal of metal fragments embedded in occupant; or
                     c. Medical records identifying injuries consistent with inflator rupture;

3. Evidence that the rupture was a contributing cause to the claimed injury or injuries.

22. The Trust sent three separate deficiency notices to Movant on or about June 7, July 11, and August 5 of 2019 requesting additional documentation evidencing proof of an airbag rupture under section 4.2(a)(2) of the TDP. In response to the deficiency notices, the Movant submitted over 1,900 pages of documents. However, these additional documents failed to demonstrate that an airbag rupture actually occurred.

23. Accordingly, the Trust issued a denial letter on November 4, 2019, for insufficient proof of an airbag rupture. Pursuant to the Supplemental Review process set forth in section 5.4 of the TDP, the Movant appealed the Trust's denial determination on December 17, 2019 to the Future Claimants Representative. The Future Claimants Representative reviewed the Paul WD Claim "under the criteria in Section 4" of the TDP, constituting a *de novo* review of the claim and all materials submitted, and upheld the Trustee's denial determination.

24. Also, on May 21, 2020, the IRF issued a formal denial notice in connection with the Paul WD Claim because of the Movant's failure to provide sufficient documentation concerning a rupture associated with a PSAN Inflator. The Movant appealed the Special Master's denial on June 11, 2020. The appeal was considered by an independent review officer, a retired

bankruptcy judge, who, under the IRF guidelines, reviewed the Paul WD Claim *de novo*. The independent review officer likewise concluded that the Paul WD Claim and supporting documents did not contain sufficient evidence supporting a rupture claim.

25. On June 22, 2020, the District Court reviewed the Paul WD Claim along with an objection to its denial submitted by the Movant and concluded that there was insufficient evidence supporting a rupture and affirmed the IRF's denial of the claim. *See* the District Court's *Order Granting Special Master's Request for Approval of Third Distribution Request of Individual Restitution Fund* [Case No. 16-cr-20810-04, Docket No 126]. On June 26, 2020, the Trustee and Special Master issued a final notice to the Movant indicating that the Movant's objection to the District Court was overruled and that the Future Claimants Representative, in respect of the claim against the Debtors submitted to the Trust, had affirmed the Trustee's decision to deny the claim.

## ARGUMENT

### I. The Automatic Stay Is Not In Effect And The Motion Must Be Denied As Movant Fails To Establish Any Basis For Relief.

26. Movant's argument under Bankruptcy Code section 362(d) as the basis for relief from the automatic stay is inapposite – the automatic stay is no longer in effect because the entry of a bankruptcy discharge terminates the automatic stay. *In re Ciccimaro*, 364 B.R. 184, 189 (Bankr. E.D. Pa. 2007) ("The entry of a bankruptcy discharge, although it terminates the automatic stay created by section 362(a), gives rise to another statutory injunction.") (*citing* 11 U.S.C. § 524(a)); *see also* 11 U.S.C. § 362(c)(2)(automatic stay continues until the earlier of the case being closed, dismissed or "the time a discharge is granted or denied."). What is in effect is a channeling injunction, and imposition of a channeling injunction supplements the discharge and is a clear indication that the automatic stay is no longer in place. *Barraford v. T & N Ltd.*, 17 F. Supp. 3d 96, 104 (D. Mass. 2014) (finding in the context of a section 524(g) channeling injunction,

that "[t]he imposition of a channeling injunction is a clear indication that . . . the automatic stay lifted . . . [i]n other words, an injunction may be put in place in conjunction with a discharge. An injunction would be unnecessary if the automatic stay were still in place.").

27.     Assuming *arguendo* that the automatic stay were still in effect, section 362(d)(1) of the Bankruptcy Code permits the Court to grant relief from the stay "for cause." 11 U.S.C. § 362(d)(1). The term "cause" is not defined in the Bankruptcy Code and is determined on a case-by-case basis. *Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 90 (3d Cir. 1997); *In re SCO Grp., Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007) ("Cause is a flexible concept and courts often conduct a fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay.") (citing *Baldino*, 116 F.3d at 90). Movants seeking relief from the automatic stay have the burden of establishing "cause". *In re Telegroup, Inc.*, 237 B.R. 87, 91 (Bankr. D.N.J. 1999). Only where the movant has sufficiently established cause does the burden shift to the party opposing relief from the automatic stay to establish the absence of cause. *Id*.

28.     Here, Movant has failed to articulate any argument or basis justifying relief under section 362(d) of the Bankruptcy Code to lift the automatic stay. Nor does Movant raise any argument justifying the application of section 363(e) (which deals with the use, sale and lease of property) to the instant issue. The Motion only restates the claim denial history of the Paul WD Claim as it relates to the Trust and IRF. But this is not cause: it is the reflection of this Court's, the Delaware District Court's, and the District Court's approved processes running their course, and final decisions being rendered against a putative claimant. The argument advanced in the Motion that a thorough review of the documents would establish that a rupture did occur, *see* Motion at ¶ 22, is precisely the merits question that is barred from adjudication outside the TDP -

the system established by the Confirmation Order and Channeling Injunction. Nonetheless, it bears repeating that this merits question has been evaluated by no less than four independent neutrals - two court-appointed fiduciaries, an independent review officer (a retired bankruptcy judge), and a sitting United States District Court judge. There is no basis to upset the Confirmation Order and Channeling Injunction here.

## II. The Motion Seeks To Side Step The Court's Confirmation Order And The Channeling Injunction Imposed Under The Plan.

29. Section 1141(a) of the Bankruptcy Code provides that "the provisions of a confirmed plan bind . . . any creditor . . ., whether or not the claim . . . of such creditor . . . is impaired under the plan and whether or not such creditor . . . has accepted the plan." *See Kravitz v. Samson Energy Corp. (In re Samson Res. Corp.)*, 590 B.R. 643, 649 (Bankr. D. Del. 2018) ("Once a bankruptcy plan is confirmed, it is binding on all parties and all questions that could have been raised pertaining to the plan are entitled to *res judicata* effect." (internal quotation and citation omitted)); *Dorset v. Am. Home Mortg. Serv. (In re Dorset)*, Nos. 08-12339 (BLS), 11-53860 (BLS), 2012 Bankr. LEXIS 5137, at *6 (Bankr. D. Del. Nov. 2, 2012) ("The provisions of a confirmed plan bind the debtor and each creditor." (citing 11 U.S.C. § 1327(a))).

30. Moreover, a bankruptcy court's order of confirmation is treated as a final judgment with *res judicata* effect "as to all issues decided or which could have been decided at the hearing on confirmation." *Donaldson v. Bernstein*, 104 F.3d 547, 554 (3d Cir. 1997); *see also Browning v. Levy*, 283 F.3d 761, 772 (6th Cir. 2002) ("Such confirmation by a bankruptcy court has the effect of a judgment by the district court and res judicata principles bar relitigation of any issues raised or that could have been raised in the confirmation proceedings.") (internal quotation and citations omitted).

31.     To the extent relevant, the Movant, who filed numerous proofs of claim in the case, was clearly on notice of the Plan, Confirmation Order and the Channeling Injunction. The Confirmation Order became final nearly three years ago, after it was adopted by the District Court. No appeal was taken or secured and the Movant is clearly bound by this Court's Confirmation Order and Channeling Injunction. The Movant has not alleged a basis to relieve him (and him alone) from these final orders, nor could there be a basis under the circumstances.

### III. The Paul WD Claim Must Remain With The Trust Pursuant To The Plan Provisions.

32.     The Movant's only recourse to liquidate and enforce the Paul WD Claim is against a non-Protected Party[8] and the Trust pursuant to the Debtors' discharge and the Channeling Injunction.

33.     Paragraph 65 of the Confirmation Order reflects the section 1141(d) discharge, providing, in relevant part, as follows:

> As of the Effective Date . . . each holder . . . of a Claim . . . shall be deemed to have forever waived, released, and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims . . . and liabilities that arose prior to the Effective Date.

Confirmation Order, ¶ 65.

34.     A discharge under section 1141 of the Bankruptcy Code "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any [discharged] debt as a personal liability of the debtor." 11 U.S.C. §

---

[8] Pursuant to the Plan, a Protected Party means any of the following Persons: (i) Debtors' non-Debtor affiliates (including the Acquired Non-Debtor Affiliates) other than TKSAC and the Japan Debtors, (ii) Reorganized Takata, (iii) the Participating OEMs, subject to the terms of section 5.l0(w) of the Plan, (iv) the Plan Sponsor Parties, and (v) with respect to each of the foregoing Persons in clauses (i) through (iv), such Persons' predecessors, successors, assigns, subsidiaries, affiliates (excluding TKSAC and the Japan Debtors, except as otherwise provided), current and former officers, directors, principals, equity holders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, as applicable.

524(a)(2); *see also Stratton v. Mariner Health Care, Inc. (In re Mariner Post-Acute Network, Inc.)*, 303 B.R. 42, 45 (Bankr. D. Del. 2003) (plaintiffs enjoined from pursuing prepetition litigation claims against debtor). In addition, "[t]he confirmation of a plan discharges the debtor from any debt that arose prior to the date of confirmation." *Id.*; 11 U.S.C. § 1141(d)(1)(A).

35. Pursuant to section 10.7 of the Plan (the "Channeling Injunction"), all PSAN PI/WD Claims are "channeled" to the PSAN PI/WD Trust and will be determined and satisfied in accordance with the Trust Distribution Procedures approved by the Bankruptcy Court in the Confirmation Order. *See* Plan at ¶ 11.1(b) ("the resolution of PSAN PI/WD Claims against the Debtors and the Protected Parties … shall be governed by and in accordance with the PSAN PI/WD TDP and the PSAN PI/WD Trust Agreement."). The Plan specifically provides that recourse for PSAN PI/WD Claims is solely against the PSAN PI/WD Trust. *See* Plan, § 5.10. The Channeling Injunction imposed pursuant to section 10.7 of the Plan and the Confirmation Order permanently enjoins all holders of PSAN PI/WD Claims from pursuing such claims against the Debtors and Protected Parties or any of their assets:

> [P]ursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court and District Court under section 105(a) of the Bankruptcy Code, all Persons that have held or asserted, or that hold or assert any PSAN PI/WD Claim against the Protected Parties, or any of them, shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery from any such Protected Party with respect to any such PSAN PI/WD Claims, including:
>
> (a)(i) commencing, conducting . . . (ii) enforcing, levying, attaching, collecting or otherwise recovering, . . . (iii) creating, perfecting, or enforcing in any manner, whether directly or indirectly, any Lien . . . (iv) asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind . . . .

36. Paragraph 76 of the Confirmation Order effectuated the Channeling Injunction:

all Persons that have held or asserted, that hold or assert, or that will hold or assert

any PSAN Pl/WD Claim against the Protected Parties, or any of them, shall be permanently and forever stayed, restrained, and enjoined from taking all action for the purpose of directly or indirectly collecting, recovering or receiving payments, satisfaction, or recovery from any such Protected Party with respect to any such PSAN Pl/WD Claim . . . .

37. Here, the Paul WD Claim constitutes a PSAN PI/WD Claim that was channeled to the Trust upon the Effective Date of the Plan subject to resolution under the TDP. That process has concluded and the claim against the Debtors is effectively extinguished. The Movant's attempt to now liquidate and enforce the Paul WD Claim outside the Trust in a different forum is barred by the Confirmation Order and Channeling Injunction.

### IV. This Court Is Not The Appropriate Forum For Disputes Regarding IRF Claims.

38. Out of an abundance of caution, the Trustee considers the Movant's multiple references to the IRF's claim review process and IRF claim denial in context of the Motion. *See* Motion at ¶¶ 19-24 (stating claim denial by IRF, submission of documents in support of appeal, and affirmation of denial by IRF on May 26, 2020).

39. To the extent the Motion could be interpreted as a request for the Court to consider matters in connection with the IRF, the Trustee respectfully submits that IRF matters, including the District Court's denial of the Paul WD Claim, falls outside this Court's purview. Even if it were within the Court's subject matter jurisdiction, and the Trustee believes that it is not,[9] the Trustee would urge the Court to decline to consider the matters or otherwise abstain under 28 U.S.C. § 1334(c)(1). *See, e.g.*, *Asbestosis Claimants v. Apex Oil Co. (In re Apex Oil Co.)*, 980 F.2d 1150 (8th Cir. 1992) (bankruptcy court can abstain to federal court under permissive abstention doctrine).

---

[9] The Trustee would be pleased to separately brief this and any other issue the Court believes is necessary to address the arguments or implicit arguments presented in the Motion.

## **CONCLUSION**

Wherefore, for all the reasons stated in the Objection, the Trustee respectfully requests that the Court deny the Motion for relief from the automatic stay and award such other and further relied as it deems just and proper.

| | |
|---|---|
| Dated: June 4, 2021<br>Wilmington, Delaware | **BLANK ROME LLP**<br><br>*/s/ Stanley B. Tarr*<br>Stanley B. Tarr (DE No. 5535)<br>1201 N. Market Street, Suite 800<br>Wilmington, Delaware 19801<br>Telephone:    (302) 425-6400<br>E-mail:    tarr@blankrome.com<br><br>    -AND-<br><br>**BROWN RUDNICK LLP**<br>David J. Molton (admitted *pro hac vice*)<br>Gerard T. Cicero (admitted *pro hac vice*)<br>Uchechi A. Egeonuigwe (admitted *pro hac vice*)<br>Seven Times Square<br>New York, New York 10036<br>Telephone:    (212) 209-4800<br>E-mail:    dmolton@brownrudnick.com<br>    gcicero@brownrudnick.com<br>    uegeonuigwe@brownrudnick.com<br><br>*Attorneys for Eric D. Green, in his capacity as Trustee of the Takata Airbag Tort Compensation Trust Fund* |