# EXHIBIT A

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| **In re**: | ) |
|  | ) Chapter 11 |
|  | ) |
| **TK HOLDINGS INC.**, *et al.*,[1] | ) Case No. 17-11375 (BLS) |
|  | ) |
| **Debtors.** | ) (Jointly Administered) |
|  | ) |
|  | ) **Re: Doc. No. 4528** |

**PLAINTIFF AUTOMOTIVE COALITION FOR TRAFFIC SAFETY, INC.'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ITS MOTION FOR AN ORDER HOLDING JOYSON SAFETY SYSTEMS IN CIVIL CONTEMPT AND FOR ATTORNEYS' FEES AND OTHER RELIEF**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Takata Americas (9766); TK Finance, LLC (2753); TK China, LLC (1312); TK Holdings Inc. (3416); Takata Protection Systems Inc. (3881); Interiors in Flight Inc. (4046); TK Mexico Inc. (8331); TK Mexico LLC (9029); TK Holdings de Mexico S. de R.L. de C.V. (N/A); Industrias Irvin de Mexico, S.A. de C.V. (N/A); Takata de Mexico, S.A. de C.V. (N/A); and Strosshe-Mex, S. de R.L. de C.V. (N/A). Except as otherwise set forth herein, the Debtors' international affiliates and subsidiaries are not debtors in these chapter 11 cases. The location of the Debtors' corporate headquarters is 2500 Takata Drive, Auburn Hills, Michigan 48326.

Plaintiff Automotive Coalition for Traffic Safety, Inc. ("ACTS") submits the following Supplemental Memorandum in support of its motion to hold Defendant Joyson Safety Systems Acquisition, LLC ("Joyson") in civil contempt for failing to comply with a Stipulated Order entered by this Court. The purpose of the Supplemental Memorandum is to update the Court on certain developments occurring after ACTS filed the motion and to revise ACTS' claim for relief in light of these developments.

1. On September 16, 2021, ACTS filed its motion to hold Joyson in civil contempt for breaching a Stipulated Order (the "Stipulated Order") entered by the Court in this Chapter 11 proceeding involving debtor TK Holdings ("Motion"). In the Stipulated Order, the Court excluded certain patents (the "Patent Assets") from the "Purchased Assets" to be transferred to Joyson pending the outcome of an Adversary Proceeding initiated by ACTS. Yet just weeks after Joyson signed the Stipulated Order—and in direct violation of the Stipulated Order's express terms—Takata assigned the Patent Assets to Joyson, and Joyson then assigned the Patent Assets to lenders as security for a financing transaction.

2. Several days after ACTS filed the Motion, Joyson contacted ACTS to request an extension of time to file a response and to set a new date for the hearing. In that communication, Joyson stated it was negotiating a refinancing transaction that was expected to close in mid-October. Joyson further stated that once the transaction closed, Joyson would cause the liens filed by its current lenders to be terminated. Based on these representations, ACTS agreed to extend the time for Joyson to file its response and to set a new date for the hearing.

3. On October 12, 2021, after notifying ACTS that the refinancing transaction had closed, Joyson forwarded copies of certain releases of liens relating to the Patent Assets. In response, ACTS informed Joyson that the releases would have to be filed with the patent offices

in the relevant jurisdictions in order to remove the cloud on the patent title. Joyson subsequently provided ACTS with a copy of a release filed with the US Patent & Trademark Office, but Joyson has not provided copies of releases filed in any other jurisdiction.

4. In the same series of communications, ACTS also asked Joyson to represent that Joyson was not aware of any other encumbrances on the Patent Assets in any jurisdictions that had not yet been disclosed to ACTS. This representation is particularly important to ACTS because Joyson recently revealed for the first time (*after* ACTS filed its motion) that a security interest had been filed against the Patent Assets in Germany. This information was inconsistent with Joyson's prior representation that the "transfer" of the Patent Assets involved only patents in the U.S., Japan and China. (*See* Ex. C).

5. Notwithstanding the above, Joyson refused to provide the requested written representation unless ACTS made certain concessions. Only after ACTS provided Joyson with a draft of this Memorandum did Joyson state in a responsive email that "Joyson is unaware of any other purported encumbrance on the Patent Assets by Joyson, its affiliates or any of its lenders."

6. As of the date of this filing, Joyson has not provided ACTS with copies of releases filed with the patent offices in Japan or Germany/Europe. In addition, ACTS remains uncertain of the full extent to which Joyson has violated the Stipulated Order.

7. As ACTS noted in the Motion, ACTS seeks the payment of its attorneys' fees for both coercive and compensatory purposes. *See, e.g., Robin Woods, Inc. v. Woods*, 28 F.3d 396, 400 (3d Cir. 1994). The coercive element seeks to restore ACTS to the position it would have been in if Joyson had not breached the Stipulated Order. *Id.* This requires an accurate identification of all encumbrances placed on the Patent Assets as a result of the breach, including all security

interests filed against the Patent Assets in patent agencies in Europe, Asia and elsewhere. It also includes the filing of releases with the relevant patent offices to clear the cloud on title.

8. Until all the encumbrances on the title to the Patent Assets have been removed, Joyson will remain in continuing violation of the Stipulated Order.

9. The compensatory element is directed to compensating ACTS for the harm it has suffered as direct result of Joyson's non-compliance. ACTS seeks this reimbursement not as a penalty, but as a "remedial" measure designed to "ensure that the innocent party receives the benefit of the injunction." *Woods*, 28 F.3d at 400. In these circumstances, a finding of "willfulness" is not required for an award of attorneys' fees. *Id*. In this case, ACTS is a non-profit organization devoted solely to the development of new technologies to save lives through improved motor vehicle and traffic safety. As a direct result of Joyson's non-compliance, ACTS has been forced to incur substantial legal fees that otherwise would have been used to support its research mission.

10. Accordingly, in light of the above developments, ACTS respectfully requests that the Court grant ACTS' Motion seeking the following relief: (a) an Order holding Joyson in civil contempt for failing to comply with the Stipulated Order; (b) an Order directing Joyson to identify all encumbrances placed on the Patent Assets as a result of Joyson's failure to comply with the Stipulated Order; (c) an Order directing Joyson to provide a representation to the Court that it has accurately identified all such encumbrances known to Joyson; (d) an Order directing Joyson to provide ACTS with copies of all releases filed with the patent offices in all jurisdictions where security interests have been filed against the Patent Assets; (e) an Order directing Joyson to pay ACTS' attorneys' fees and costs as both compensation for the harm done by Joyson's violation and a coercive sanction for Joyson's continuing violation of the Stipulated Order; and (f) an Order

4

5

clarifying the Final Order to recite that Takata and Joyson never had an ownership interest in the Patent Assets.

Dated: _____ \_\_, 2021

**MAYER BROWN LLP**
James R. Ferguson
Melissa A. Anyetei
Luiz Miranda
71 S. Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 782-0600
E-mail: jferguson@mayerbrown.com
E-mail: manyetei@mayerbrown.com
E-mail: lmiranda@mayerbrown.com

Linda Rhodes
1999 K Street, NW
Washington, DC 20006
Telephone: (202) 263-3000
E-mail: lrhodes@mayerbrown.com

Respectfully submitted,

/s/ _____
**KLEHR HARRISON HARVEY BRANZBURG LLP**
Richard M. Beck (DE Bar No. 3370)
919 N. Market Street, Suite 1000
Wilmington, Delaware 19801
Telephone: (302) 426-1189
E-mail: rbeck@klehr.com

*Counsel for Automotive Coalition for Traffic Safety, Inc.*